IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

PETER C. WHITFIELD
Hawaii Bar No. 08749
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Phone: (202) 305-0430
Fax:  (202) 305-0274
peter.whitfield@usdoj.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DETROIT INTERNATIONAL BRIDGE COMPANY,** *et al.*, | ) ) ) ) | Case No. 1:10-cv-00476-RMC |
| Plaintiffs, | ) ) | **U.S. DEFENDANT'S MOTION TO TRANSFER VENUE TO** |
| v. | ) ) | **THE EASTERN DISTRICT OF MICHIGAN** |
| **THE GOVERNMENT OF CANADA,** *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**TABLE OF CONTENTS**

```
```

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Court Has Broad Discretion To Transfer This Case Under 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   This Case Could Have Been Brought In The Eastern District Of Michigan . . . . . 5

    C.   The Interest Of Justice Favors Transfer Of This Action To The Eastern District Of Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.   The Private Interest Factors Favor Transfer Of This Action To The Eastern District Of Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.   Because This Case Involves A Dispute Over The Disclosure Of Effects Of A Project On A Detroit Community, The Public Interest Factors Favor Transfer To The Eastern District Of Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    F.   Transfer Is Also Warranted Because This Case Should Be Consolidated With Another Matter In The Eastern District Of Michigan . . . . . . . . . . . . . . . . . . . . . 14

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**

*Airport Working Group of Orange County, Inc. v. Dep't of Def.,
    226 F. Supp. 2d 227 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 13

Al-Ahmed v. Chertoff,
    564 F. Supp. 2d 16 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Berg v. First Am. Bankshares, Inc.,
    576 F. Supp. 1239 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bergmann v. U.S. Dep't of Transp.,
    ---F. Supp. 2d--- , 2010 WL 1837703 (D. D.C. May 07, 2010) . . . . . . . . . . . . . . . . . . . . 13

Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia R. Co.,
    411 F.2d 320 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Camp v. Pitts,
    411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Citizen Advocates for Responsible Expansion, Inc. v. Dole,
    561 F. Supp. 1238 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13

Cont'l Grain Co. v. Barge FBL-585,
    364 U.S. 19 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DeLoach v. Philip Morris Co., Inc.,
    132 F. Supp. 2d 22 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cameron v. Thornburgh,
    983 F.2d 253 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Greater Yellowstone Coal. v. Kempthorne,
    2008 WL 1862298 (D.D.C. Apr. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hanson v. District of Columbia,
    257 F.R.D. 19 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Latin Am. for Soc. and Econ. Dev. v. U. S. Fed. Hwy. Admin.,
    2010 WL 199823 2009 U.S. Dist. LEXIS 122819 (D.D.C. Jan. 11, 2010) . . . . . . . . . . . 4

Miller v. Toyota Motor Corp.,
    No. 08-1613 (ESH), 2009 WL 1531658 (D.D.C. June 2, 2009) . . . . . . . . . . . . . . . . . . . . . 5

Natl. Wildlife Fed'n v. Harvey,
    437 F. Supp. 2d 42  (D.D.C.  2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*S. Utah Wilderness Alliance v. Norton,
    315 F. Supp. 2d 82 (D.D.C.  2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10, 13

S. Utah Wilderness Alliance v. Norton,
    No. Civ. A 01-25-18 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002) . . . . . . . 11, 12

Shawnee Tribe v. United States,
    298 F. Supp. 2d 21 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Sierra Club v. Flowers,
    276 F. Supp. 2d 62 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11, 14

Smith v. S.E.C.,
    129 F.3d 356 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Stockbridge-Munsee Cmty. v. United States,
    593 F. Supp. 2d 44 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Trout Unlimited v. U.S. Dep't of Agric.,
    944 F. Supp. 13 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10, 12-14

**STATUTES**

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1391(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. § 1391(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6, 16

Plaintiffs, the Detroit International Bridge Company ("DIBC") and the Canadian Transit Company ("CTC"), filed suit against Defendants the U.S. Department of Homeland Security, the U.S. Coast Guard ("USCG") and the U.S. Federal Highway Administration ("FHWA") (collectively, "U.S. Defendants"), as well as the Government of Canada ("Canada") alleging that Defendants violated international treaties, U.S. law, and Canadian law by conspiring to deny Plaintiffs the ability to construct a new bridge span and by promoting and pursuing the construction of the Detroit River International Crossing project ("DRIC").  U.S. Defendants hereby move this Court  pursuant to 28 U.S.C. § 1404(a), to transfer this matter to the District Court for the Eastern District of Michigan on the grounds that the case could have been brought there originally, and because transfer is in the interest of justice and would not inconvenience the parties.  The undersigned counsel has conferred with counsel for the Plaintiffs about this motion in compliance with L.Civ.R. 7(m).  Plaintiffs' counsel has indicated that the Plaintiffs will oppose this motion.  The undersigned counsel also conferred with counsel for Canada about this motion.  Canada's counsel indicated that they believe that the Eastern District of Michigan is the appropriate venue for this matter.  Canada's counsel indicated, however, that they believe it is appropriate for the Court to resolve Canada's pending motion to dismiss prior to reaching the merits of this motion.[1]

## I. INTRODUCTION

Plaintiffs are the owners and operators of the Ambassador Bridge, a toll bridge between the United States and Canada that connects Detroit, Michigan, to Windsor, Canada.  Pls.' Compl.

---

[1] U.S. Defendants do not oppose Canada's position to resolve Canada's motion to dismiss prior to making a ruling on this motion.  U.S. Defendants defer to the Court's judgment as to whether this motion should be decided prior to deciding U.S. Defendants' motion to dismiss.

at ¶1 (Dkt. 1). The Ambassador Bridge has been in operation for over 80 years. Id. Instead of performing maintenance on the existing Ambassador Bridge, Plaintiffs desire to "'twin' the bridge by building a second span (the 'New Span') directly alongside the original span." Id. ¶ 69. After completion of the New Span, the existing bridge would be "maintained, rehabilitated and kept available for emergency purposes." Id. ¶ 71. The New Span would expand the Ambassador Bridge from four to six lanes, and would allow for up to ten lanes of traffic if future plans were to require and accommodate such a change. Id. ¶¶ 70-71.

Plaintiffs contend that the construction of the New Span would be completed using only private funds. Id. ¶ 73. Plaintiffs also claim that the approach ramps for the New Span have been constructed, and that Plaintiffs "already own[] all the land between the ramp and the Detroit River on the Canadian side, and [they are] in the process of acquiring the final parcel of land needed on the U.S. side." Id. at ¶ 72. Plaintiffs contend that construction of the New Span is exempt from most permitting requirements, but concede that they must obtain a 1906 Bridges Act permit from the USCG. Id. ¶ 109. Plaintiffs first applied for a 1906 Bridges Act permit in 2004. Id. ¶114. Their application, however, was incomplete because Plaintiffs could not demonstrate that they owned all the land necessary for completion of the New Span. Accordingly, the USCG returned Plaintiffs' permit application.

Plaintiffs' suit contends that Defendants conspired to deny Plaintiffs this permit in order to ensure the success of a new project, the DRIC. The DRIC is a bi-national effort comprised of the FHWA, Canada, the Michigan Department of Transportation, and the Ontario Ministry of Transportation. See http://www.partnershipborderstudy.com/index.asp (last visited May 17, 2010). In addition to claiming that Defendants failed to issue them a 1906 Bridges Act permit, Plaintiffs also challenge the decision by FHWA to authorize construction of the DRIC.

Plaintiffs' claims regarding the approval of the DRIC are a reiteration of the claims that Plaintiff DIBC filed in a separate action challenging the sufficiency of the FHWA's decision to approve the DRIC under the National Environmental Policy Act ("NEPA").  See Latin Am. for Soc. and Econ. Dev. v. U. S. Fed. Highway Admin., Case No. 1:09-cv-00897-EGS (D.D.C.) ("DIBC I").[2]  DIBC I was originally filed in this district, but upon motion by the U.S. Defendants, it was transferred to the U.S. District Court for the Eastern District of Michigan, Case No. 2:10 CV 10082-AC-VMM.[3]  See DIBC I, Case No. 1:09-cv-00897-EGS (D.D.C.) (Dkt. No. 35).[4]  The Court found that transfer was appropriate because DIBC I could have been brought in the Eastern district of Michigan and that the balance of public and private interests weighed in favor of transferring the case to the Eastern District of Michigan.  Id.[5]  Because the same factors are present in this case and because this matter should be consolidated with DIBC I, this Court should transfer this case to the Eastern District of Michigan.

## II.    ARGUMENT

### A.    The Court Has Broad Discretion To Transfer This Case Under 28 U.S.C. § 1404(a)

This Court has the authority under 28 U.S.C. § 1404(a) to transfer this case to the Eastern District of Michigan.  Section 1404(a) states that, "[f]or the convenience of parties and

---

[2] The complaint for this matter is attached as Exhibit 1.

[3] The complaint for this matter is attached as Exhibit 2.

[4] A copy of the Court's decision is attached as Exhibit 3.

[5] Plaintiffs also moved the Court to reconsider its decision to transfer the venue to the Easter District of Michigan.  Id. (Dkt. No. 41).  The Court upheld its decision.  Latin Am. for Soc. and Econ. Dev. v. U. S. Fed. Highway Admin., 2010 WL 199823; 2009 U.S. Dist. LEXIS 122819 (D.D.C. Jan. 11, 2010).

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court has broad discretion to adjudicate a motion to transfer venue. Miller v. Toyota Motor Corp., No. 08-1613 (ESH), 2009 WL 1531658 (D.D.C. June 2, 2009).

District courts use a two-step analysis to determine whether a case should be transferred. The threshold question is whether the case could have been brought in the forum to which transfer is sought. 28 U.S.C. § 1404(a). See Stockbridge-Munsee Cmty. v. United States, 593 F. Supp. 2d 44, 46 (D.D.C. 2009); Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 23 (D.D.C. 2002). Second, the court makes an individual case-by-case consideration of convenience and fairness by considering nine public and private-interest factors. Airport Working Group of Orange County, Inc. v. Dep't of Def., 226 F. Supp. 2d 227, 229 (D.D.C. 2002); Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983).

As Defendants establish below, the connection between Plaintiffs, the controversy, and the chosen forum in this case — the judicial district of the District of Columbia — is highly attenuated. The weak relationship of the lawsuit to this forum favors transfer to the judicial district where the project and the Plaintiffs are located — the Eastern District of Michigan.

**B.     This Case Could Have Been Brought In The Eastern District Of Michigan**

The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a), is the requirement that the new forum be a "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a); see also S. Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) ("SUWA"). Where the case "might have been brought" is determined by reference to 28 U.S.C. § 1391(e), which provides that in suits against agencies of the United States, venue is proper in "any judicial district in which (1) a defendant in the action

resides, (2) a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) the plaintiff resides . . . ." Id. Plaintiffs could have brought their case in the Eastern District of Michigan under either of the latter two grounds.

As the Complaint makes plain, the challenged acts or omissions occurred in the Eastern District or Michigan (or across the Detroit River in Canada), where the proposed DRIC will be and where a portion of the Ambassador Bridge is located, and, if approved, where a portion of the New Span would be located. See e.g., Compl. ¶¶ 1, 70. Accordingly, the action could have been brought there under § 1391(e)(2). See 28 U.S.C. § 102.

Plaintiffs also might have brought suit in the Eastern District of Michigan because DIBC resides in that District. Compl. ¶ 17. According to the complaint, DIBC is a Michigan corporation with its principal place of business in Warren, Michigan. Thus, the suit could have been brought there under 28 U.S.C. § 1391(e)(3). Because this case "might have been brought" in the Eastern District of Michigan, the Court has power to transfer the case there. 28 U.S.C. § 1404(a).

    **C.**    **The Interest Of Justice Favors Transfer Of This Action To The Eastern District Of Michigan.**

In determining whether to transfer a case, courts consider the balance of various public-interest and private-interest factors:

> The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.
>
> The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the

>potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Shawnee Tribe, 298 F .Supp. 2d at 24 (citation omitted).  Here, all factors except for the Plaintiffs' choice of forum either support transfer or do not favor either venue.  This case involves a dispute over the alleged promotion of the DRIC project and the alleged delay or conspiracy against the New Span project.  A substantial portion of both of these projects are located (or would be located) in the Eastern District of Michigan.  Plaintiffs' Complaint contains no mention of the District of Columbia except when describing U.S. Defendants in the venue section.

> **D.    The Private Interest Factors Favor Transfer Of This Action To The Eastern District Of Michigan.**

A review of the private interest factors overwhelmingly supports transfer of venue to the Eastern District of Michigan.  First, the plaintiff's choice of forum is given little deference by the court where, as here, "transfer is sought to the plaintiffs' resident forum."  Airport Working Group, 226 F. Supp. 2d at 230 (internal citations omitted); Stockbridge-Munsee, 593 F. Supp. 2d at 47; Dole, 561 F. Supp. at 1239.  Here, DIBC's home forum is Michigan.  Neither Plaintiff claims to reside in the District of Columbia.

In addition, the deference to a plaintiff's chosen forum is diminished where, as here, "the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter," and where the transferee court is in a state that does have a significant connection to the plaintiffs and subject matter of the lawsuit.  Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 17 (D.D.C. 1996); Sierra Club v. Flowers, 276 F. Supp. 2d 62, 67 (D.D.C. 2003)(finding that plaintiffs' choice of forum "merit[ed] little deference" where District of Columbia lacked meaningful ties to lawsuit).

7

Defendants' choice of forum is the forum in which the DRIC project, the New Span project, and the federal decisionmakers are located — the Eastern District of Michigan. The DRIC project will be located in that district and the key decision-makers with supervisory authority over the project are located in or near the Eastern District.[6]

The third factor, where the claim arose, also argues in favor of transfer. The U.S. side of both the DRIC and the New Span would be located in Detroit, and the environmental and financial impacts will affect residents of that city, including those whose interests are not represented by Plaintiffs. The environmental impact statement ("EIS") for the DRIC was prepared in Michigan and the record of decision was signed there. SUWA, 315 F. Supp. 2d at 87 (citing as an important fact that Utah-based Bureau of Land Management officials were the decision-makers in deciding to transfer case filed in D.C. to Utah); Trout Unlimited, 944 F. Supp. at 18 (granting transfer motion where EIS prepared in Denver and record of decision was signed there); National Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 47 (D.D.C. 2006) (transferring case where agency decision-makers located in Florida and disputed decisions were made in Florida). Compare with Greater Yellowstone Coal. v. Kempthorne, 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008) (transfer denied where challenged rule was drafted and published in the District of Columbia, signed by federal official that worked in the District of Columbia, and Plaintiffs averred "significant involvement on the part of high-level Executive Branch officials, up to and including the White House."). The environmental studies supporting the EIS were

---

[6] The decisionmakers in this case are those that were involved in compiling the record of decision for the DRIC project, as well as those that put together the environmental impact statement for that project. These documents are located at:
http://www.partnershipborderstudy.com/index.asp.

conducted there; the public meetings, workshops, and hearings were held there; and the draft NEPA documents were issued there.

Plaintiffs presumably will argue that events giving rise to this suit occurred in Washington, D.C., and that the case should be heard here, because the FHWA and USCG are headquartered here.  Any such argument must be treated with skepticism.  Trout Unlimited, 944 F. Supp. at 17 (where District of Columbia has no meaningful ties to or interest in lawsuit "this Court must be especially cautious.").  Although two of the U.S. defendants are located in Washington, "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here ... is charged with generally regulating and overseeing the [administrative] process." DeLoach v. Philip Morris Co., Inc., 132 F. Supp. 2d 22, 25 (D.D.C. 2000); Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 19 (D.D.C. 2008).  Because all federal agencies have their headquarters and high-level officials located in Washington, D.C., in theory any action challenging a decision, practice, or omission could be brought in Washington. Accordingly, courts in this Circuit are vigilant "to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993); Flowers, 276 F. Supp. 2d at 65.  Otherwise, "[b]y naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." Cameron, 983 F.2d at 256.

The convenience of the parties also weighs in favor of transfer to the Eastern District of Michigan.  Plaintiff DIBC is based in Detroit and is the parent company to CTC.  Moreover, Plaintiff DIBC is no stranger to litigation in the Eastern District of Michigan and it cannot plausibly contend that it would be inconvenienced if forced to litigate there.  The attached PACER report shows that in the last 15 years DIBC was a party to over 14 lawsuits in the

Eastern District of Michigan.[7]  In eight of those cases, DIBC or an affiliate either filed suit in or removed the case to the Eastern District of Michigan.  Indeed, the DIBC has recently sued the Michigan Department of Transportation ("MDOT") over the DRIC proposal in Michigan State Court in Detroit based on the same set of operative facts.[8]  DIBC is also a party to several cases pending in state courts in Michigan, including two in which it is a plaintiff.  See Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d at 48 (rejecting plaintiffs' claims that transferee forum would be inconvenient where plaintiffs were "presently litigating other matters" there).

The fifth and sixth private interest factors are neutral with respect to venue.  This case will be reviewed under the APA on the basis of an administrative record.  Under the APA, judicial review of an agency action is generally limited to the administrative record compiled by the agency, 5 U.S.C. § 706; see Camp v. Pitts, 411 U.S. 138, 142 (1973), and discovery is not allowed.  Thus, the convenience of witnesses and the ease and access to proof "has less relevance because this case involves judicial review of an administrative decision." Trout Unlimited, 944 F. Supp. at 18; see also SUWA, 315 F. Supp. 2d at 88 (declining to consider convenience to witnesses where court's review would be based upon administrative record and parties agreed witnesses would not be necessary); Flowers, 276 F. Supp. 2d at 69 (because the case involved review of an administrative record, "the location of witnesses is not a significant factor").[9]

---

[7] Attached hereto as Exhibit 4 is the PACER report showing litigation in the Eastern District of Michigan listing DIBC as a party.

[8] Attached hereto as Exhibit 5 is the Complaint filed by DIBC against MDOT on June 15, 2009.

[9] To the extent that witnesses would be called for any reason, the convenience of such witnesses would also favor the Eastern District of Michigan, since most of the witnesses are located in or
(continued...)

The convenience of the parties, where the claims arose, and the defendants' choice of forum all argue strongly in favor of granting this motion to transfer the case. Although Plaintiffs' choice of forum weighs against transfer, that factor should be afforded less deference given the lack of any meaningful connection between the plaintiffs, the subject matter of their lawsuit, and this forum. Therefore, the private interest factors strongly weigh in favor of transfer.

### E. Because This Case Involves A Dispute Over The Disclosure Of Effects Of A Project On A Detroit Community, The Public Interest Factors Favor Transfer To The Eastern District Of Michigan.

The public interest factors likewise support transfer to the Eastern District of Michigan. The first two factors, the degree to which the courts in both venues are familiar with the governing laws and the relative congestion of the calendars of the potential transferee and transferor courts, weigh in favor of neither party. Both the District of Columbia and Michigan Federal Courts are equally capable of determining issues of compliance with federal law under the APA. S. Utah Wilderness Alliance v. Norton, No. Civ. A 01-25-18 (CKK), 2002 WL 32617198, at *4 -*5 (D.D.C. June 28, 2002) (finding that both Utah courts and District of Columbia courts were equally capable of determining NEPA claims). Transfer to the District of Michigan will not lead to any unnecessary delay due to docket congestion.[10] Nor would transfer

---

[9](...continued)
near the District. See S. Utah Wilderness Alliance v. Norton, 2002 WL 32617198, *4 (D. D.C. June 28, 2002) (noting that if witnesses were necessary, "it appears that any relevant witnesses regarding the agency's decision and actions reside in Utah").

[10] There is no appreciable difference in the median time from filing to disposition in civil cases between the Eastern District of Michigan and the District of Columbia: 9.7 months (E.D. Mi.) versus 8.5 months (D.D.C). See U.S. District Court — Judicial Caseload Profile, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl.

11

to Michigan lead to delay given that this case is in its "earliest stages" such that this Court has not had to familiarize itself with the underlying merits of the case. See Trout Unlimited, 944 F. Supp. at 19 (where case was "in its earliest stages," no delay would result from transfer). Compare with Greater Yellowstone Coal., 2008 WL 1862298, *5 (denying transfer motion where court had "a long history with the facts and law surrounding this case and the prior [related] litigation.").

The third, and most important of the public interest factors is the interest in deciding local controversies at home. S. Utah Wilderness Alliance, 2002 WL 32617198, at *3 (noting local interest factor is arguably the most important of the public interest factors); see also Citizen Advocates, 561 F. Supp. at 1240. Here, that factor weighs decidedly in favor of transfer. In matters of land use decisions, absent special factors not present here, such disputes "should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit . . . .'" Trout Unlimited, 944 F. Supp. at 20 (citation omitted). As the Supreme Court has stated,

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. *There is a local interest in having localized controversies decided at home.*

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) (emphasis added). "This policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record." Trout Unlimited, 944 F. Supp. at 19.

In this case, the residents of Michigan have a "compelling interest . . . in having this localized controversy decided at home." Trout Unlimited, 944 F. Supp. at 19; see also Citizen Advocates, 561 F. Supp. at 1240 (transferring case to Texas from Washington, D.C. because

12

highway proposal was uniquely local concern); SUWA, 315 F. Supp. 2d at 88-89 (transferring to Utah a case challenging decision to allow sale of oil and gas leases on BLM-managed lands there); Airport Working Group, 226 F. Supp. 2d at 230 (transferring case with NEPA claim to state where military facility was located). As evidenced by the intense scrutiny to which the project has been subject, from its inception, by the citizens who reside in Detroit – including the community-based organizations that are Plaintiffs in a separate lawsuit– there is a strong local interest in resolving this dispute. See DIBC I, Case No. 1:09-cv-00897-EGS (D.D.C.), Memorandum Opinion (Dkt. No. 35) at 13-20; see also Bergmann v. U.S. Dep't of Transp., No. 09-cv-1378 (EGS) (D. D.C.).[11] The allegations in the plaintiffs' complaint in DIBC I, No. 2:10 CV 10082-AC-VMM (E.D. Mich.) attest to the local interest in the DRIC project. See Trout Unlimited, 944 F. Supp. at 20 (local interest supported transfer motion where "a great number of comments for and against the proposed action have been submitted by citizens of Colorado during the public comment phase, demonstrating the interest of the people of Colorado in this matter"). In this regard, transfer would particularly benefit Detroit citizens and community groups with an interest in the dispute but whose interests are not represented by Plaintiffs. Such groups and individuals will be better able to effectively follow the litigation if it takes place in Detroit, where it will likely be subject to regular coverage by the local media, than if the case is litigated hundreds of miles away.

In addition, the involvement of the state and local government entities that have

---

[11] Additionally, there is another case challenging the DRIC project that originated in this Court. This case, like DIBC I, has been transferred to the Eastern District of Michigan. See Bergmann v. U.S. Dep't of Transp., No. 09-cv-1378 (EGS) (Dkt. 23) (attached as Exhibit 6). This case also serves as an example of the local interests in the DRIC project. Moreover, it supports the transfer of this matter to the Eastern District of Michigan, as that district will be presiding over a number of DRIC-based lawsuits.

13

collaborated on the DRIC project attests to the local interest of Detroit residents in the project. As Plaintiffs acknowledge in their complaint, the MDOT played a role in the DRIC and New Span projects. The parallel decision-making process at the state level argues in favor of transfer to Michigan. Flowers, 276 F. Supp.2d at 70-71 (local interest demonstrated when federal action was issued to further plan "drafted by a state committee and adopted by the Florida legislature"); Trout Unlimited, 944 F. Supp. at 17 (transferring NEPA lawsuit challenging reservoir operation where "other, very interested parties," such as dam owner and state water conservation board, were located in forum state). Under the current proposal, the state of Michigan would own the section of the proposed DRIC bridge in the United States. MDOT is also a major party in the construction of the Gateway Interchange, which is an important part of Plaintiffs' allegations with regard to the New Span. Both projects are also projected to bring thousands of jobs to the local economy.

In sum, the familiarity of the Eastern District of Michigan with environmental claims, the relative congestion of courts, and the local interest in this case argue in favor of transfer. This case concerns a matter of significant controversy in and concern to the southwest Detroit area. The DRIC project will have the greatest impact on the citizens of Michigan. Thus, this case should be transferred to the Eastern District of Michigan.

### F. Transfer Is Also Warranted Because This Case Should Be Consolidated With Another Matter In The Eastern District Of Michigan

The existence of another similar case pending in the Eastern District of Michigan where plaintiff DIBC is also challenging the DRIC project further supports a transfer of venue because these cases should be consolidated. The general rule applicable when identical lawsuits are pending in separate federal courts is "to avoid duplicative litigation." Smith v. S.E.C., 129 F.3d

356, 361 (6th Cir. 1997) (citation omitted). Therefore, when two or more cases "are intimately related and hinge upon the same factual nuclei . . . [p]endency of such a related action in the transferee forum weighs heavily in favor of transfer." Berg v. First American Bankshares, Inc., 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983) (citation and internal quotations omitted); see also Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 (a) was designed to prevent.").

This case should be transferred to the Eastern District of Michigan to allow U.S. Defendants to move to consolidate this matter with DIBC I, because both cases involve the same plaintiff challenging the same action. See Hanson v. District of Columbia, 257 F.R.D. 19, 21 (D.D.C. 2009) ("Actions that involve the same parties are apt candidates for consolidation . . . Moreover, consolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts." (citations omitted)). In this matter, Plaintiff DIBC challenges the decisions of U.S. Defendants to "proceed[] toward the construction of the DRIC Bridge," Compl. ¶ 148 (First Claim), "to ensure, without lawful justification, that the DRIC Bridge receives rapid approval," id. ¶ 157 (Second Claim), "to promot[e] and pursu[e] the DRIC Bridge," id. ¶ 191 (Ninth Claim), and "to proceed with and promote the construction of the DRIC Bridge . . . [and] insist[] on locating the DRIC Bridge in close proximity to the Ambassador Bridge," id. ¶¶ 196-97 (Tenth Claim). To the extent any of these claims are viable, they must challenge a final agency action.[12] Such action in

---

[12] Plaintiffs may not seek judicial review of their claims under section 702 of the APA because
(continued...)

this case would be the record of decision ("ROD") approving the DRIC project. The ROD for the DRIC project is precisely what Plaintiff DIBC is challenging in DIBC I.

In DIBC I, DIBC challenges the FHWA's decision to approve the DRIC in much the same manner as it does in this case. For example, Plaintiffs' claims challenging the decision to proceed with the DRIC are nearly identical to those in DIBC I, in which DIBC claims that "the US DRIC Proponents' actions in approving the DRIC project are arbitrary, capricious and contrary to law, and must be reversed, set aside and remanded pursuant to NEPA and the APA." DIBC I Compl. ¶ 307. The claims in DIBC 1 also challenge the location of the DRIC, id. ¶ 306(e) ("The location . . . was predetermined before the initiation of the NEPA process, and was the result of Defendants' bias toward construction of a new crossing"), as well as the need for the DRIC, id. ¶ 306(a) ("The Final EIS's Statement of Purpose and Need is not supported by the available evidence"). Ultimately, both actions seek to enjoin U.S. Defendants from proceeding with the DRIC. Because Plaintiffs seeks the same remedy in two separate courts, there exists a possibility for two contradictory outcomes. See, e.g. Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia R. Co., 411 F.2d 320, 326 (5th Cir. 1969) (the court held that when the same case was pending in a different court, "that, as a minimum, the Trial Court should have transferred th[e] case under 28 U.S.C. § 1404(a)"). Accordingly, in order to avoid such a situation, this Court should transfer this case to the Eastern District of Michigan.

---

[12]/(...continued)
they have failed to identify a statutory private right of action outside of the APA. Therefore, Plaintiffs may only seek judicial review of their claims in this case under section 704 of the APA. Pursuant to this section, a plaintiff may seek judicial review of an agency action only if it is a "final agency action." 5 U.S.C. § 704.

### III.     CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and transfer this case to the United States District Court for the Eastern District of Michigan.

Dated:  July 8, 2010.                                         Respectfully submitted,

**IGNACIA S. MORENO**
Assistant Attorney General
Environment and Natural Resources Division

 */s/ Peter C. Whitfield*
**PETER C. WHITFIELD**
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0430
E-mail: peter.whitfield@usdoj.gov