IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Peter C. Whitfield,
Hawaii Bar No. 08749
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Phone: (202) 305-0430
Fax:  (202) 305-0274
peter.whitfield@usdoj.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DETROIT INTERNATIONAL BRIDGE COMPANY,** *et al.*, | ) ) ) ) | Case No. 1:10-cv-00476-RMC |
| Plaintiffs, | ) ) | **U.S. DEFENDANTS' MOTION TO DISMISS** |
| v. | ) ) | |
| **THE GOVERNMENT OF CANADA,** *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     STANDARD FOR A MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Plaintiffs Failed To Identify A Source Of Law That Provides A Private
                Right Of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      Plaintiffs Have Failed To Challenge A Final Agency Action . . . . . . . . . 11

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

## CASES

Ashcroft v. Iqbal,
    __ U.S. __, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Avella v. U.S. Army Corps of Eng'rs,
No. 89-10064-Civ.-JLK, 1990 U.S. Dist. LEXIS 21023, 1990 WL 84499 (S.D.Fla. 1990) . . . . 15


Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Bennett v. Spear,
    520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Canadian Transport Co. v. United States,
    663 F.2d 1081 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chang v. Reno,
    986 F. Supp. 19 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cornejo v. County of San Diego,
    504 F.3d 853 (9th Cir. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Hwy. Traffic Safety Admin.,
    452 F.3d 798 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

DiLaura v. Power Auth. of New York,
    786 F. Supp. 241 (W.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

El Rescate Legal Serv. v. Exec. Office of Immigration Review,
    959 F.2d 742 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FTC v. Standard Oil Co.,
    449 U.S. 232 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Gage v. Commonwealth Edison Co.,
    356 F. Supp. 80 (N.D. Ill. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Hamdan v. Rumsfeld,
    415 F.3d 33 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Haudenosaunee Six Nations of Iroquois (Confederacy) of N. Am. v. Canada,
    No. 98-0112E(H), 1998 U.S. Dist. LEXIS 16265 (W.D.N.Y. Oct. 14, 1998) . . . . . . . . 8

Head Money Cases,

112 U.S. 580 (1884) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heckler v. Chaney,

470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Indus. Safety Equip. Ass'n. v. EPA,

837 F.2d 1115 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Invention Submission Corp. v. Rogan,

357 F.3d 452 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

John Doe, Inc. v. DEA,

484 F.3d 561 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Karahalios v. Nat'l Fed'n of Fed. Employees, Local 263,

489 U.S. 527 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Latin Am. for Soc. and Econ. Dev. v. Adm'r, Fed. Hwy. Admin.,

No. 2:10 CV 10082-AC-VMM (E.D. Mich., 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Latin Am. for Soc. & Econ. Dev. v. Adm'r, Fed. Hwy. Admin.,

No. 1:09-cv-00897-EGS (D.D.C., Jan. 11, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

Lotz Realty Co. v. United States,

757 F. Supp. 692 (E.D.Va. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Matta-Ballesteros v. Henman,

896 F.2d 255 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. United States,

583 F.2d 857 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Nat'l Wildlife Fed'n v. Brownlee,

402 F. Supp. 2d 1 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

New Jersey v. United States NRC,

526 F.3d 98 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Norton v. S. Utah Wilderness Alliance,

542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16, 17, 19

Or. Natural Res. Council v. Thomas,

92 F.3d 792 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pa. Mun. Auths. Ass'n v. Horinko,

292 F. Supp. 2d 95 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Potomac River Ass'n v. Lundeberg Md. Seamanship Sch., Inc.,

402 F. Supp. 344 (D. Md. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,

324 F.3d 726 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Stillufsen v. Evans,
    No. 03-2355(MLC), 2005 U.S. Dist. LEXIS 20039 (D.N.J. Sept. 2, 2005) . . . . . . . . . . 14

Suter v Artist M.,
    503 U.S. 347 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thompson v. Thompson,
    484 U.S. 174 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Touche Ross & Co. v. Redington,
    442 U.S. 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Trudeau v. FTC,
    456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

United States v. Alvarez-Machain,
    504 U.S. 655 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Emuegbunam,
    268 F.3d 377 (6th Cir. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Zabaneh,
    837 F. 2d 1249 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATUTES**

5 U.S.C. § 551(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

5 U.S.C. § 551(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 551(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 U.S.C. § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 4332(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

36 Stat. 2448 (May 13, 1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Act of Mar. 4, 1921, 66th Cong., ch. 167, 41 Stat. 1439 . . . . . . . . . . . . . . . . . . . . . . 6, 9

Act of Apr. 17, 1924, 68th Cong., ch. 125, 43 Stat. 103 . . . . . . . . . . . . . . . . . . . . . 6, 10

Act of Mar. 3, 1925, 68th Cong., ch. 448, 43 Stat. 1128 . . . . . . . . . . . . . . . . . . . . . 6, 10

Act of May 13, 1926, 69th Cong., ch. 292, 44 Stat. 535 . . . . . . . . . . . . . . . . . . . . . 6, 10

**RULES**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **REGULATIONS**

33 CFR § 115.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

40 C.F.R. § 1501.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

40 C.F.R. §§ 1501.4(b), 1508.9(a)(1), 1508.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Plaintiffs, Detroit International Bridge Company ("DIBC") and the Canadian Transit Company ("CTC"), filed suit against Defendants the U.S. Department of Homeland Security, the U.S. Coast Guard ("USCG") and the U.S. Federal Highway Administration ("FHWA") (collectively, "U.S. Defendants"), as well as the Government of Canada ("Canada") alleging that Defendants conspired to deny Plaintiffs a 1906 Bridges Act permit in violation of international treaties, U.S. law, and Canadian law.  Plaintiffs also contend that Defendants are violating their rights under an international treaty and U.S. and Canadian law by proceeding with a project that will result in the construction of a bridge that will compete with Plaintiffs' bridge. U.S. Defendants hereby move this Court to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Plaintiffs are the owners and operators of the Ambassador Bridge, a toll bridge between the United States and Canada that connects Detroit, Michigan to Windsor, Canada.  Pls.' Compl. at ¶1.  The Ambassador Bridge has been in operation for over 80 years.  Id.  As an alternative to performing maintenance on the existing Ambassador Bridge, Plaintiffs desire to "'twin' the bridge by building a second span (the 'New Span') directly alongside the original span." Id. ¶ 69.  Once the New Span becomes operable, the existing portion or old span of the Ambassador Bridge would no longer be utilized, but would be "maintained, rehabilitated and kept available for emergency purposes."  Id. ¶ 71.  The New Span would expand the Ambassador Bridge from four to six lanes.  Id.  ¶¶ 70-71.

 Plaintiffs contend that most obstacles to construction have been removed, alleging that the approach ramps for the New Span have been constructed, and that Plaintiffs "already own[] all the land between the ramp and the Detroit River on the Canadian side, and [they are] in the

process of acquiring the final parcel of land needed on the U.S. side." Id. at ¶ 72.  According to Plaintiffs, construction of the New Span would be completed using only private funds. Id. ¶ 73. Based on the private nature of the funding, Plaintiffs state that construction of the New Span is exempt from most permitting requirements, but concede that they must obtain a 1906 Bridges Act permit from the USCG. Id. ¶ 109.  Plaintiffs first applied for a 1906 Bridges Act permit in 2004. Id. ¶114.  Their application, however, was incomplete because Plaintiffs could not demonstrate that they owned all the land necessary for completion of the New Span. Accordingly, the USCG returned Plaintiffs' permit application.

Plaintiffs suit alleges that Defendants conspired to deny Plaintiffs a 1906 Bridges Act permit in order to ensure the success of a new bridge building project, the Detroit River International Crossing project ("DRIC").  The DRIC is a binational effort comprised of the FHWA, Canada, the Michigan Department of Transportation, and the Ontario Ministry of Transportation. See http://www.partnershipborderstudy.com/index.asp (last visited July 1, 2010).  Plaintiffs not only challenge USCG's refusal to process Plaintiffs' permit application, but they also challenge the decision by Defendants to authorize construction of the DRIC.[1]  None of Plaintiffs' claims are cognizable, however, because a majority of their claims seek relief pursuant to legal instruments that do not provide a private right of action.  The remainder of

---

[1] This challenge appears to be a reiteration of the claims DIBC filed in a separate action that challenged the sufficiency of the FHWA's decision to approve the DRIC under the National Environmental Policy Act ("NEPA").  See Latin Am. for Soc. and Econ. Dev. v. Adm'r, Fed. Highway Admin., No. 1:09-cv-00897-EGS (D.D.C.). Upon motion by the U.S. Defendants, this case was transferred to the U.S. District Court for the Eastern District of Michigan, Case No. 2:10 CV 10082-AC-VMM.  See Latin Am. for Soc. and Econ. Dev. v. Adm'r, Fed. Highway Admin., No. 1:09-cv-00897-EGS (D.D.C.) (Dkt. No. 35). Plaintiffs also moved the Court to reconsider its decision to transfer the venue to the Easter District of Michigan.  Id. (Dkt. No. 41). The Court upheld its decision.  Id.

Plaintiffs' claims invoke the Administrative Procedure Act ("APA"), which limits review to final

actions.  Because Plaintiffs have not challenged a final action, this Court must dismiss Plaintiffs'

claims in their entirety.

## II.     STANDARD FOR A MOTION TO DISMISS

A defendant may move to dismiss a claim for failure to state a claim upon which relief

can be granted.  Fed. R. Civ. P. 12(b)(6).  To avoid dismissal, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted);

see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007).  A claim is facially plausible

when the pleaded content "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).

In reviewing a motion to dismiss a complaint for failure to state a claim, a court treats the

complaint's factual allegations as true and draws all reasonable inferences therefrom in the

plaintiff's favor.  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  A court, however,

need not accept as true inferences unsupported by facts set out in the complaint or legal

conclusions cast as factual allegations.  Id. at 242.  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at

1949 (citing Twombly, 550 U.S. at 555).

## III.   ARGUMENT

Plaintiffs' complaint contains a number of claims against both Canada and the United States and its agencies.[2]   The claims brought against the United States fall into one of two categories:  those founded on treaty law and related Acts of Congress, and those challenging government action under the APA.  Though the claims in both categories must be dismissed for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reasoning for doing so differs.  Plaintiffs' first-category claims fail to state a judicially reviewable claim because the legal authorities they are premised upon do not provide a private right of action.  To the extent that Plaintiffs attempt to pursue these claims under the APA, they fail for the same reason as the second-category claims.  The claims in the second category are insufficiently pleaded because they fail to satisfy a prerequisite for bringing a suit under the APA; that being a challenge to a final agency action.  Because Plaintiffs may argue that all of their claims are brought pursuant to the APA, U.S. Defendants will analyze their claims as such.

### A.   Plaintiffs Failed To Identify A Source Of Law That Provides A Private Right Of Action

Plaintiffs base claims one and two against U.S. Defendants on alleged violations of the Convention Concerning the Boundary Waters Between the United States and Canada ("The Boundary Waters Treaty"), 36 Stat. 2448, as well as certain acts of Congress ("Bridge Acts") that authorized and governed the construction of the Ambassador Bridge.  <u>See</u>  Act of Mar. 4,

---

[2] Of Plaintiffs eleven claims, only seven involve U.S. Defendants.  The remainder of the claims are against Canada only.  Accordingly, this motion is seeking dismissal of those seven claims (Claims One, Two, Seven, Eight, Nine, Ten, and Eleven).

1921, 66th Cong., ch. 167, 41 Stat. 1439.[3]  None of these legal instruments expresses an intent to allow for a private right of action.  Plaintiffs, therefore, cannot show that they have a legal basis to pursue their claims one and two under the Boundary Waters Treaty and the Bridge Acts.

Plaintiffs failure to allege a claim under a statute that provides a private right of action also prevents them from pursuing these claims under the APA.  In the D.C. Circuit, courts interpret the APA as providing a waiver of the United States' sovereign immunity, thereby allowing a private party to bring a claim against the United States.  See Trudeau v. FTC, 456 F.3d 178, 186 (D.C. Cir. 2006) ("there is no doubt that § 702 [of the APA] waives the Government's immunity from actions seeking relief other than money damages.") (citation and internal quotation marks omitted).  Though the APA may serve as a waiver of sovereign immunity, it does not automatically provide a party with a private right of action where a statute does not.  Id. at 188.  Section 702 of the APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 (emphasis added).  In the absence of a statutory private right of action, a plaintiff must seek judicial review of a claim under section 704 or 706 of the APA.  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 61-62 (2004).

A plaintiff seeking to enforce a federal statute bears the burden of showing that a right of action exists within the statute.  Suter v Artist M., 503 U.S. 347, 363-364 (1992); see also Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of

---

[3] This act was amended by three subsequent acts, Act of Apr. 17, 1924, 68th Cong., ch. 125, 43 Stat. 103; Act of Mar. 3, 1925, 68th Cong., ch. 448, 43 Stat. 1128; and Act of May 13, 1926, 69th Cong., ch. 292, 44 Stat. 535.  These will all be referred to collectively as the Bridge Acts.

action in favor of that person.").  In order to determine whether a private right of action exists in

a federal statute, courts look to "Congress' intent in enacting the statute." <u>Thompson v.</u>

<u>Thompson</u>, 484 U.S. 174, 179 (1988).  Unless congressional intent is clearly stated or can

reasonably be inferred, "the essential predicate for implication of a private remedy simply does

not exist." <u>Karahalios v. National Fed'n of Fed. Employees, Local 263</u>, 489 U.S. 527, 533

(1989) (quoting <u>Thompson</u>, 484 U.S. at 179).

      The process for determining whether a treaty provides a private right of action is similar

to the process courts use in analyzing a statute. <u>See</u> <u>Cornejo v. County of San Diego</u>, 504 F.3d

853, 858 (9th Cir. Cal. 2007) ("In construing a treaty, as in construing a statute, we first look to

its terms to determine its meaning.") (citing <u>United States v. Alvarez-Machain</u>, 504 U.S. 655,

663 (1992)).  In analyzing a treaty, however, courts follow the general rule that there is a

presumption against such rights.  <u>Id.</u> at 858-59 ("most courts accept a 'presumption' against

inferring individual rights from international treaties"); <u>see also</u> <u>Hamdan v. Rumsfeld</u>, 415 F.3d

33, 38 (D.C. Cir. 2005) ("[T]his country has traditionally negotiated treaties with the

understanding that they do not create judicially enforceable rights.") (citations omitted); <u>United</u>

<u>States v. Emuegbunam</u>, 268 F.3d 377, 389 (6th Cir. Mich. 2001) ("As a general rule, however,

international treaties do not create rights that are privately enforceable in the federal courts.")

(citing <u>Head Money Cases</u>, 112 U.S. 580, 598 (1884));  <u>Matta-Ballesteros v. Henman</u>, 896 F.2d

255, 259 (7th Cir. 1990) ("It is well established that individuals have no standing to challenge

violations of international treaties in the absence of a protest by the sovereigns involved.").  This

"presumption" exists because traditionally only the sovereigns party to a treaty may enforce its

provisions, and any such enforcement takes place through diplomatic channels – not in federal

court. <u>See</u> <u>Canadian Transport Co. v. United States</u>,  663 F.2d 1081, 1092 (D.C. Cir. 1980) ("In

the absence of specific language in the treaty waiving the sovereign immunity of the United

States, the treaty must be interpreted in accord with the rule that treaty violations are normally to

be redressed outside the courtroom."); United States v. Zabaneh, 837 F. 2d 1249, 1261 (5th Cir.

1988) (treaties are "designed to protect the sovereign interests of nations, and it is up to the

offended nations to determine whether a violation of sovereign interests occurred and requires

redress").

      The Boundary Waters Treaty does not create a private right of action because it serves

only to establish an agreement between nations.  The purpose of the Boundary Waters Treaty is

"to prevent disputes regarding the use of boundary waters" and "to make provision for the

adjustment and settlement" of questions "between the United States and the Dominion of Canada

involving the rights, obligations, or interests of either in relation to the other or to the inhabitants

of the other."  36 Stat. 2448.  Nowhere within the Treaty's text exists an expression of intent

between the United States and Canada to grant its citizens a private right of action to enforce the

Treaty's terms.  In fact, other courts interpreting the Boundary Waters Treaty have concluded

that it does not provide a private right of action.  See  Miller v. United States, 583 F.2d 857,

859-860 (6th Cir. 1978) ("The treaty [the Boundary Waters Treaty of 1909] does not create

additional  private rights of action for a United States citizen against his own government."); see

also id. at 860 ("The two countries in signing the treaty agreed to accept responsibility for the

international repercussions of domestic water control projects, but there is no indication that the

treaty also expresses an intent on the part of either government to accept new obligations

vis-a-vis its own citizens."); Haudenosaunee Six Nations of Iroquois (Confederacy) of N. Am. v.

Canada, No. 98-0112E(H), 1998 U.S. Dist. LEXIS 16265 (W.D.N.Y. Oct. 14, 1998) ("It is

readily apparent . . . that the Treaty [the Boundary Waters Treaty of 1909] does not create a

private cause of action.") (citing <u>DiLaura v. Power Authority of New York</u>, 786 F. Supp. 241, 252 (W.D.N.Y. 1991)).  Accordingly, Plaintiffs cannot invoke the Boundary Waters Treaty as a basis for relief, and any claim founded on this Treaty must be dismissed.

The Bridge Acts also do not confer Plaintiffs with a private right of action for the relief they seek because these acts serve only to authorize the construction of the Ambassador Bridge and govern its ownership; they do not grant a private right of action.  According to their complaint, Plaintiffs claim that the construction of the DRIC Bridge "is a violation of [Plaintiffs'] rights under the U.S. and Canadian legislation constituting the [Bridge Acts] and the Boundary Waters Treaty."  Pls.' Compl. ¶ 153.  Likewise, Plaintiffs claim that their rights under the Boundary Waters Treaty and Bridge Acts have been violated by Defendants decision to approve the DRIC.  <u>Id.</u> ¶ 157.  The Bridge Acts, however, contain no provision guaranteeing Plaintiffs an exclusive right to construct a bridge in a particular area, nor do they contain a provision prohibiting the United States or Canada from authorizing other bridges in the same area.  In fact, the Bridge Acts do not proscribe any conduct unlawful.

The first of theses acts states that "the consent of Congress is hereby granted to American Transit Company . . . to construct, maintain, and operate a bridge and approaches thereto across Detroit River at a point suitable to the interests of navigation."  41 Stat. 1439.  It also states that the owner of the bridge must conduct the construction and operation of the bridge "in accordance with the provisions of the Act entitled 'An Act to regulate the construction of bridges over navigable waters,' approved March 23, 1906."  <u>Id.</u>  Additionally, section two states that "this Act shall be null and void if actual construction of the bridge herein authorized be not commenced within three years and completed within seven years from the date of approval hereof."  <u>Id.</u>

Distinctly absent from the terms of this Act is a provision granting the bridge owner or any private party a right of action.

The next two acts passed subsequent to this one also contain no private right of action. These two acts are identical to one another, and, with the exception of reserving the right to alter, amend or repeal the acts, state only that "the times for commencing and completing the construction of the bridge . . . are hereby extended one year and five years, respectively, from the date of approval hereof."  43 Stat. 103; 43 Stat. 1128.  It appears that the sole purpose for the existence of these two acts was to extend the time limitations placed on the Ambassador Bridge owner.  Because they contain no other provisions, there is nothing within these acts that would provide a private right of action.

The last of the Bridge Acts once again amends the time limits by the same one-year and five-year extensions.  44 Stat. 535.  This Act also contains two additional sections that the two previous ones did not contain.  The first of these sections, section two, imposes upon the bridge owner the burden of filing an itemized statement of the total costs of the bridge, and instructs that this filing will be audited or investigated by the United States.  Id.  This provision only provides an obligation on behalf of the bridge owner, it does not confer a private right of action. The second of these sections, section three, grants the bridge owner the "right to sell, assign, transfer, and mortgage all the rights, powers, and privileges conferred by this Act . . ."  Id. Section three, while granting the owner a "right to sell, assign, transfer, and mortgage," contains no other provision granting the owner any additional rights or right of action to enforce any rights. Accordingly, the Bridge Acts do not evidence an intent by Congress to provide a private right of action.  Under these circumstances, courts generally conclude that no private remedy exists.  See, e.g. Touche Ross & Co. v. Redington, 442 U.S. 560, 576 (1979) (no Congressional

-10-

intent to create a private cause of action when "the statute by its terms grants no private rights to

any identifiable class and proscribes no conduct as unlawful").  Plaintiffs, therefore, cannot rely

on the Boundary Waters Treaty or the Bridge Acts as the source of their cause of action.

### B. Plaintiffs Have Failed To Challenge A Final Agency Action

When there is no relevant statute to provide a substantive right of action to a private

party, a party may seek judicial review of an agency action only when such action constitutes a

"final agency action."  5 U.S.C. § 704 (emphasis added).[4]  If a plaintiff cannot identify either a

statute that provides a private right of action, or a final agency action, a plaintiff has no cause of

action, and thus is not entitled to judicial review.  Trudeau, 456 F.3d at 188-89 ("Thus, although

the absence of final agency action would not cost federal courts their jurisdiction, . . .  it would

cost [Plaintiffs their] APA cause of action."); see also Reliable Automatic Sprinkler Co. v.

Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003) ("If there was no final

agency action here, there is no doubt that appellant would lack a cause of action under the

APA.").[5]  In this matter, none of the legal authority cited by Plaintiffs provide a private party

_____

[4] "Agency action" is defined in the APA to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

[5] To the extent that Plaintiffs' claims ten and eleven are alleged as stand-alone claims under the APA, such claims should be dismissed because the APA does not provide an independent cause of action.  See Chang v. Reno, 986 F. Supp. 19, 24 (D.D.C. 1997) ("if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action.") (citing Heckler v. Chaney, 470 U.S. 821, 830 (1985)); see also Oregon Natural Res. Council v. Thomas, 92 F.3d 792, 798 (9th Cir. 1996) (court must have "law to apply" under the APA); El Rescate Legal Serv. v. Executive Office of Immigration Review, 959 F.2d 742, 753 (9th Cir. 1991) ("There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'") (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871).

with a right of action.  Accordingly, Plaintiffs claims are cognizable, if at all, only upon the identification of a final agency action.  Id.

Pursuant to Supreme Court precedent, two conditions must be satisfied for agency action to be final.  First, the action "must mark the 'consummation' of the agency's decisionmaking process," and "must not be of a merely tentative or interlocutory nature."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997) .  Second, the action "must be one from which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Id. at 178 (citations omitted).  Where either condition is not met, there is no final agency action that is subject to judicial review.  See, e.g., Reliable Automatic Sprinkler Co., 324 F.3d at 732; Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 808-11 (D.C. Cir. 2006).  Here, Plaintiffs cannot identify a final agency action because none of the actions Plaintiffs challenge in this case are of the type that signify the end of the agency's decisionmaking process, nor are they ones that determine rights or obligations.  Consequently, Plaintiffs are without an authority granting them a right to seek judicial review, and their claims, therefore, must be dismissed.

Plaintiffs challenge a number of different "actions" in this matter, some of which are vague and obscure.  These actions appear to be (1) an alleged action to deny Plaintiffs a 1906 Bridges Act permit (claims 1, 2, 7, and 11), (2) an alleged decision not to issue a finding of no significant action ("FONSI") under NEPA (claim 2, 11), and (3) an alleged decision to promote and pursue the DRIC (claims 8-10).  Because none of these actions are final actions, Plaintiffs claims fail.

The first of these alleged actions is the USCG's "action" of refusing to issue to Plaintiffs a permit under the 1906 Bridges Act.  According to Plaintiff, the U.S. Defendants have

"unreasonably and without good cause refused to process plaintiffs' application for environmental approval and a bridge permit." Pls.' Compl. (Dkt. 1) at ¶6.[6]  Contrary to Plaintiffs characterization, the USCG did not process Plaintiffs permit application because Plaintiffs application is incomplete.

When determining whether to issue a permit pursuant to the 1906 Bridges Act, the USCG is guided by 33 CFR § 115.05, which states:

> For bridges constructed by State or municipal agencies, the primary authority will be presumed without proof. If the law of the State requires a license for or approval of the bridge from a constituted State agency, a copy of such license or approval will be required and may be accepted as evidence of the primary authority. If there be no State regulation of bridges in navigable waters, the necessary primary authority may be that granted in the charter of a corporation, or the authority inherent in the ownership of the land on which the structure is placed. The applicant will in such cases be required to furnish an extract from the charter, or a statement of ownership. Especial care will be taken that Federal approval is not granted when there is doubt of the right of the builder to construct and utilize the bridge.

According to this regulation, the USCG is allowed to process a permit application without proof of landownership or authority only if the permit is sought by a State or municipal agency. When the applicant is a corporation or private entity, such applicant must furnish a statement of ownership of the land to be used in construction in order to erase any "doubt of the right of the builder to construct and utilize the bridge." Id.  In this case, Plaintiffs have admitted that they do

---

[6] It also appears that Plaintiffs are alleging in their first claim that U.S. Defendants are "interfering with the construction of the Ambassador Bridge New Span" by not granting Plaintiffs a permit to allow them to begin construction of the New Span. Pls.' Compl. ¶ 148. The same can be said for their second claim, where Plaintiffs allege that U.S. Defendants took an action "without lawful justification . . . that any improvements to the Ambassador Bridge are delayed or prevented," Pls.' Compl. ¶ 157, as well as their seventh claim, where Plaintiffs allege that "U.S. Defendants have failed to give [Plaintiffs] reasonable notice and an opportunity to be heard in regard to actions by FHWA and the Coast Guard that deprive [Plaintiffs] of their property rights." Id. ¶ 182.

not own all the land necessary to construct the New Span. <u>See</u> Pls.' Compl. ¶ 72 ("DIBC is in the process of acquiring the final parcel of land needed on the U.S. side"); <u>id.</u> ¶ 121 ("The Coast Guard also attempted to justify its refusal to proceed because of a need for DIBC to acquire property on the U.S. side of the river to build the Ambassador Bridge New Span."). Because Plaintiffs could not demonstrate that they had fulfilled the necessary prerequisites for applying for a permit, the USCG returned Plaintiffs' application as incomplete.

The USCG's action of not processing Plaintiffs' permit application does not constitute final action because the USCG's action was interlocutory in nature. The USCG returned Plaintiffs' application and informed Plaintiffs that a decision would not be made on their permit until Plaintiffs could demonstrate they had obtained ownership over all the necessary parcels of land required for the New Span construction. Informing an entity that an application is incomplete is not a "final action" because such action does not amount to a formal decision granting or denying Plaintiffs a permit. <u>See, e.g.</u> <u>Nat'l Wildlife Fed'n v. Brownlee</u>, 402 F. Supp. 2d 1, 7 (D.D.C. 2005) (issuance of a permit is final agency action); <u>John Doe, Inc. v. DEA</u>, 484 F.3d 561, 566 (D.C. Cir. 2007) (the court found the agency's action to be final when "the [agency] affirmatively denied Doe's permit application . . . [and] candidly acknowledged before the district court that its position would not change in further administrative proceedings."); <u>Stillufsen v. Evans</u>, No. 03-2355(MLC), 2005 U.S. Dist. LEXIS 20039 (D.N.J. Sept. 2, 2005) (The court held that plaintiff's failure to correct deficiencies in a permit application allowed the agency to deem it abandoned, and stated that plaintiff "ha[d] not presented, nor [could] the Court find, case law holding that the Agency's act of deeming a permit application to be abandoned constitutes a reviewable, final agency action."). To the contrary, the USCG's action was tentative in nature because it indicated that the USCG could still grant Plaintiffs a permit in the

future.  Thus, "[u]ntil something more happens to them (e.g., permit denials . . . ), these [Plaintiffs] can not claim final agency action."  <u>Pa. Mun. Auths. Ass'n v. Horinko</u>, 292 F. Supp. 2d 95, 105 (D.D.C. 2003); <u>see also</u> <u>Lotz Realty Co. v. United States</u>, 757 F. Supp. 692, 696 (E.D.Va. 1990) (The court, stated that until an enforcement action is initiated, or denial of an individual permit occurs,  no "legally binding decision" has taken place.) (citing <u>Avella v. U.S. Army Corps of Eng'rs</u>, No. 89-10064-Civ.-JLK, 1990 U.S. Dist. LEXIS 21023, 1990 WL 84499 (S.D.Fla. 1990)).

Plaintiffs also allege that U.S. Defendants' failure to issue a FONSI is a reviewable action.  Pls.' Compl. ¶¶ 157, 204-10.  U.S. Defendants, however, have not performed a review under NEPA because there is no pending federal action to trigger a NEPA review.  Accordingly, there is no final action for this Court to review.

NEPA and its implementing regulations provide that federal agencies should prepare a detailed environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment . . . ."  42 U.S.C. § 4332(C); 40 C.F.R. § 1501.1 NEPA's mandate to agencies is "essentially procedural . . . . It is to insure a fully informed and well-considered decision . . . ."  <u>Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council</u>, 435 U.S. 519, 558 (1978) (citation omitted).  If there is a question whether a proposed action qualifies as "a major federal action significantly affecting the quality of the human environment," an environmental assessment ("EA") may be prepared.  An EA is a brief and concise document containing sufficient evidence and analysis for the agency to determine whether to prepare an EIS or a FONSI.  <u>See</u> 40 C.F.R. §§ 1501.4(b), 1508.9(a)(1), 1508.13.

In this case, the only federal action that would trigger potential review under NEPA in relation to the Ambassador Bridge would be the issuance of a 1906 Bridges Act permit.  The

USCG, however, is not in the position to process a permit application, much less issue such a permit, because, as stated above, Plaintiffs do not own all the land needed to construct the New Span.  Without a decision to issue a permit, there is no major federal action to trigger NEPA's review procedures.  See, e.g. New Jersey v. United States NRC, 526 F.3d 98, 103-04 (3d Cir. 2008) ("merely contemplated projects" do not trigger NEPA review); Potomac River Ass'n v. Lundeberg Maryland Seamanship School, Inc., 402 F. Supp. 344, 353 (D. Md. 1975) ("Where an agency has made an initial determination to file or not to file an impact statement, a court may not review that decision prior to a final decision on a permit or license."); Gage v. Commonwealth Edison Co., 356 F. Supp. 80, 84 (N.D. Ill. 1972) (no final action where an agency has not yet issued a permit).  Because there is no pending major federal action that could trigger NEPA review, U.S. Defendants' failure to complete a NEPA review for an incomplete permit application is not a final action.[7]

Lastly, Plaintiffs allege that U.S. Defendants took actions that promoted the development of the DRIC project while failing to promote and pursue Plaintiffs' construction of the New Span.  Plaintiffs' eighth claim alleges that U.S. Defendants failed "to promote the continued use and expansion of the Ambassador Bridge, including the construction of the Ambassador Bridge New Span."  Pls. Compl. ¶ 187.  Claims nine and ten state that "In promoting and pursuing the unauthorized DRIC Bridge, FHWA has acted and is acting contrary to law," Pls.' Compl. ¶ 192, and that "FHWA has decided, without valid justification, to proceed with and promote the

---

[7] Plaintiffs also cannot sufficiently state a claim under 5 U.S.C. § 706(1) to command the USCG to consider the bridge permit application and perform a NEPA review because "the only agency action that can be compelled under the APA is action legally required."  Norton, 542 U.S. at 63.  As stated above, there is no legal requirement for the USCG to process incomplete permit applications or perform NEPA review in the absence of a federal action.

construction of the DRIC Bridge."  Id. ¶ 195.  None of the actions listed in claims eight through ten constitute final agency action.

An agency's decision to promote or not promote a certain project does not constitute "a final agency action" under the APA because the act of promoting is not an agency action within the meaning of the APA.  Agency action is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  All of these categories involve "circumscribed, discrete agency actions."  Norton, 542 U.S. at 62.  The term promote is defined as:  "to contribute to the growth or prosperity of" or "to help bring (as an enterprise) into being."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/promote (last visited July 2, 2010).  This definition lacks any sense of a discrete action because it connotes involvement in an on-going process.  As Plaintiffs use this term in their complaint, it appears that they would try and fit this action into the category of a rule, order, or failure to act, as the act or promoting or failing to promote would not constitute part of a license, sanction, or relief.

The act of promoting cannot be considered a rule under the APA.  A rule is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."  5 U.S.C. § 551(4).[9]  Certainly, the act of promoting or failing to promote a project does not fall within the category of a rule because it is

---

[9] The definition of a rule also includes "the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices. . ."  Id.  This portion of the definition, however, is not applicable to the "action" being challenged by Plaintiffs.

not an agency statement designed to implement, interpret, or prescribe law or policy.  Moreover,

promoting or failing to promote a project has nothing to do with the organization, procedure, or

practice requirements of an agency.

The act of promoting or failing to promote a project is also not part of an order.  Under

the APA, an order is defined as "the whole or a part of a final disposition, whether affirmative,

negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but

including licensing."  5 U.S.C. § 551(6).  Here, Plaintiffs have not identified that the alleged

promotion of the DRIC or the failure to promote the New Span constituted an order because

there is no final disposition being challenged.  U.S. Defendants have yet to make a final

disposition on Plaintiffs' permit application or the NEPA review that would authorize the

issuance of a permit.  Moreover, Plaintiffs are not challenging the final decision regarding

approval of the DRIC project, but rather the act of promoting and pursuing this project.[9]

Because Plaintiffs are not challenging the final decision, their allegations do not challenge the

whole or part of a final disposition.  Accordingly, the act of promoting as used by Plaintiffs in

their complaint is not an "order."

Plaintiffs' allegation that U.S. Defendants' failed to promote the New Span project also

does not fall within the definition of a "failure to act."  As the Supreme Court stated, "'failure to

act,' is in our view properly understood as a failure to take an agency action--that is, a failure to

_____

[9] To the extent Plaintiffs are challenging the final decision to approve the DRIC project, U.S.
Defendants object to these claims.  These claims have previously been filed in a separate action.
See Latin Am. for Soc. and Econ. Dev. v. Adm'r, Fed. Highway Admin., No. 09-cv-897-EGS
(D. D.C.) (this case has since been transferred to the Eastern District of Michigan,Latin Am. for
Soc. and Econ. Dev. v. Adm'r, Fed. Highway Admin., No. 2:10 CV 10082-AC-VMM).
Plaintiffs, in filing such claims twice, would be attempting to impermissibly separate claims in
order to obtain a second judgment.

take one of the agency actions (including their equivalents) earlier defined in § 551(13)."
<u>Norton</u>, 542 U.S. at 62.  The failure to promote a project, therefore, can only be considered an agency action if promoting a project falls within the definition of agency action.  <u>Id.</u>  As noted above, it does not.  Accordingly, the alleged action of failing to promote the New Span is not a failure to act.[10]

Plaintiffs' challenged actions are best compared to acts of an agency that fall outside of the definition of "agency action" because the act of promoting a project is not the consummation of any decisionmaking process that determines rights or obligations or from which legal consequences flow.  <u>See</u> <u>Bennett</u>, 520 U.S. at 178; <u>Invention Submission Corp. v. Rogan</u>, 357 F.3d 452, 459 (4th Cir. 2004) (citation omitted) ("The Administrative Procedure Act does not provide judicial review for everything done by an administrative agency.").  The act of promoting is very similar to the act of engaging in an advertising campaign or issuing an agency publication, as it is an action that does not create "legal consequences," <u>Invention Submission Corp.</u>, 357 F.3d at 460, or produce a "direct and immediate . . . effect on the day-to-day business of the party challenging it," <u>FTC v. Standard Oil Co.</u>, 449 U.S. 232, 239 (1980) (citations and internal quotation marks omitted).  Courts, therefore, have determined that challenges to such actions are not entitled to review.  <u>See</u> <u>Invention Submission Corp.</u>, 357 F.3d at 459 ("PTO's advertising campaign, including its conduct in giving a journalist Lewis' telephone number, is not the type of conduct that constitutes agency action that is reviewable in court under the

─────────────────────

[10] Moreover, a failure to act can only refer to an action that an agency is required to take. <u>Norton</u>, 542 U.S. at 64 ("a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.").  Because Plaintiffs' permit application was incomplete, there was no requirement for U.S. Defendants to take an action.

APA."); <u>Industrial Safety Equipment Asso. v. Environmental Protection Agency</u>, 837 F.2d 1115,

1118 (D.C. Cir. 1988) (the D.C. Circuit held that an agency's publication of a report evaluating

respirators for their effectiveness in protecting against asbestos exposure was not an "agency

action," as used in the APA, that was reviewable in court.).  By promoting the DRIC, U.S.

Defendants have not taken an action that places a legal obligation on Plaintiffs.  Thus, the act of

promoting is not a final action as defined by the APA.  Because promotion of a project is not an

agency action, Plaintiffs have not alleged a claim that is entitled to judicial review and their

claims must be dismissed.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' claims in their entirety.

Should the Court deny U.S. Defendants' motion in whole or in part, the Court should transfer the

surviving claims to the Eastern District of Michigan for the reasons stated in U.S. Defendants

Motion to Transfer Venue (Dkt. No. 21)


Dated:  July 8, 2010.                              Respectfully submitted,

                                                   **IGNACIA S. MORENO**
                                                   Assistant Attorney General
                                                   Environment and Natural Resources Division

                                                    */s/ Peter C. Whitfield*
                                                   **PETER C. WHITFIELD**
                                                   Trial Attorney
                                                   U.S. Department of Justice
                                                   Environment & Natural Resources Division
                                                   P.O. Box 663
                                                   Washington, D.C. 20044-0663
                                                   Telephone: (202) 305-0430
                                                   E-mail: peter.whitfield@usdoj.gov