UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DETROIT INTERNATIONAL BRIDGE COMPANY, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-476 (RMC) |
| GOVERNMENT OF CANADA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Pending before the Court is U.S. Defendants' motion to transfer venue to the United States District Court for the Eastern District of Michigan.[1] The complaint, inter alia, alleges U.S. Defendants and Canada violated Plaintiffs' constitutional, statutory, treaty, and contractual rights through actions affecting Plaintiffs' interests in the Ambassador Bridge, and violations of the Administrative Procedure Act, 5 U.S.C. § 551. Defendant Canada does not oppose the request, but Plaintiffs contest transfer. The Court will deny U.S. Defendants' motion to transfer venue.

Plaintiffs are the owners and operators of the Ambassador Bridge, a toll bridge and international causeway between the United States and Canada, which spans from Detroit, Michigan to Windsor, Canada. Plaintiffs own the exclusive right, protected by treaty, statute, and contract, to collect tolls on the Ambassador Bridge—one of the busiest links between the U.S. and

---

[1] Collectively, the "U.S. Defendants" consist of the Federal Highway Administration and its Administrator, the Coast Guard and its Commandant, the Secretaries of the Department of Homeland Security and the Department of Transportation, and the United States of America. The sole remaining defendant is the Government of Canada.

Canada—which carries over one quarter of commercial truck traffic and substantial car traffic between the two nations. Plaintiffs believe Canada has long wanted to expropriate their profitable toll-collection rights, and lacking any means to do so, has begun a campaign with the complicity of U.S. Defendants to undermine the value of Plaintiffs' rights in the Ambassador Bridge. Among other things, Plaintiffs complain that the U.S. Coast Guard's delay and ultimate denial of their requests for environmental clearance and a navigation permit to build a second span on the Ambassador Bridge to offer more driving lanes were unlawful and pretextual. The pretext to slow any upgrades to the Ambassador Bridge, Plaintiffs argue, arises from a joint effort by the United States and Canada to promote and construct a new jointly-owned, international crossing, the DRIC Bridge, which would lie within the immediate vicinity of the Ambassador Bridge. Plaintiffs also challenge actions by the Federal Highway Administration in promoting the construction of the DRIC Bridge. The Ambassador Bridge connects to Canada from the Eastern District of Michigan, which would also be true of the proposed DRIC Bridge.

U.S. Defendants argue transfer is warranted under the discretionary transfer provision of 28 U.S.C. § 1404(a). Section 1404(a) authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). U.S. Defendants bear the burden of establishing that (a) Plaintiffs could have originally brought the action in the Eastern District of Michigan, and that (b) considerations of convenience and the interest of justice weigh in favor of transfer to that court.

*See Van Dusen*, 376 U.S. at 622–23; *Trout Unlimited v. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

U.S. Defendants do not dispute that venue is properly before this Court; neither do Plaintiffs contest that they could have originally brought suit against U.S. Defendants in the Eastern District of Michigan. However, Plaintiffs contend that Canada could only have been sued in the District, and not the transferee forum, per 28 U.S.C. § 1391(f)(4).[2] U.S. Defendants respond that Canada could have been properly sued in the Eastern District of Michigan, where the Ambassador Bridge is located, because that is where "a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(f)(1). However, Plaintiffs' claims against Canada allege violations of treaty, statute, and contract, *see* Compl. [Dkt. # 1] Counts I–VI; the claims do not seek to adjudicate title, obtain possession of a particular piece of property, or vindicate interests in real property in a manner that would make the Eastern District of Michigan a proper venue for suit against Canada under 28 U.S.C. § 1391(f)(1).[2] Accordingly, U.S. Defendants have not met their

---

[2] "As a prerequisite to transfer under § 1404(a) venue must be proper in the transferee district with respect to every defendant and each claim for relief, and all defendants must have been amenable to process emanating from the transferee district at the time the action was initially filed." *Lamont v. Haig*, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978) (citations omitted). Canada does not oppose the motion and makes no argument either in favor or against transfer. While venue objections may be waived by a defendant, "the power of a District Court under § 1404 (a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28 U.S.C. § 1404(a)).

[2] *See, e.g., Spain v. Eagleburger Law Group*, Civ. No. 4-1817, 2006 U.S. Dist. LEXIS 14369, *7–8 (D. Colo. Mar. 9, 2006) (holding in a RICO matter focusing on allegations that defendants made false statements about the ownership of land, that although the claims reference the property, it was not the "subject" of the action because plaintiff "does not sue to recover the property or clear title to it, nor does he ask me to declare rightful ownership of the property"); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. Partnership*, 817 F.

burden of showing that Plaintiffs could have originally filed suit in the Eastern District of Michigan on all claims and as to all defendants.

Assuming arguendo that the matter could have been originally brought in the Eastern District of Michigan, the Court finds transfer is not warranted for "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under § 1404(a), a court must balance a number of case-specific private and public interest factors which collectively fall under the rubric of "interest of justice." *See Stewart Org.*, 487 U.S. at 30. Specifically:

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses …, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

---

Supp. 899, 904 (D. Kan. 1993) ("The plaintiffs argue the second clause of [28 U.S.C. § 1391(b)(2)] supports venue because the property that is the subject of the action, namely the apartment complex, is located in the District of Kansas. This argument misconceives the nature of this lawsuit. It is not a suit centering on any rights, title or interest in real property. Rather, it is a fraud and negligent misrepresentation case. Although the facts giving rise to plaintiffs' allegations flow from the sale of the apartment complex, the apartment complex itself is not the subject of the action. The 'property' at issue is the money the defendants allegedly obtained as a result of their fraudulent conduct. The court rejects the notion that [§ 1391(b)(2)] applies whenever real property is tangentially involved in a dispute."); *Stockbridge-Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 46 (D.D.C. 2009) (noting that venue was proper in transferee court because land that was subject of an Administrative Procedure Act challenge of the Department of Interior's decision to take certain lands into trust for an Indian Tribe was located there); *but see Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (noting that venue was proper in forum under 28 U.S.C. § 1391(b)(2) because a substantial part of the actions giving rise to the claim occurred there and because a "substantial part of the property [Verizon's computer e-mail servers] harmed by these actions occurred in Virginia").

*Trout Unlimited*, 944 F. Supp. at 16. "A court has broad discretion to determine where the proper balance lies and whether a case should be transferred." *See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002).

The majority of the private interest factors are either neutral or indicate that transfer is not justified. Transfer is not necessary for the convenience of the parties and/or witnesses. It is hardly inconvenient for U.S. Defendants to litigate in the District, where they are headquartered, and the convenience of witnesses is not at issue as U.S. Defendants acknowledge that the matter will likely be decided on the administrative record and not likely necessitate the live testimony of witnesses. Access to proof is not implicated here as, again, the matter will be decided on an administrative record. Lastly, there is no indication that this forum is inconvenient to Canada as it has not chosen to contest venue here or offer how its private interests are affected by the motion.

U.S. Defendants also argue that the claims arose elsewhere—in the Eastern District of Michigan. The complaint focuses heavily on alleged actions by the U.S. Coast Guard, the Federal Highway Administration, and Canada, and collusion among the three, to interfere with Plaintiffs' treaty, statutory, contractual and constitutional rights by, inter alia, impeding Plaintiffs' ability to expand upon the Ambassador Bridge, promoting the DRIC Bridge at the expense of the Ambassador Bridge, and deciding to build the DRIC Bridge within close proximity to the Ambassador Bridge. U.S. Defendants argue that the underlying property interests at issue are located in the Eastern District of Michigan, and that the overwhelming sequence of events and governmental decisions underlying Plaintiffs' claims occurred there. Plaintiffs have rebutted these arguments by referencing a substantial amount of meetings, communications, and decision-making by the Coast Guard and the Federal Highway Administration occurring in the District.

The Court does not doubt that a substantial part of the events leading to these claims occurred in the Eastern District of Michigan, but it is clear that the same can be said of the District. A claim may arise in more than one forum, just as proper venue may exist in more than one judicial district. *See Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978); *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 244 (D.D.C. 2005). Ultimately, "although substantial, the connections to [the Eastern District of Michigan] are no more significant than those to the District of Columbia." *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. Pshp.,* 24 F. Supp. 2d 66, 71 (D.D.C. 1998). Accordingly, while it may be said that the claims also arose in the Eastern District of Michigan, the Court cannot find that the claims only arose elsewhere. This simply is not a case in which the facts underlying the claims have only a tangential or minimal connection to the District; the factor of where the claims arose is neutral and does not support transfer.

Furthermore, in considering the private interest factors, the Court begins with the presumption that Plaintiffs' forum choice should be left undisturbed. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (noting that the movant "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," but "[w]hen the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)); *see also Weinberger*, 391 F. Supp. 2d at 245.[3] Thus, even when two potentially proper venues exist, a plaintiff's choice should be accorded deference. *Demery v. Montgomery Cnty.*, 602 F. Supp. 2d 206, 210 (D.D.C. 2009). As U.S.

---

[3] Plaintiff Detroit International Bridge Company is a corporation incorporated under the laws of the State of Michigan, and has its principal place of business in that State, whereas plaintiff The Canadian Transit Company is a Canadian Special Act corporation having its principal place of business in Ontario, Canada. *See* Compl. [Dkt. # 1] ¶¶ 11–14.

Defendants bear the burden, the Court finds an absence of evidence that the convenience of the parties and/or witnesses, or any private interests, outweigh Plaintiffs' choice of forum.

The applicable public interest factors also favor denying the motion. The first two public interest factors do not favor either the District or the Eastern District of Michigan because the court in both venues would be equally competent and familiar with the governing federal law and because both courts are equally congested. U.S. Defendants assert, however, that the third public interest factor—the local interest in deciding local controversies at home—weighs heavily in favor of transfer.

> To determine whether a controversy is local in nature, the Court must consider a number of factors, including where the challenged decision was made, whether the decision directly affected the citizens of the transferee state, the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes, whether the controversy involved issues of state law, whether the controversy has some national significance, and whether there was personal involvement by a DC official.

*Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006).

One side of the Ambassador Bridge and the proposed DRIC Bridge fall within the jurisdiction of the Eastern District of Michigan. Whether Plaintiffs are permitted to expand or modify the Ambassador Bridge, and whether the DRIC Bridge is built and its exact location, would greatly affect the citizens of the Eastern District of Michigan given their immediacy to the bridges, and the likelihood that they may enjoy the use of such bridges more than citizens of other judicial districts. While the outcome of this matter could have substantial consequences for the people of Michigan, this case nonetheless implicates both national and international concerns, and cannot be said to be a local controversy.

The gravamen of the complaint is that federal agencies unlawfully interfered with Plaintiffs' rights in the Ambassador Bridge. As noted above, it appears that a substantial part of the decision-making challenged by Plaintiffs occurred in the District, although some aspects undoubtedly occurred in the Eastern District of Michigan as well; it can be said that the challenged decision and controversy occurred in both venues. Also, this matter does not qualify as a local controversy because federal laws rather than State or local property laws are directly implicated, and because officials in the District of Columbia were personally involved in the controversy.

Most importantly, this case has national significance rather than a mere "national aspect." *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003). The case involves important questions regarding an international border crossing, also part of the national transportation infrastructure; a proposed international project with Canada; and, to a lesser extent, relations between the United States and Canada, including Plaintiffs' allegations that the two nations colluded to injure Plaintiffs' interests. A matter which could have dramatic effects on international crossings, directly implicating Canada's involvement in such matters, can hardly be called local.

The strongest argument in U.S. Defendants' favor is that judicial economy favors transfer as similar litigation already proceeds before the Eastern District of Michigan. It is clear that "parallel litigation of factually related cases in separate fora is inefficient" and is recognized as a judicial inconvenience. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003). "The pendency of a related action in the transferee forum weighs in favor of a transfer." *Fanning v. CAPCO Contrs., Inc.*, 711 F. Supp. 2d 65, 71 (D.D.C. 2010). "However, the Court must also consider the extent to which the cases are truly related and the possibility that the defendant is forum shopping." *Id*.

Plaintiff Detroit International Bridge Company is currently challenging the Federal Highway Administration's approval of the environmental impact statement for the DRIC Bridge project in the Eastern District of Michigan under the Administrative Procedure Act; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321; Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303 and 23 U.S.C. § 138; and Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f.  Plaintiffs note that the Michigan suit does not include defendants Coast Guard and Canada (against whom suit would not be proper in Michigan), that it involves Michigan state officials as defendants, and that the two lawsuits raise different legal claims, issues, and facts.  Plaintiffs also maintain they do not challenge any environmental or social impacts of the DRIC Bridge in this matter.  U.S. Defendants aptly note that the Federal Highway Administration's Record of Decision approving the DRIC would be considered in both cases.

To be sure, there will be some factual overlap between the two cases.  However the matters are sufficiently distinct in terms of relevant parties, facts, and the nature of the claims and relief, that the pendency of the suit in the Eastern District of Michigan does not outweigh all other considerations which indicate that venue is proper in the District of Columbia.  U.S. Defendants have failed to sustain their burden under 28 U.S.C. § 1404(a) to demonstrate otherwise.

Accordingly, U.S. Defendants' motion to transfer venue to the U.S. District Court for the Eastern District of Michigan will be denied.

Date: May 31, 2011                                          /s/                                    
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge