1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

DETROIT INTERNATIONAL BRIDGE.    Case No. 1:10-CV-00476
                            .    (RMC)
COMPANY, ET AL.,            .
                            .    Washington, D.C.
            Plaintiffs,     .    November 30, 2011
                            .
THE GOVERNMENT OF CANADA,   .
                            .
ET AL.,                     .
                            .
            Defendants.     .
. . . . . . . . . . . . . . .

MOTION HEARING
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs:      Debevoise & Plimpton, LLP
                         By:  CARL MICARELLI, ESQ.
                              WILLIAM TAFT, ESQ.
                              DONALD DONOVAN, ESQ.
                         555 13th Street, N.W.
                         Suite 1100
                         Washington, DC 20004

For the Defendants:      Warner Norcross & Judd, LLP
                         By:  DOUGLAS DOZEMAN, ESQ.
                              SCOTT WATSON, ESQ.
                         2000 Town Center, Ste. 2700
                         Southfield, MI 48075

                         U.S. Department of Justice
                         By:  PETER WHITFIELD, ESQ.
                         Environmental and
                         Natural Resources
                         601 D. Street, N.W., Suite 3533
                         Washington, DC 20004

                         Frank Esposito, Esq.
                         U.S. Coast Guard
                         Coast Guard Headquarters
                         Washington, DC 20024

_____

1          (Proceedings commenced at 9:42 a.m.)

2              THE CLERK:  Civil Action Number 10-476,

3    Detroit International Bridge Company, et al. v. The

4    Government of Canada, et al..

5              Counsel, please come forward and identify

6    yourselves for the record.

7              THE COURT:  Gentlemen, we are operating with

8    a recording system today because my court reporter is

9    in a trial with a different judge.  Trials take

10   precedence over hearings, so you really, really, really

11   have to talk right at the microphone if you want

12   posterity to know that you were here, okay?

13             Thank you, sir.

14             MR. MICARELLI:  Your Honor, Carl Micarelli of

15   Debevoise & Plimpton for the Plaintiffs.

16             With me are Wil Taft and Donald Donovan, also

17   from Debevoise & Plimpton, and Patrick Moran from the

18   Detroit International Bridge Company.

19             THE COURT:  Thank you.

20             MR. DOZEMAN:  Good morning, Your Honor.

21             Doug Dozeman from Warner Norcross & Judd on

22   behalf of Canada, and with me is Scott Watson from the

23   same firm.

24             THE COURT:  Thank you.

25             MR. WHITFIELD:  Good morning, Your Honor.

1          Peter Whitfield on behalf of the United

2    States Defendants, and at counsel's table I have Frank

3    Esposito with the U.S. Coast Guard, in attendance, as

4    well.

5          THE COURT:  Thank you.

6          THE COURT:  Alrighty.

7          Well, it sounds like things have gotten very

8    confused, or maybe not, depends on how you look at it,

9    since we set this.

10          Before we begin I just want to say that I

11    have found this a wonderfully interesting case and

12    enjoyed your briefs.  I think it has been very well

13    litigated by everybody.  It's kind of a shame if it's

14    going to go away, but the issue is whether it will go

15    away.

16          Obviously, the Plaintiffs have filed their

17    motion, or not motion, actually, just notice of

18    dismissal without prejudice.

19          I'm assuming, for present purposes, that the

20    United States does not object to being dismissed in the

21    agency or the individuals; is that correct?

22          MR. WHITFIELD:  That's correct, Your Honor.

23          THE COURT:  You really -- I'm so sorry but I

24    need a record.  You need a record.  You need to be

25    there.

```
1          MR. WHITFIELD:  Yes, that's correct, Your
2   Honor.
3          THE COURT:  So the United States is perfectly
4   happy with this, and the United States, as I understand
5   it, is also in agreement with the proposal that the
6   case, as to the Coast Guard, be stayed for a period of
7   90 days?
8          MR. WHITFIELD:  Yes, Your Honor.
9          THE COURT:  Thank you, sir.
10          MR. WHITFIELD:  Thank you.
11          THE COURT:  All right.
12          Canada, on the other hand, is not happy.
13   Canada says, "You know, we have litigated this for
14   longer than we should have.  We're a sovereign nation
15   and we should get a dismissal with prejudice.
16          I do have, of course, the Notice of Voluntary
17   Dismissal.
18          Canada also, somehow, I don't know, they were
19   traveling yesterday, but they managed to file a Motion
20   to Vacate the Notice of Dismissal.
21          Have the Plaintiffs had an opportunity to see
22   and review that?
23          MR. MICARELLI:  Yes, Your Honor, we have.
24          THE COURT:  Okay.
25          Why doesn't Canada speak a little to the
```

1    notice, because I think we're -- we have a big problem

2    with the rule, vis-a-vis your objection to the notice.

3            I think we've got a problem with the rule for

4    you, don't we?

5            MR. DOZEMAN:  Well, if you take a formulaic

6    approach to the rule, Your Honor, I suppose that --

7            THE COURT:  Oh, that's perfect.  Good for

8    you.  Just go right at it.

9            MR. DOZEMAN:  Well, as we pointed out in our

10    brief that we filed last night, and I don't know if

11    Your Honor has had a chance to review it, but

12    essentially Rule --

13            THE COURT:  I promise I did.  Go ahead.

14            MR. DOZEMAN:  We believe that Rule 41(a), you

15    have to take a step back and look at the purpose of

16    that rule, and the purpose of that rule is you're going

17    to -- the Court is going to allow a party to dismiss

18    without prejudice in a case where basically the

19    litigation has yet to begin, and the parties and the

20    Court haven't expended considerable resources --

21            THE COURT:  Uh-huh.

22            MR. DOZEMAN:  -- in litigating the matter.

23            Now typically, that's when an answer has

24    been filed, or when a summary judgment motion has been

25    filed, --

1          THE COURT:  Uh-huh.

2          MR. DOZEMAN:  -- but there are cases, and

3    we've cited some, where the Court has said, "Now, wait

4    a minute.  The issues really have been joined here,

5    even though an answer has not been filed, or a summary

6    judgment motion as not been filed."  So it's -- if the

7    issues have been joined, and we're ready to really

8    decide on the case on the merits, then we should go

9    ahead and do that.

10          THE COURT:  Well, you're talking basically

11   Harvey, I think, and even the Second Circuit doesn't

12   seem to believe as strongly in Harvey as it did when it

13   wrote it, and you can understand those facts.

14          I think that was the one with the PI hearing,

15   wasn't it?

16          MR. DOZEMAN:  Yes.

17          THE COURT:  The Fourth Circuit has gone much

18   further, you know, where litigation has extended much

19   longer, and then, in order to avoid an injunction, a

20   plaintiff pulled a case and went and filed it somewhere

21   else, which seems to me to be really forum shopping,

22   but the Fourth Circuit said, "Well, that's what the

23   rule says."

24          And so the real question is whether even if I

25   were to say -- Well, there are two considerations here.

1    One is whether or not the issues have been joined the

2    way you argue; and then the second is the basis for

3    Canada's position; that is, not just a question of

4    jurisdiction, although, excuse me, jurisdiction is

5    fundamental, but its sovereign state for which the

6    United States' comity (phonetic) owes respect, and so

7    whether or not those two elements together mean that I

8    should proceed to decide the motions, it seems to me

9    that's the only way I might possibly be able to do it,

10   but I look at all these other cases and they all are

11   pretty definite that it -- I mean, the Plaintiffs can

12   do this only once.  They can't do it twice, under Rule

13   41(a), but they can do it at least once, and leave a

14   Defendant kind of hanging --

15           MR. DOZEMAN:  Well, --

16           THE COURT:  -- without me saying anything,

17   right?

18           MR. DOZEMAN:  I do believe this is somewhat

19   of a unique situation, Your Honor, because you do have

20   a sovereign party in front of you, and we're under

21   FSIA.  Here we're under the Act of State Doctrine which

22   does give more deference, frankly, to the party

23   defendant than in a normal case, and I will concede

24   that there is a box load of cases that seem to say

25   that, "Yes, Rule 41(a) is what 41(a) says", however, we

1  are in somewhat of a unique situation here, where the

2  issue, the whole issue in front of the Court, that the

3  Court is going to have to decide, is already fully

4  briefed.  It's been litigated.  It's teed up for

5  decision, and on the eve of that, I think it is more

6  akin to <u>Harvey</u>, or a case where somebody is right at

7  the door of getting the decision, and then pull the rug

8  out from everybody right on the eve of that decision.

9       THE COURT:  Would you -- Because -- There has

10  been discovery on this issue, correct?

11       MR. DOZEMAN:  There's been discovery on the

12  venue issues, which did bleed into where decisions were

13  made and, you know, what was going on leading up to the

14  decision.

15       THE COURT:  Right.

16       I have to tell you that I've spent time on

17  this and I, you know, have read your briefs and read

18  cases, and I know FSIA, and stuff like that, and it's

19  hard to just sort of say, "Oh, it's going to go away,"

20  given the fact that, as you say, it's particularly teed

21  up.

22       Anyway, let me hear from the Plaintiffs.

23       I don't know that I've given you any comfort

24  except to tell you that I understand completely, where

25  you're coming from, but there I am dealing with the

```
 1    rule.
 2              Go ahead, sir.
 3              MR. MICARELLI:  Thank you, Your Honor.
 4              In fact, I think this is a fascinating case
 5    too.  I would've loved to argue the motion, but I think
 6    because of the intervening events we don't think we
 7    have any case anymore, to fight here.  We've got no --
 8    We've gotten, essentially, the relief we need in the
 9    political arena, and there's really no need to go
10    forward here.
11              THE COURT:  Well, that -- I will say that
12    that is -- as a practical matter, that may be fully
13    satisfactory to your client.  I don't think it makes
14    the case constitutionally moot.
15              I mean, I still think there's a case of
16    controversy, don't you?
17              MR. MICARELLI:  No, Your Honor.  I think at
18    this point the possibility that the DRIC bridge will go
19    forward is remote.  I mean, there's always a
20    possibility something will happen, but as of now it
21    looks like it's a good chance, you know, very strong
22    chance it won't happen, and to the extent we're seeking
23    injunctive relief, it's hard to say what the
24    irreparable harm is when, as far as we can tell,
25    nothing is going happen.
```

1    As far as the Coast Guard piece of this goes,

2    that's clearly a live case, but in light of some other

3    developments, as well as this, we think that's

4    something that can now be resolved without the need of

5    the Court's intervention, and that's why we want the

6    90-day stay, to try to resolve that.

7         THE COURT:  Well, talk to me a little bit

8    about the two considerations that I identified.

9         Here, the case is fully briefed and ready for

10   decision, and there has been some amount of discovery

11   leading up to that, although the point was well taken

12   that it was mostly venue.

13        And then we're dealing with an issue that is

14   of more significance.  It has international, if you

15   will, consequences to it.  So Canada is not just your

16   average bear Defendant.  You know what I mean.  Please

17   don't be insulted, Canada.  Please don't be insulted,

18   Detroit.  But you understand my point.

19        MR. MICARELLi:  Yes.  Yes, Your Honor. and

20   I'll address both of those points.

21        First of all, in terms of Canada's

22   complaining about spending -- being subjected to 20

23   months of litigation, most of that was spent on the

24   venue motion on which Canada took no position, and we

25   were fighting the United States on that, and Canada was

1  basically just sitting on the sidelines doing nothing,

2  so I -- to the extent they're trying to argue that

3  there's some sort of hardship there, I think there's

4  nothing to that.

5           Also, as Your Honor may recall, you denied us

6  discovery against Canada on this jurisdictional issue.

7  We only took discovery against the U.S. on the venue

8  issue, --

9           THE COURT:  Uh-huh.

10          MR. MICARELLI:  -- so Canada was not

11  subjected to any discovery here.

12          From their standpoint then, this is really

13  just a garden variety motion to dismiss.  They keep

14  using the term "Issue was joined" but, in fact, issue

15  hasn't been joined, clearly on the merits, and issue

16  has not even been joined on the jurisdictional point,

17  in that they've not contested the facts.  This is just

18  a facial attack on the Complaint.  They've purported to

19  accept that (phonetic) facts, and attack the Complaint

20  on the -- on its face.

21          So the notion that this is anything like the

22  Harvey Aluminum case, which involved a preliminary

23  injunction hearing with extensive hearings on the

24  merits, and findings by the judge, or statements by the

25  judge about the likelihood of success on the merits is

1   just not accurate.  There's no resemblance between this

2   case and that case, and as Your Honor pointed out,

3   <u>Harvey Aluminum</u> has been rejected by just about every

4   court that's considered it.

5        I could go through the cases and the case

6   law, but sounds like Your Honor is already familiar

7   with it.

8        THE COURT:  I am really blessed with

9   excellent law clerks.

10       MR. MICARELLI:  That's a very good thing to

11   have, Your Honor.

12       THE COURT:  It's really wonderful.  It just

13   brings you things, and you read them, and you say,

14   "Hum, hum, hum, hum," and there you go.

15       Yes?

16       MR. MICARELLI:  Yes, so, in fact, --

17       THE COURT:  See I --

18       MR. MICARELLI:  -- the Fourth Circuit, --

19       THE COURT:  -- work on one thing --

20       MR. MICARELLI:  -- the Seventh Circuit have

21   both said that this right is absolute, and the Second

22   Circuit, in two different cases, has called <u>Harvey</u>

23   <u>Aluminum</u> into question which, I would point out, is a

24   58-year-old case, and the case law has evolved quite a

25   bit since then.

1          In terms of Canada's sovereign immunity, I

2     think that the key point -- I think there are two key

3     points here.

4          One is Canada does not have to do anything

5     more here, than brief a motion to dismiss.  If the case

6     is refiled, it can file the same motion again.

7          And Rule 41 is absolute on its face.  It says

8     the -- unless an answer or motion for summary judgment

9     has been filed, the plaintiffs have a right to dismiss

10    and, in fact, Your Honor said as much in, I recognize

11    it's not a case that involves sovereign immunity, but

12    in Louisiana Environmental Action Network v. Jackson,

13    685 F.Supp.2d 43, from February of 2010, Your Honor,

14    pointed out that before an answer, or motion to dismiss

15    is filed, a motion -- sorry, a notice -- sorry, before

16    an answer or a motion for summary judgment is filed, a

17    notice dismissing the case is automatic under the plain

18    terms of Rule 41.

19         So, I don't think there's anything there that

20    makes this any different.  This really is a just a

21    motion for -- a motion to dismiss.  I understand it

22    contains some very interesting and complex issues, that

23    it's been fully briefed and has some very interesting

24    issues that we would all like to engage in, but from

25    our standpoint, we really have nothing to litigate

1   against Canada anymore.

2          I also think it's interesting that Canada, in

3   their motion, didn't take on the point that even after

4   an answer has been filed, motions to dismiss are --

5   voluntarily by the plaintiff are liberally granted in

6   this circuit and, in fact, the case from February of

7   2010 by Your Honor, that I just cited, says that and

8   cites D.C. Circuit case law.

9          And they also don't really contest that the

10  claim is moot.  In fact, they don't even mention that

11  in their -- or moot or unripe, I'm not sure which is

12  the right way to look at it, but they don't even

13  mention that in their motion papers and, you know,

14  essentially, what they're asking Your Honor for is an

15  advisory opinion on the FSA -- FSIA ground for

16  dismissal which, incidently, is a jurisdictional ground

17  for dismissal.  So that would be without prejudice too,

18  at least as to the merits.

19         And given the fundamentally changed

20  circumstances, we can't think of any relief that we

21  need here anymore, and if Canada thinks there's

22  something we should be suing them for, if they think

23  they're about to do something that causes us

24  irreparable harm, or if they think they owe us some

25  damages, we'd be happy to hear about it, but as far as

```
1    we can tell, there's nothing we need relief from this
2    Court for, other than the Coast Guard part of the case.
3              THE COURT:  I just have a question for you.
4              The action that you refer to is an action
5    taken by the Michigan State Legislature, right?
6              MR. MICARELLI:  That is right.  The -- Let me
7    explain.  Let me explain how that works.
8              There are essentially four parties to the
9    DRIC project: Michigan, Ontario, Canada, the U.S..
10             Michigan needed to approve its part of it,
11   essentially.  That legislation that would have
12   authorized Michigan's participation was defeated in
13   committee in the Michigan State Legislature.
14             The DRIC proponents, for want of a better
15   term, have suggested that, you know, maybe there's some
16   other things they can do.  Maybe they can take it back
17   to the legislature next year.  Maybe they can do this
18   some other way, but as of now, their plans have been
19   stopped in their tracks, as far as we can tell, and
20   given that that's the case, we think this litigation
21   would be premature at this time, but Your Honor doesn't
22   need to decide that.
23             The case law says that we can dismiss for any
24   reason or no reason at this stage and, in fact, Judge
25   Posner, in one of his cases on the --
```

1          THE COURT:  You -- You --

2          MR. MICARELLI:  -- in a case on this subject,

3    said that the parties can dismiss for even an insane or

4    irrational reason.  That's <u>Marcus v. FRB</u>, 286 F.3d

5    1014, (7th Cir. 2002).

6          So --

7          THE COURT:  Well, I wouldn't want to

8    attribute that to you.

9          MR. MICARELLI:  I'm not suggesting that you

10   should, Your Honor.

11         THE COURT:  I mean, that sounds like taking

12   on a huge burden, so we'll just let that one go.

13         How's that?

14         MR. MICARELLI:  I think that's fine, Your

15   Honor.

16         THE COURT:  All right.

17         MR. WHITFIELD:  So unless -- I'm sorry, Your

18   Honor.

19         THE COURT:  No.  No, that's fine.

20         MR. WHITFIELD:  Unless you have further

21   questions, Your Honor, we're completed.

22         THE COURT:  I did have one question but it

23   went to the United States, so let's keep on this issue

24   for just a moment.

25         Thank you, sir.

1                Perhaps, Mr. Whitfield, if you will -- Oh,

2      no, sorry, Mr. Dozeman, if you wanted to respond?

3                MR. DOZEMAN:  Very briefly, Your Honor.

4                First of all, just on the issue of whether or

5      not we had to take on significant burdens and expend

6      significant resources in litigating this case, yes, we

7      did not take a position on the venue motion, however,

8      we had to attend depositions.  We had to review lots of

9      documents because some of those pertain to Canada, and

10     we had to protect our interests.  So we have been

11     involved in the litigation in the truest sense of the

12     word.

13               It's interesting that Plaintiffs now are

14     saying, "Well, never mind, there's been an intervening

15     event; that is, the Michigan Legislature hasn't acted

16     like we think they have to, and therefore, the whole

17     case is not ripe, it's moot.

18               Well, if that was the case -- If that's the

19     case today, why wasn't that the case 20 months ago when

20     they filed the case?  I mean, how has this ever been

21     ripe.

22               And it goes directly to the merits of the

23     case, Your Honor, in the sense that under FSIA, there

24     not only has to be a finding of commercial activity,

25     there has to be a finding that that commercial activity

1    has a direct impact on the -- in the United States.

2                THE COURT:  Uh-huh.

3                MR. DOZEMAN:  And that leg of the stool, if

4    you will, is completely missing here, and their

5    concessions here today underline that fact because it's

6    clear from what they're saying, there are four parties

7    involved in the DRIC project.  They all have to do

8    things to make this go forward.

9                So Canada's actions, in and of themselves,

10   can never be a direct impact because it's not an

11   immediate impact based on their action.

12               THE COURT:  Well, --

13               MR. DOZEMAN:  It has to be --

14               THE COURT:  Okay, that if --

15               MR. DOZEMAN:  -- intervening events.

16               THE COURT:  -- that's if we ever have a

17   chance to get to the merits.  I mean, I --

18               MR. DOZEMAN:  Right.

19               THE COURT:  -- I have dealt with the statute

20   before, and have some passing understanding, anyway, --

21               MR. DOZEMAN:  Yes.

22               THE COURT:  -- of the standards and how the

23   -- that law works, and appreciate the strength of your

24   argument.

25               The question is, I don't know that I can get

1   there.

2          MR. DOZEMAN:  I understand that, Your Honor.

3          I would just reiterate that the whole

4   substance of this case is in front of this Court right

5   now.

6          THE COURT:  I agree that it was.

7          MR. DOZEMAN:  It --

8          THE COURT:  It was until, what time was it,

9   about -- It was very late.  I don't have a time.

10         MR. MICARELLI:  Your Honor, if you'd like an

11  explanation on the timing, I can get that.

12         THE COURT:  I don't -- No, I don't.

13         MR. DOZEMAN:  No.

14         THE COURT:  For me, I don't need a time.

15         MR. DOZEMAN:  Right.

16         THE COURT:  It's for the fellows from Canada

17  who had to travel down here, who weren't sure what you

18  were going to file, if, when, and what you were going

19  to say, and all that.  It's somewhat confusing, but I

20  thought ultimately it would be better just to argue

21  about this in person, rather than write more briefs.

22         MR. DOZEMAN:  That's perfectly okay, Your

23  Honor.

24         THE COURT:  But maybe you can tell your

25  client that that was my thinking, that ultimately it

1    was, you know, we'll just get the arguments in and I

2    can decide.

3              MR. DOZEMAN:  Well, I would point out, Your

4    Honor, that because they haven't dismissed the entire

5    case, --

6              THE COURT:  Yes.

7              MR. DOZEMAN:  -- you still do have plenary

8    power to rule in this action, and that's the

9    Consolidation Coal (phonetic) case that we cite in our

10   brief.

11             So it's a little bit different situation

12   because you still have a case in front of you, you

13   still have jurisdiction over this case, and you can

14   order parties back in for the purposes of ruling on the

15   motion.  You do have that power, and we would request

16   that you exercise that power here, so that we don't act

17   like a yo-yo and end up back here the next time Detroit

18   thinks that we've done something bad to them, because

19   ultimately, we don't think there's any way that they

20   can show that this is a commercial act or, as I just

21   said, how that could have a direct impact without

22   intervening events; that is, event -- things that other

23   people have to do before harm even occurs.

24             THE COURT:  Uh-huh.

25             MR. DOZEMAN:  So, because we think it's such

1   a clear case, we would like a decision on that now, so

2   we're not bouncing back and forth.

3           Thank you.

4           THE COURT:  Thank you, sir.

5           MR. MICARELLI:  May I respond briefly, Your

6   Honor?

7           THE COURT:  Yes.

8           Could you ask that at the microphone, just so

9   that the record --

10           MR. MICARELLI:  Yes.

11           May I respond briefly, Your Honor?

12           THE COURT:  Go right ahead.

13           MR. MICARELLI:  Yes, the -- Mr. Dozeman

14   pointed out that, or suggested that Your Honor has

15   discretion to order Canada back in the case because

16   we've not dismissed all parties.

17           Well, first of all, if Your Honor would like

18   us to dismiss all parties, that's something we would

19   think about, but I think it's more efficient to just

20   stay the Coast Guard part of the case so we don't have

21   to refile that.

22           But in terms of his suggestion there's  going

23   to be some yo-yo effect, we had no intent to refilling

24   if nothing new happens.  If the case -- If things stay

25   the way they are now, that's not something he has to

1   worry about.  If the DRIC bridge is not going to go

2   forward, that's not something he has to worry about.

3        If we do refile, if something happens and we

4   do refile, and if the case is in the same posture as it

5   is or was, they can just file the same papers.  They

6   don't have to do anymore work.

7        If things have changed though, if the

8   circumstances are different, then the arguments they've

9   made may no longer be valid.  So what they're really

10  asking Your Honor for is an advisory opinion that's not

11  going to apply to anything.

12       I mean, if it's this case, we're not going

13  forward with this case.  So really, an FSIA is not

14  going to make any difference.  It's -- As mentioned,

15  there's no relief we're seeking against them, so how

16  can they claim (unintelligible), we're not seeking any

17  relief.

18       The -- As for the -- As for a future case,

19  they want some advisory opinion about some case that

20  may never be filed, and if it's filed, may be in a

21  substantially different posture.

22       THE COURT:  Well, all I can tell you is that,

23  you know, your arguments are very sound.  You know what

24  the rule is.  I just am sympathetic to Canada's plight,

25  but --

1          MR. MICARELLI:  But --

2          THE COURT:  -- but I think your arguments are

3   very sound, and I do have another question for you.

4          If your clients, who have been stymied in

5   their ability to build an extension, or an expansion,

6   or a second bridge, or another span, or whatever proper

7   term I should use, on the Ambassador Bridge -- That's

8   your bridge, right?

9          MR. MICARELLI:  Yes, that's right.

10          THE COURT:  If they're no -- If they get the

11   permit from the Coast Guard so then they can proceed

12   and do, and construct such a thing, does it then matter

13   to them if the DRIC bridge is built?

14          MR. MICARELLI:  To some extent, it does, Your

15   Honor.  It certainly does.

16          We are taking the position that, in fact,

17   it's -- We think the law is clearly on our side, that

18   the DRIC bridge is -- interferes with their franchise

19   rights, is a violation of statute, and treaty, and

20   contract.

21          So, for that reason we would complain about

22   the DRIC bridge, even if the Coast Guard piece of this

23   goes forward.

24          THE COURT:  Well no, what I meant was even if

25   your bridge is built --

1              MR. MICARELLI:  Yes, even if that bridge is

2     built, yes, we would have something to complain about

3     there, but if that bridge is built, I mean, that's

4     essentially one of their two grievances here, and

5     that's --

6              THE COURT:  Well, that seems to me -- Yes.  I

7     mean, because if your client is unable to build more of

8     its bridge, and the other parties can go full steam

9     ahead and build a competing bridge, then the

10    consequences for your clients are more clear than if

11    your clients enlarge the bridge however they wish, so

12    they have more spans, carry more traffic, and then

13    there's a competing bridge also built.  I'm not sure --

14             MR. MICARELLI:  I think in the sense that --

15             THE COURT:  -- what the money value of it

16    becomes.

17             MR. MICARELLI:  I think in a sense the two

18    are independent.  I mean, each has a money value

19    independently of the other, you know.

20             In a way they're interrelated because

21    building that additional capacity may, as a political

22    matter, defeat any suggestion, make it harder to

23    convince the public there's a need for the DRIC bridge,

24    but in terms of --

25             THE COURT:  That's only if you lower the

1   tolls.

2         MR. MICARELLI:  No, Your Honor, I think it's

3   really a question of what they claim is a lack of

4   traffic capacity, but -- and, you know, this is getting

5   into the merits, which I would love to argue, but --

6         THE COURT:  No.  No.  No, it's actually not

7   the merits, it's your client's business I'm intrigued

8   by.  It has nothing to do with the merits of whether

9   you should or shouldn't.  I mean, that's entirely for

10  your clients to decide, whether they want to build a

11  bridge or not, and the business competitive problem

12  between your clients and a public bridge only comes to

13  bear if you actually have, as you say, an exclusive

14  franchise for some area of the river, which is kind of

15  an interesting, you know, legal issue, but really, I

16  was just interested in their business.

17        One of the things I liked a lot about

18  practicing law was learning the business of my clients.

19  I don't do that anymore, so I was just inquiring into

20  your business, or your client's business.

21        All right.

22        MR. MICARELLI:  One other thing I'd like to

23  address, Your Honor, in terms of hardship or timing,

24  when we realized that there really wasn't anything we

25  needed to pursue here with regard to the DRIC, we did

1    contact the -- Mr. Whitfield, for the U.S. Government,

2    on the fourteenth or fifteenth of this month, to work

3    out the terms of a possible stay, with the back and

4    forth that unfortunately took a lot longer than we

5    expected and, in retrospect, we probably should have

6    called the clerk then, when we knew that this was

7    coming, to give Your Honor a heads up, and we apologize

8    for not having done that, but in terms of hardship to

9    Canada, we shared our -- we shared with them on the

10   twenty-second by e-mail, what we were doing with the

11   U.S.  That was this past -- That was Tuesday of last

12   week, asking them if they had any objections, and that

13   was a proposed order -- what we sent them is a proposed

14   order that would have dismissed Canada, dismissed the

15   FHWA claims against the U.S. Defendants, and stayed

16   proceedings for 90 days, and we asked them if they had

17   any objections.  We heard nothing from them for six

18   days.  Granted that Thanksgiving weekend was in between

19   but, of course, it's not Thanksgiving again, and did

20   not hear anything from them until we were on the phone

21   with Your Honor's law clerk on Monday.

22           So, in terms of this being some surprise to

23   them, they've had about a week to deal with the fact

24   that this was something we were proposing to do.

25           THE COURT:  All right.

1          Well, I don't think, sir, that I can get
2    around the rule.  I think the rule permits a plaintiff,
3    under such circumstances, to file notice of voluntary
4    dismissal without prejudice, and that were we to
5    proceed, whether because it was merely advisory,
6    whether the argument that this is moot, I just -- I
7    actually don't see that.  I think that the issue of
8    funding -- government funding issue is always ripe for
9    another round, but anyway, it certainly complicates the
10   case enormously, in terms of my jurisdiction, but it
11   doesn't matter because the Plaintiffs have filed.  They
12   get at least one chance to sue and to file a voluntary
13   notice of dismissal without prejudice.
14          If they sue a  second time and try to do it a
15   second time, then it is with prejudice.  So the
16   thousand cuts will only be two, not a whole lot of
17   comfort perhaps, but at least some.
18          But I don't really see that I can get around
19   the clarity of the rule, and if I try, I just think
20   that it wouldn't take you very far.  If the decision
21   were appealed, the chances of it being vacated, I
22   think, are pretty high, reversed and vacated.
23          Anyway, I had a question for the United
24   States.  This is just a question I was going to ask,
25   that I don't need to ask, and so now I'm just going to

1    ask, okay?  Nobody needs to take any significance out

2    of this question because the Plaintiffs have withdrawn

3    the complaint, so it no longer matters, right?

4             MR. WHITFIELD:  Right.

5             THE COURT:  Sort of.

6             Did the Coast Guard really give a permit to

7    DRIC and refuse a permit to the Plaintiffs?

8             MR. WHITFIELD:  I'm unsure about the process

9    with regard to the DRIC.  If I could ask Frank.

10            MR. ESPOSITO:  Your Honor, this is Frank

11   Esposito from the Headquarter, Coast Guard.

12            The facts are that the Coast Guard never even

13   received a permit application for the DRIC, and never

14   even addressed the question of whether a permit would

15   or would not be given.

16            THE COURT:  It never got that far?

17            MR. ESPOSITO:  Never even got to the

18   application stage.

19            THE COURT:  Okay.

20            MR. MICARELLI:  Your Honor, I think I know

21   what's prompting the question.

22            THE COURT:  Yes.

23            MR. WHITFIELD:  I think that the thing Your

24   Honor is thinking about is the environmental clearance.

25            FHWA did the environmental review of the DRIC

1   and they completed that, even though nothing else --

2   even though land acquisition and other things were yet

3   to be done.

4           DRIC has not, as far as I understand, applied

5   -- as Mr. Esposito explained, I think that's correct.

6   They have not applied for a Coast Guard permit yet.

7           THE COURT:  Did they do an EIS or just an EA?

8           MR. MICARELLI:  They did an EIS.

9           THE COURT:  An EIS?  I should know that

10  anyway.

11          Thank you for coming, sir.  Thank you

12  everybody.

13          I'm going to deny the motion to vacate the

14  Plaintiff's notice of dismissal.

15          Do you want me to write a decision on this so

16  that you can appeal it?

17          MR. DOZEMAN:  I don't know if we need a

18  decision and order.  I mean, a written decision and

19  order.

20          THE COURT:  You'll do better in this circuit

21  if --

22          MR. DOZEMAN:  Yes.

23          THE COURT:  You will do better if I write an

24  opinion.

25          MR. DOZEMAN:  Then we would request one, Your

1    Honor.   Thank you.

2            THE COURT:   Okay.

3            Now, I don't know why I just volunteered

4    that.

5        (Laughter.)

6            THE COURT:   Why did I just volunteer that?

7            Anyway, yes, sir?

8            MR. MICARELLI:   And, Your Honor, the

9    unopposed motion for the 90-day stay --

10           THE COURT:   Yes.   We'll enter that.   We'll

11   enter that, as well.   Yes, but the excellent law clerks

12   really have plenty of other things to do, I promise.

13           Anyway, we will enter a written decision on

14   the point so that if your client decides to appeal the

15   permission -- the denial of the motion which allows the

16   Plaintiff to gain a dismissal, you'll be able to do

17   that, okay?   Thank you.

18           Thank you, everybody.

19       (Proceedings concluded at 10:17 a.m.)

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          December 11, 2011

STEPHEN C. BOWLES