```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


DETROIT INTERNATIONAL       :
BRIDGE CO.                  :
            Plaintiff,      :
        vs.                 :          Docket No. CA 10-476
                            :
CANADIAN TRANSIT COMPANY    :             Washington, D.C.
ET AL.,                     :          Wednesday, May 25, 2011
                            :                11:05 a.m.
            Defendant.      :
----------------------------x


                 TRANSCRIPT OF STATUS CONFERENCE
           BEFORE THE HONORABLE ROSEMARY M. COLLYER
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:         CARL MICARELLI, Esquire
                           Debevoise & Plimpton LLP
                           919 Third Avenue
                           New York, NY  10022



For the Defendant:         PETER C. WHITFIELD, Esquire
                           U.S. Department of Justice
                           Environmental and Natural
                           Resources
                           601 D Street
                           Washington, DC  20004

For Defendant Canada:      SCOTT M. WATSON, Esquire
                           (Via telephone)
                           Warner Norcross & Judd LLP
                           900 Fifth Third Center
                           111 Lyon Street, NW
                           Grand Rapids, MI  49503-2487
```

Appearances continued:

Court Reporter:           CRYSTAL M. PILGRIM, RPR
                          United States District Court
                          District of Columbia
                          333 Constitution Avenue, NW
                          Room 4700-F
                          Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced by computer-aided transcription.

```
 1              THE DEPUTY CLERK:  Civil action 10-476, Detroit
 2   International Bridge Company versus Canadian Transit Company et
 3   al.  For plaintiff Carl Micarelli.  For the defense, Peter
 4   Whitfeld and Scott Watson via telephone.
 5              THE COURT:  Good morning everyone.
 6              MR. MICARELLI:  Good morning, Your Honor.
 7              THE COURT:  I wanted to say that we have worked on
 8   the motion to transfer venue and spent a fair amount of time
 9   with your arguments and your briefs and I'm going to deny that
10   motion and keep the case here.  I wanted you to know that.  I
11   hoped to have a decision out by now, but it's still on route if
12   I can use that term without having you go fall from here to
13   you.  It should get to you sometime in the fairly immediate
14   future, but I am going to deny it.
15         Now let me ask a question to which I ought to know the
16   answer, but do not.  If we deny venue as I currently
17   anticipate, is that an immediately appealable matter?
18              MR. MICARELLI:  No, Your Honor.  We believe that is
19   not.
20              MR. WATSON:  The answer for Mr. Watson on the phone
21   -- is it Micarelli?
22              MR. MICARELLI:  Yes.
23              THE COURT:  Mr. Micarelli said no he believes that it
24   is not immediately appealable.  I only ask that question for
25   purposes of the next issue which is figuring out the plan going
```

1  forward.  Last summer we had some outstanding motions to
2  dismiss.  Those were denied without prejudice because we had
3  all of these venue issues still to address and some discovery
4  limited to the venue issues.
5      If the case stays here, as I think it will and as I
6  plan, we then need to get back to the litigation on the merits.
7  So that raises the question of whether any outstanding, any
8  prior or current plans to file motions to dismiss from any of
9  the defendants would depend or ultimately be objectionable by
10 plaintiff arguing that some form of discovery is necessary.  So
11 let me ask the defendants first.  I don't know who would speak,
12 whether -- is it Whitfeld?
13         MR. WHITFIELD:  Yes, Your Honor.
14         THE COURT:  Mr. Whitfeld.  Who do you represent,
15 Mr. Whitfield.
16         MR. WHITFIELD:  The United States and the relevant
17 federal agencies of the United States.
18         THE COURT:  Okay, Mr. Whitfeld is saying that he
19 represents the United States.
20     You should all know that since Mr. Watson is on the phone,
21 he can hear nothing that happens here unless you're standing
22 right at the microphone which is why I'm repeating.
23 Mr. Watson, can you hear me?
24         MR. WATSON:  I can, yes, Your Honor and thank you for
25 repeating the responses.

```
 1                THE COURT:  You're welcome.  I know how it works.
 2   Mr. Whitfeld has just said that he represents the U.S.
 3   defendants.
 4       Mr. Watson who you are representing?
 5                MR. WATSON:  Canada, Your Honor.
 6                THE COURT:  Mr. Whitfeld, do you have a colleague
 7   with you or is this other gentleman representing someone else?
 8                MR. WHITFIELD:  Yes, Your Honor.  This is Bryant
 9   Cannon.  He is an intern with your division this summer.  He
10   completed his undergraduate degree at Pomona College and is at
11   the Yale School of Forestry.
12                THE COURT:  The Yale School of Forestry?
13                MR. WHITFIELD:  Yes, Your Honor.
14                THE COURT:  Mr. Watson you are really missing
15   something here. You're not going to meet Bryant Cannon who's an
16   intern with the Department of Justice or the U.S. Attorneys
17   office?
18                MR. WHITFIELD:  Department of Justice.
19                THE COURT:  The Department of Justice.  Mr. Cannon is
20   pursuing a joint degree from NYU Law School and Yale University
21   College Graduate School of Forestry.  College, graduate school?
22                MR. CANNON:  Graduate school.
23                THE COURT:  Graduate School of Forestry.  Forestry
24   and law.  That seems like two sides of your brain, but we'll
25   accept it.  Welcome Mr. Cannon.
```

1      All right, Mr. Watson, I'm sorry Mr. Whitfield why don't
2 you come forward and speak at the microphone so Mr. Watson can
3 hear you.  And tell me in light of retaining this case in D.C.
4 what would be the next step of the United States defendants if
5 you had a choice?  We'll have to hear from the plaintiff as
6 well.  There's time, there's time.
7           MR. WHITFIELD:  Thank you, Your Honor.  United States
8 defendants would like to renew their motion to dismiss.  We do
9 not believe that discovery would be necessary for plaintiffs to
10 respond to our motion to dismiss because it's all pure matters
11 of law.
12           THE COURT:  That reminds me, forgive me, it's almost
13 a year later.  There have been a lot of water under the bridge,
14 oh, this is really getting bad isn't it. I'm sorry, a lot of
15 time has passed, many cases since I last read your brief.  Can
16 you remind me what the essential arguments are.
17           MR. WHITFIELD:  Yes, Your Honor.  Some of the
18 arguments are that their claims, mere claims in the Eastern
19 District of Michigan and that it's inappropriate to bring two
20 claims in two distinct forms so that those would be precluded.
21      Other claims such as their constitutional claim for
22 violation of due process we would say that that claim is more
23 appropriately brought in the Court of Federal Claims or their
24 claim for equitable relief if there's a monetary relief
25 available that they can't pursue that claim in this court.

1           THE COURT:  All right, thank you.

2           MR. WHITFIELD:  Thank you.

3           THE COURT:  Mr. Watson, can you tell me since the
4  case will stay here how it is that the defendants in Canada
5  would wish to proceed?

6           MR. WATSON:  Yes, Your Honor.  I think what we would
7  do is renew our motion to dismiss which is a motion based on
8  the Foreign Sovereign Immunities Act simply stating that the
9  Court lacked subject matter jurisdiction because of the,
10 because under the Foreign Sovereign Immunities Act Canada has
11 immunity from suit in the United States for this claim.

12          THE COURT:  So is the basis for the argument a lack
13 of activity in the United States or is it that this is a
14 sovereign act by Canada or is it both or is it something else?

15          MR. WATSON:  It is a little bit of both, Your Honor.
16 Under the Foreign Sovereign Immunities Act the jurisdictional
17 test is really two pronged.  It's whether there's been, I am
18 simplifying a little bit, but it's essentially whether there's
19 been a commericial activity with a sufficient nexus to the
20 United States and both prongs are necessary and we argue that
21 neither prong is satisfied here.

22          THE COURT:  Okay, all right, thank you.  Now we know
23 what the defendants want to do.  Why doesn't Mr. Micarelli tell
24 me what the plaintiffs want to do.

25          MR. MICARELLI:  Thank you, Your Honor.

1         I just want to introduce who I have with me this is Pat
2    Moran who is in-house counsel with Detroit International Bridge
3    Company.
4              THE COURT:  Good morning, sir.
5              MR. MORAN:  Good morning.
6              MR. MICARELLI:  As to where to go next, we have been
7    preparing an amended complaint which we have been holding off
8    on filing until we found out which Court we were going to be
9    in.  But the amended complaint does a couple of things.  One is
10   it sets forth facts that we have learned since the original
11   complaint has been filed.  We have learned quite a few, some
12   new things have happened and we've learned some new things as a
13   result of the venue discovery in this case and through other
14   channels as well including FOIA requests and the Canadian
15   equivalent.
16             We also have, some of the things that were in the
17   previous motions to dismiss address what the defendants
18   pleading deficiencies and we think there are ways we can at
19   least avoid some of those by amending the complaint.
20             Now since Your Honor denied the motions to dismiss
21   without prejudice, our understanding is that essentially it's
22   back to square one and we can file an amended complaint as of
23   right, but if Your Honor thinks we need to make a motion we can
24   do that as well.
25             THE COURT:  Well, I think that we're back to square

1  one and you can do it as a right.  The real question is in
2  light of the plans of the defendants to file further motions to
3  dismiss, it's not worth their time and their client's money and
4  their lawyer efforts to file such motions until they've seen
5  the new complaint.
6       How long do you think it will take you to file such a
7  complaint?
8           MR. MICARELLI:  We can do it pretty quickly, Your
9  Honor, given that the holiday weekend is coming up.  I think I
10 need to give myself a couple more days then otherwise and say a
11 week from Monday.
12          THE COURT:  A week from Monday is okay by me.  Hold
13 on one sec, let me get that date down so we all know we're
14 talking the same thing.
15      A week from Monday is the 6th, okay.  So an amended
16 complaint will be filed on the 6th of June.  The defendants of
17 course can't predict exactly what new facts will be alleged or
18 what pleading deficiencies will be modified or corrected or
19 whatever, cured, but they do have outstanding motions which
20 presumably form a substantial basis for their renewed motions.
21      How long then given those two considerations do the
22 defendants need for filing their motions to dismiss or deciding
23 perhaps that they won't, but I'm, I think on the supposition
24 that Mr. Whitfield and Mr. Watson will continue to want to file
25 motions to dismiss.  Mr. Whitfeld since you're here, why don't

1  you come speak at the microphone so Mr. Watson can hear you.
2           MR. WHITFIELD:  Thank you, Your Honor.  United States
3  would probably request approximately three weeks from that
4  Monday.
5           THE COURT:  That would be the 27th.
6           MR. WHITFIELD:  Yeah, the knowledge of the Federal
7  Rules have eluded me, so I'm not sure when our answer would be
8  due.  If it's starting anew would it be due 30 days?
9           THE COURT:  It would be due, but I mean your answer
10 isn't relevant if you're going to file a motion to dismiss.
11          MR. WHITFIELD:  Right, right.  I just wanted to make
12 sure that we got it in before the time to respond to their --
13          THE COURT:  Why don't we say that you have until the
14 27th to respond.
15          MR. WHITFIELD:  Very well.
16          THE COURT:  I mean you're the United States, so you
17 might even get sixty days, but at a minimum you would get 30
18 and three weeks is within that and whatever the rules say.
19 We'll at least give you to the 27th, then you can respond with
20 either a motion or an answer.
21          MR. WHITFIELD:  Okay, thank you, Your Honor.
22          THE COURT:  How's that?
23          MR. WHITFIELD:  That's very nice.
24          THE COURT:  Is that date acceptable to you as well,
25 Mr. Watson?

```
 1            MR. WATSON:  It is, Your Honor, that works for us.
 2            THE COURT:  Okay, wait a second.  So that would be,
 3   right I got it.  So we'll either have motions to dismiss or
 4   answers on the 27th and then is it fair to assume that since
 5   there will be two of them you'll want at least a month to
 6   respond?
 7            MR. MICARELLI:  Your Honor, I think given our claims
 8   will be basically the same, we expect the motions will be
 9   basically the same.  Well, I don't want to cut my time short.
10   Maybe we should say one month then just to be safe.
11            THE COURT:  How about four weeks, we'll give you to
12   the 25th of July.
13            MR. MICARELLI:  Okay, Your Honor, one other thing I'd
14   like to raise.  We agree for the U.S. defendants motion that's
15   essentially a 12(B)(6) type of motion.  There's no discovery we
16   would need to respond to that motion. For Canada's motion there
17   may be some jurisdictional facts relating to commercial
18   activity both of the prongs that Mr. Watson identified,
19   commercial activity and contacts with the United States.
20        Your Honor earlier denying our request for
21   jurisdictional discovery as overbroad without prejudice.  I
22   think there are a number of ways we can narrow that and just
23   focus it on a few things that we think we need.  So we would
24   like to reserve the right to seek jurisdictional discovery of
25   Canada in response to their FSIA motion and if it would move
```

1  things along we could serve that even before they move though I
2  think we would want to reserve our rights in case they come up
3  with something unexpected in their motion.
4              THE COURT:  Well, I think that you need to be given
5  the chance if you think that discovery would address either of
6  those two prongs.  To jurisdiction here, does Canada have any
7  plan to present by affidavit or otherwise evidence that would
8  factually support their legal argument?
9              MR. WATSON:  No, Your Honor.  Our motion initially
10 was and will be this time again exclusively a motion on legal,
11 presenting a legal question and we don't think that discovery
12 would be necessary at all and we don't intend to rely on any
13 affidavits or anything else to support the position.
14             THE COURT:  Well, they are ultimately legal
15 questions, but aren't the legal questions reliant to some
16 extent on the facts?  I mean, isn't Canada's argument then that
17 the construction of a toll bridge is not a commercial activity?
18             MR. WATSON:  Well, Your Honor, the argument is well
19 two things really in your question.  The first point is that we
20 intend to take the facts as alleged.  So I suppose there is
21 always the remote possibility that the complaint would be so
22 changed that we might present a fact question for the Court.
23        But certainly our previous motion we expect our next
24 motion too would take the facts as alleged.  So there's really
25 no need for discovery.  The issue will be whether if they prove

1 everything in their complaint, the Court would have
2 jurisdiction.
3        Now to your second point, it's not Canada's position
4 that building a bridge in every circumstance would never be a
5 commercial activity although there may be an argument there. I
6 think really the gravamen of plaintiff's complaint is that
7 they're unsatisfied with where Canada has chosen to locate the
8 bridge and really our point is that choosing where to locate an
9 international boarder crossing is not a commercial activity.
10        THE COURT:  Okay, that's as I remember it too.
11        All right, I think what you should do, sir, is wait for
12 the motion and then if you think that discovery is necessary
13 and appropriate why don't you file a motion to that effect
14 laying out exactly what your discovery would be given the
15 concerns in the past.
16        In normal discovery I stay out of discovery unless there
17 are disputes, but in this case since we know Canada is going to
18 object and say discovery is not needed, you might as well just
19 file your discovery so that we cut through the chase, okay?
20        MR. MICARELLI:  That's what we'll do, Your Honor.
21        THE COURT:  All right.
22        MR. MICARELLI:  One more thing I would like to bring
23 to Your Honor's attention if I may.
24        THE COURT:  Yes.
25        MR. MICARELLI:  I think part of what animated our

1  request for this conference was the concern that things are
2  happening on the ground and that if we didn't do something, it
3  would be filed for a claim of laches or mootness.
4      We are contemplating at some point filing a complaint for
5  preliminary injunction.  Though I think nobody is about to
6  start putting, building a bridge across the river tomorrow, but
7  certainly things are being done in preparation.  And I think
8  what we really want is for the defendants to be put on notice
9  that anything they do now is at their peril and is not going to
10 move this case.  If we could get some sort of direction from
11 the Court to that effect or if we could move for motion for
12 preliminary injunction those are some of the things we've been
13 contemplating doing.
14          THE COURT:  Well, I don't think that without a motion
15 and some factual basis to make findings that the plaintiff is
16 entitled to a motion that I could order the defendants not to
17 do any preliminary work in anticipation that they'll be able to
18 build a bridge they plan.  On the other hand, you have provided
19 notice to them that they act at their peril and that it would
20 be difficult for them to persuade this Court later that ghee,
21 we've already committed too many resources and too much money
22 for us to change now.
23      If you think that a PI is going to be necessary to make
24 sure that as a matter of fact they don't get too far ahead of
25 themselves, then you should do that because it may well be that

```
 1  this isn't the vehicle by which you can get some money from
 2  them.
 3              MR. MICARELLI:  Thank you, Your Honor.
 4              THE COURT:  All right.
 5         Did that leave everybody sufficiently up in the air and
 6  in a fog?  Okay, here we go.
 7        Is there anything else we need to address?
 8        We will try since the litigation is not exactly new, I
 9  will try to address the motions that are going to be filed as
10  soon as possible.  If there is discovery on the motion from
11  Canada, that will of course slow it down a little bit, but we
12  don't know how that's going to come out so I won't make a
13  determination at this time.
14          Is there anything that Mr. Whitfield or Mr. Watson
15  wishes to add at this point?
16              THE COURT:  Mr. Whitfield is coming forward
17  Mr. Watson.
18              MR. WHITFIELD:  Yes, Your Honor.  The United States
19  would request to have our reply brief due on August 12th if
20  that's at all possible.
21              THE COURT:  That's possible by me.  Do you have an
22  objection?
23              MR. MICARELLI:  No, Your Honor.
24              THE COURT:  All right, is that a good date for you,
25  Mr. Watson?
```

```
 1              MR. WATSON:  Yes, that works.
 2              MR. WHITFIELD:  Thank you, Your Honor.
 3              THE COURT:  You're most welcome, sir.
 4         Anything else?
 5              MR. WHITFIELD:  No.
 6              THE COURT:  Anything else from you Mr. Watson?
 7              MR. WATSON:  No, Your Honor.  I was going to bring up
 8   the point of the reply brief, but Mr. Whitfield has done that
 9   so I think from our standpoint that is everything.
10              THE COURT:  All right, I recognize that Mr. Watson is
11   in, you're in Michigan right, you're in Detroit?
12              MR. WATSON:  I'm in Grand Rapids, Michigan.
13              THE COURT:  Grand Rapids.  Attendance by phone is
14   certainly possible for status conferences of this nature which
15   are talking about progress and scheduling and things.  If we
16   get to the point of oral argument Mr. Watson, I will need you
17   to come in person, okay?
18              MR. WATSON:  Yes, Your Honor, that is fine.  And I
19   did want to thank you for allowing me to attend by phone today
20   that was very helpful.
21              THE COURT:  Well, it saves everybody a lot of time
22   and money.  And we're all in favor of that, particularly the
23   client who is here, so that's why we say those things.  We
24   don't want you to think, sir, we're spending your money
25   unnecessarily.
```

1        Okay, thank you, everybody.  Have a good weekend, good
2   summer and I look forward to your briefs.  Thanks a lot.
3        MR. WATSON:  Thank you.
4        MR. MICARELLI:  Thank you.
5        MR. WHITFIELD:  Thank you.
6                          -oOo-

1                         CERTIFICATE

2        I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10 nor otherwise interested in the outcome of the action.

11

12 _____          _____
   /S/Crystal M. Pilgrim, RPR              Date:   June 1, 2011
13

14

15

16

17

18

19

20

21

22

23

24

25