UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DETROIT INTERNATIONAL BRIDGE COMPANY, *et al.*, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) | Civil Action No. 10-476 (RMC) |
| GOVERNMENT OF CANADA, *et al.*, | ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION**

The Detroit International Bridge Company and its wholly-owned subsidiary, the Canadian Transit Company (CTC) (collectively, DIBC), want to build an adjacent twin span to their Ambassador Bridge (Twin Span) that crosses the Detroit River and connects Detroit, Michigan and Windsor, Canada.  Despite its best efforts for more than a decade, and lawsuits in both countries, DIBC has yet to receive full permits from either Canada or the U.S. to construct and operate a new bridge.  In the meantime, the governments of Canada, the Province of Ontario, the United States, and the State of Michigan have worked in consort to develop plans for a new publicly-owned bridge, the New International Transit Crossing/Detroit River International Crossing (NITC/DRIC) (pronounced Nitsy-Drick), two miles from the Ambassador Bridge.  The NITC/DRIC would allegedly destroy the need for a Twin Span and compete with the Ambassador Bridge.

DIBC sues Her Majesty the Queen in Right of Canada and the Windsor-Detroit Bridge Authority (WDBA) (Canada), which would operate the NITC/DRIC on the Canadian side of the border.  Canada has filed a motion to dismiss in reliance on the Foreign Sovereign

1

Immunities Act (FSIA), 28 U.S.C. §§ 1602-1611.  *See* Mot. to Dismiss [Dkt. 125].  In the alternative to ruling on its motion to dismiss, Canada asks the Court to stay this suit as to Canada because CTC, the owner of the Canadian end of the Ambassador Bridge, has brought substantially the same claims before a court of competent jurisdiction in Ontario, Canada.  After having thoroughly considered the motion to dismiss on immunity grounds, this Court finds that a stay is warranted because the scope of CTC's franchise rights should be decided by Canadian courts.

## I.   BACKGROUND

In its campaign to build a Twin Span, DIBC has sued in the United States and in Canada.  The Court refers the reader to its earlier opinions[1] and will not belabor this history here.

As against the Canadian Defendants, Count Two of the Third Amended Complaint seeks a declaratory judgment that DIBC, through its subsidiary CTC, holds an exclusive franchise right under Canadian law to build and operate a bridge between Windsor and Detroit and that no one else can ever build a competing bridge.  3rd Am. Compl. [Dkt. 105] ¶ 312.  Specifically, DIBC seeks a declaration that it has a "perpetual right" to operate a toll bridge between Detroit and Windsor with which Canada cannot interfere.  *Id.*  Count Two alleges that "[u]nder Canadian law, plaintiffs' statutory and contractual franchise rights under the special agreement are exclusive, and cannot be subjected to any new bridge that would constitute contiguous or injurious competition or interference with plaintiffs' franchise."  *Id.* ¶ 304.  Count Two further alleges that Plaintiffs' franchise rights are enforceable "as a matter of Canadian law (against Canadian government defendants)."  *Id.* ¶ 305.  As against all Defendants, DIBC alleges

---

[1] Opinion dated 5/13/11 [Dkt. 43]; Opinion dated 12/1/11 [Dkt. 55]; Opinion dated 5/30/14 [Dkt. 162]; Order dated 12/17/14 [Dkt. 193].

that "[b]y approving the construction of a different new span two miles away, the Defendants are, in effect, seeking to relocate plaintiffs' statutory and contractual franchise to a new location and to new ownership."[2]  *Id.* ¶ 311.

As against Canada, Count Three seeks a declaratory judgment that DIBC has a franchise right to build the Twin Span, which is not subject to Canada's preference for a government-owned bridge, *id.* ¶ 321, and that no Canadian agency or officer can defeat or frustrate this right by accelerating approval of the NITC/DRIC and delaying approval of the Twin Span or by discriminating in favor of the NITC/DRIC.[3]  *Id.* ¶¶ 322-23.

---

[2] Count Two seeks the following relief against all Defendants, including Canada:

> Plaintiffs therefore seek a declaratory judgment that (a) plaintiffs possess a statutory and contractual franchise right to operate an international bridge between Detroit and Windsor under concurrent and reciprocal United States and Canadian legislation that constitutes a Special Agreement under the 1909 Boundary Waters Treat [Treaty Between the United States and Great Britain Relating to Boundary Waters between the United States and Canada; 36 Stat. 2448; T.S. 548]; (b) that franchise right is exclusive of all contiguous and injurious competition in the form of any other bridge between Detroit and Windsor; (c) in the alternative, and at a minimum, that franchise right is exclusive of any other bridge being built between Detroit and Windsor unless and until the United States Congress and the Canadian Parliament enact concurrent or reciprocal legislation constituting a special agreement under the 1909 Boundary Waters Treaty that grants a franchise right to another entity to construct, maintain, and operate an additional international bridge between Detroit and Windsor; (d) that franchise right is a perpetual right that prohibits the government as grantor from building a bridge that would diver toll revenues from DIBC . . . ; . . . (g) therefore no entity other than plaintiffs may construct, maintain, and operate an international bridge between Detroit and Windsor.

3rd Am. Compl. ¶ 312.

[3] Count Three seeks the following relief against all Defendants, including Canada:

> Plaintiffs therefore seek a declaratory judgment that (a) plaintiffs possess a statutory and contractual franchise right to build the

Notably, CTC filed a separate action against the Attorney General of Canada on February 15, 2012 (the Canadian Litigation).  *See* Mot. to Dismiss at 6.  CTC amended that claim on February 19, 2013.  *Id*.

## II.     LEGAL STANDARD

Inherent in the power of an Article III court to control its docket is the discretionary power to stay a case pending the outcome of foreign litigation.  *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986). "Although federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress, in exceptional cases, a federal court should stay a suit and await the outcome of parallel [foreign] proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'"  *Finova Capital Corp. v. Ryan Helicopters*, 180 F.3d 896, 898 (7th Cir. 1999), *reh'g en banc*, 433 F.3d 1199 (9th Cir. 2006) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Courts weighing a stay based on foreign litigation apply a multi-factor balancing test, considering: the similarity of the parties, "the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the

---

[Twin] Span; (b) the agencies and officers of the United States and Canada may not frustrate or defeat plaintiffs' franchise right to build the [Twin] Span and are preempted from doing so; (c) the agencies and officers of the United States and Canada may not discriminate in favor of the NITC/DRIC over the [Twin] Span, and may not accelerate the regulatory approvals for the NITC/DRIC and/or delay the regulatory approvals for the [Twin] Span; (d) . . . the agencies and officers of the United States and Canada may not approve the NITC/DRIC unless they are able to demonstrate that the NITC/DRIC is necessary even after construction by plaintiffs of the [Twin] Span.

3rd Am. Compl. ¶ 323.

convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.*, 919 F. Supp. 2d 17, 24 (D.D.C. 2014) (quoting *Royal & Sun Alliance Ins. Co. of Can. v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)). "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun Alliance Ins. Co. of Canada*, 466 F.3d at 94; *see also Brinco Mining LTD v. Federal Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982).

### III.   ANALYSIS

Canada contends that the "CTC is currently advancing similar claims and seeking similar declarations under Canadian law against Canada in Canadian courts." Mot. to Dismiss at 23; *see* Reply, Ex. 1 [Dkt. 136-1] Amended Statement of Claim, *CTC v. Attorney General of Canada*, Court File No. CV-12-446428 (Ontario Superior Court of Justice) (Am. St. of Claim). Canada argues that a stay of this U.S. litigation is appropriate because DIBC is "making the same exclusive franchise claim in the Canadian Litigation . . . [and is] also making the exact same claim in that case regarding the [T]win [S]pan." Reply at 14. Moreover, the "adequacy of the Canadian courts . . . is beyond dispute" and a stay would "promote judicial efficiency and avoid the risk of inconsistent declarations on the same issue of [DIBC's] rights under Canadian law." Mot. to Dismiss at 24.

DIBC opposes a stay. Acknowledging that there is a single issue in common to both proceedings, the exclusivity of its franchise under Canadian law, DIBC argues that the Canadian Litigation does not address its claim that "Canada's effort to build the NITC/DRIC is

infringing [its] right to maintain its franchise by building its Twin Span." Opp'n [Dkt.134] at 117. DIBC also maintains that the "Ontario Litigation would not in fact provide resolution of the exclusivity issue" because the United States is not a party. *Id*. Thus, a stay would be prejudicial because it would "delay[] this lawsuit indefinitely" and "[t]ime is of the essence in this case, where the parties are effectively in a race to build their respective bridges." *Id*.

Upon consideration of each of the enumerated factors, the Court concludes that a stay is appropriate in DIBC's case as against Canada. Although none of the U.S. defendants in this case is a named defendant in the Canadian Litigation, the parties relevant to the claims advanced against Canada are substantially similar. Here, DIBC sues Canada and WDBA; in Canada, CTC sues the Attorney General of Canada. While DIBC is not a named plaintiff in the Canadian Litigation, CTC is its wholly-owned subsidiary and "parties are 'similar' for purposes of international comity when one party is a subsidiary of the other or one party has a substantial ownership interest in the other." *Taub v. Marchesi Di Barolo S.p.A.*, No. 09-CV-599, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009) (citation omitted). Similarly, although WDBA is not a named defendant in the Canadian Litigation, WDBA is a Canadian Crown corporation, which is wholly-owned by Canada. *See* Mot. to Dismiss at 9. Thus, with respect to the claims advanced against Canada in Counts Two and Three of the Third Amended Complaint and in the Canadian Litigation, the parties are more than substantially similar even though not all names are repeated.

Likewise, this Court concludes that the issues in the two cases are substantially similar. DIBC admits that it is making the same "exclusive franchise" claim in the Canadian Litigation. *See* Opp'n at 117. Having reviewed the Amended Statement of Claim, the Court rejects DIBC's argument that the Canadian Litigation does not address its claim that "Canada's effort to build the NITC/DRIC is infringing the Plaintiffs' right to maintain its franchise by

building its Twin Span." Opp'n at 117. This claim is presented to the Canadian court insofar as Plaintiffs seeks the following relief:

> A declaration that the construction of a new bridge in the vicinity of the Ambassador Bridge, of which the Canadian Government is a proponent, is an unlawful breach of the rights granted to CTC pursuant to the CTC Act and a breach of the terms of the Special Agreement and Implied agreement;
>
> A declaration that CTC has the right and/or duty under the CTC Act, the Special Agreement and the Implied Agreement to maintain an international border crossing in the vicinity of the Ambassador Bridge for the public benefit, including a right and/or duty to construct and maintain a second span to the existing Ambassador Bridge;
>
> A declaration that steps taken by the Canadian Government to prevent or hinder CTC from building a Second Span constitute a breach of the rights granted to CTC pursuant to the CTC Act, the Special Agreement and the Implied Agreement.

*See* Am. St. of Claim at 4-5.

Plaintiffs do not dispute that Canada is an adequate forum to adjudicate claims involving issues of Canadian law. Indeed, "if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence." *See Brinco Mining LTD. V. Federal Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982) (citing *Fleeger v. Clarkson co. Ltd.*, 86 F.R.D. 388, 392-93 (N.D. Texas 1980)). DIBC's concern that it will be prejudiced by an indefinite delay is too speculative in these circumstances to affect the analysis. DIBC does not dispute Canada's assertion that the Canadian lawsuit "is actively being litigated." Mot. to Dismiss at 13. DIBC can continue to prosecute its claims against Canada under Canadian law in Canada and, if it prevails, can petition a U.S. court to give full effect to that foreign judgment. *See LG Display Co. Ltd.*, 919 F. Supp. 2d at 28. DIBC's argument against a stay resolves to a claim that no remedy is available to it unless both the U.S. and Canada are in the same suit since its bridge

7

touches both shores.  The Court disagrees.  If this Court finds for DIBC on its pending claims against the United States, it has full authority to order the United States and/or other United States defendants to withdraw and to cease and desist from any and all activities in furtherance of the NITC/DRIC.[4]  *See Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief.").

The Court agrees with Canada that it "has a paramount interest in adjudicating this dispute concerning matters of legal and practical significance to the nation of Canada and involving interpretation of Canadian law, in Canada."  Mot. to Dismiss at 23.  The Court concludes that DIBC's complaint to obtain declaratory judgments on its exclusive franchise rights to a bridge between Detroit and Windsor *under Canadian law* is better suited to decision by Canadian courts.  Principles of international comity weigh heavily in favor of a stay particularly since DIBC seeks a decision in a U.S. court of its rights under Canadian law.  *See Royal & Sun Alliance Ins. Co. of Canada*, 466 F.3d at 94.  Moreover, a decision by this Court on Plaintiffs' claims would risk inconsistent judgments between friendly nations on a question of foreign law.  Therefore, even though DIBC first filed in this Court, the Court finds that the exceptional circumstances in this case dictate a stay.

### IV.   CONCLUSION

For the foregoing reasons, the Court exercises its discretionary authority to stay this case as between DIBC and Canada pending a decision in the Canadian Litigation.  The parties will be directed to file a joint status report on the Canadian Litigation no later than March

---

[4] In its Prayer for Relief, DIBC requests "injunctive relief necessary to prevent defendants from taking any action that infringes upon plaintiffs' exclusive statutory and contractual franchise rights under their Special Agreement." 3rd Am. Compl. at 116.

2, 2015 and to file joint status reports at six-month intervals thereafter.  A memorializing Order accompanies this Memorandum Opinion.


Date: January 14, 2015                                         /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge