UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DETROIT INTERNATIONAL BRIDGE COMPANY, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-476 (RMC) |
| GOVERNMENT OF CANADA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

Before the Court is Plaintiffs' Request for a Rule 54(b) Judgment on the Dismissal of Count IV of the Third Amended Complaint. *See* Notification [Dkt. 194]. Plaintiffs request entry of final judgment on Count IV, which the Court dismissed and with respect to which the Court denied Plaintiffs' motion for reconsideration. Federal Defendants oppose the motion, arguing that such an action would add procedural uncertainty to this complex litigation. For the reasons stated below, the Court "expressly determines that there is no just reason for delay," Fed. R. Civ. P. 54(b), and will grant Plaintiffs' motion.

I.  BACKGROUND

This case concerns the Ambassador Bridge, which spans the Detroit River between Detroit, Michigan and Windsor, Ontario and carries more than one-quarter of the total commercial traffic between the United States and Canada. The Bridge is privately owned by the Detroit International Bridge Company (DIBC) and its wholly-owned subsidiary, the Canadian Transit Company, which collect toll revenue for Bridge maintenance and profit. However, the Ambassador Bridge is more than eighty years old. Its owners want to use private money to construct a Twin Span immediately adjacent to the existing Bridge to service customers while

1

maintenance work is performed on the Ambassador Bridge. However, a cross-border partnership of government entities has proposed the construction of a new publicly-owned bridge, the NITC/DRIC,[1] which would compete with the Ambassador Bridge and possibly destroy the financial basis for the Twin Span.

In its campaign to build a Twin Span, DIBC has sued in the United States and in Canada. The Court refers the reader to its earlier opinions[2] and will not belabor this case's history here. As relevant to this Order, the Court granted the Motion to Dismiss Count IV,[3] Dkt. 92, entered judgment in favor of the United States Coast Guard on Count IV of the Third Amended Complaint, and denied Plaintiffs' Cross-Motion for Summary Judgment on Count IV, Dkt. 96. *See* Op. [Dkt. 162]; Order [Dkt. 163]. The Court denied Plaintiffs' motion for reconsideration. *See* Order [Dkt. 193]. Plaintiffs now move for an order entering final judgment on Count IV under Rule 54(b).[4]

---

[1] NITC/DRIC (pronounced Nit-sy Drick) stands for New International Trade Crossing/Detroit River International Crossing, which are the names given by Canada and Michigan for the proposed public bridge.

[2] Opinion dated 5/13/11 [Dkt. 43]; Opinion dated 12/1/11 [Dkt. 55]; Opinion dated 5/30/14 [Dkt. 162]; Order dated 12/17/14 [Dkt. 193].

[3] Count IV alleges that the United States Coast Guard was arbitrary and capricious and violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06, in delaying and failing to issue a navigational permit for the Twin Span. *See* Third Am. Compl. ¶¶ 325–31.

[4] The Third Amended Complaint asserts nine counts. *See* Third Am. Compl. [Dkt. 105] ¶¶ 289-373. The case as to Defendants Her Majesty the Queen in Right of Canada and the Windsor-Detroit Bridge Authority has been stayed, pending a final decision in *CTC v. Attorney General of Canada*, Court File No. CV-12-446428, a related suit filed in the Ontario Superior Court of Justice, and any appeals. *See* Op. [Dkt. 197]; Order [Dkt. 198].

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief," the district court "may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Absent an express determination that the District Court has entered final judgment because there is no reason for delay, the Court of Appeals lacks jurisdiction to review an Order the decides fewer than all the claims for relief. *Blackman v. District of Columbia*, 456 F.3d 167, 175-76 (D.C. 2006). "The purpose of Rule 54(b) is to 'mediate between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice.'" *Chaplaincy of Full Gospel Churches v. England*, 221 F.R.D. 255, 257-58 (D.D.C. 2004) (internal alterations omitted) (quoting *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 760 (D.C. Cir. 1997). Whether an order qualifies for Rule 54(b) final judgment is a decision made in the discretion of the district court, which is "most likely to be familiar with the case and with any justifiable reasons for delay," *Bldg. Indus. Ass'n of Superior Calif. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998); *see also Petties v. District of Columbia*, 227 F.3d 469, 472 (D.C. Cir. 2000) ("[T]he district court functions as a dispatcher, determining in its sound discretion when a claim should proceed on to appellate resolution and when it should await its fellows." (internal alterations and quotations omitted)).

A district court must follow certain steps in making this determination. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). "A district court must first determine that it is dealing with a 'final judgment,'" *id.*, that is, "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Sears*, 351 U.S. at 436. Next, the district court must decide

"whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. The Supreme Court notes that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id*. In exercising its discretion, "a district court must take into account judicial administrative interests as well as the equities involved" and should consider whether it is likely an "appellate court would have to decide the same issues more than once." *Id*.

The D.C. Circuit has directed the district courts to "supply a statement of reasons" when ruling on a motion under Rule 54(b). *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). Absent such a statement, the appellate court may be "uncertain whether the district judge exercised its discretion soundly, or indeed whether it exercised its discretion at all." *Id*.; *see also Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d at 745 ("As we cannot on the record before us determine that the district court [properly exercised its discretion], we conclude that the Rule 54(b) certification before us is not proper.").

### III. ANALYSIS

Plaintiffs argue that entry of a Rule 54(b) order is appropriate here because delaying their ability to appeal Count IV delays "Plaintiffs' ability to compete in the 'race' to proceed with their Twin Span before the government sponsors of the NITC/DRIC proceed with their proposed bridge, the construction of which will usurp Plaintiffs' right (and ability) to build their Twin Span." Pl. Reply [Dkt. 199] at 3. Moreover, Plaintiffs maintain that Count IV is separable from the remaining claims and issues. Federal Defendants contend that the remaining claims are "based on the same facts and related legal issues [which] will likely be appealed later." According to Federal Defendants, this presents "a risk of inconsistent findings and holdings" if the Court permits an immediate appeal of Count IV. Opp'n [Dkt. 196] at 2, 4.

4

1. Finality

The Court expressly finds that its decision on Count IV is a final judgment. The Court decided that the Coast Guard's refusal to issue a navigational permit to Plaintiffs for the Twin Span was not arbitrary and capricious, which was an "ultimate disposition of an individual claim." *Sears*, 351 U.S. at 436; *see* Order [Dkt. 163] (ordering that "judgment is entered in favor of the Federal Defendants on Count IV"). On December 17, 2014 the Court denied Plaintiffs' motion for reconsideration. Order [Dkt. 193]. This Court will take no further action on Count IV.

2. No Just Reason For Delay

While all of Plaintiffs' claims center on Plaintiffs' stymied efforts to build their Twin Span before the government-sponsored NITC/DRIC, Count IV bears minimal legal and factual similarity to the remaining claims. *See Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 44, 47 n.1 (2008) (granting order for Rule 54(b) judgment because claims were "factually and legally distinct," but stating that "[n]ot surprisingly, there is some relationship" between the claims). Appellate efficiency will not be frustrated by the entry of final judgment on Count IV because Count IV is separable from the remaining claims. Count IV alleges that the United States Coast Guard was arbitrary and capricious and violated the Administrative Procedure Act, 5 U.S.C. §§ 701-06, in delaying and failing to issue a navigational permit for the Twin Span. *See* Third Am. Compl. ¶¶ 325–31. Specifically, Count IV challenges whether the 1906 Bridge Act, 33 U.S.C. § 491-98, and its regulations authorized the Coast Guard to refuse to amend Plaintiffs' navigation permit to cover the Twin Span on the basis that Plaintiffs must first acquire an air rights easement from the City of Detroit because the Twin Span would pass above Detroit-owned land intended sometime to become Riverside Park. Plaintiffs' remaining claims challenge the

actions of other Federal Defendants (not the Coast Guard) in seeking approval for and constructing the NITC/DRIC in alleged violation of Plaintiffs' franchise rights (Counts II and III) and as otherwise being unlawful, ultra vires, and unconstitutional (Counts I, V-IX). Appellate review of the statutes and Coast Guard regulatory requirements that underpin the navigation permit process will not be duplicated upon subsequent appeals of any or all of the remaining claims.

Count IV was decided first by this Court because it is first on the critical path to determining Plaintiffs' rights and opportunities to construct a Twin Span. The Coast Guard's interpretation and application of its regulation are, at a minimum, matters on which reasonable minds might differ. And, should the Circuit reverse and order the Coast Guard to issue a navigation permit for the Twin Span, Plaintiffs will have received all the government *approvals* necessary for its construction. At that point, the litigation against the other Federal Defendants may become unnecessary.[5]

The Court is also persuaded that the equities weigh in favor of granting Plaintiff's motion for an immediate appeal. Conspicuously, Federal Defendants proffer no harm. In sharp contrast, Plaintiffs have been trying to obtain a navigation permit for over ten years. Their inability to obtain the requisite navigation permit from the Coast Guard has significantly delayed the Twin Span. Plaintiffs anticipate that Detroit will be more likely to accept their $5 million offer to acquire an air rights easement once they obtain a navigation permit. In addition, the Coast Guard promptly issued a navigation permit for the NITC/DRIC creating a "tenuous financial position [for Plaintiffs] because of the proposed construction of the NITC/DRIC bridge." Op. [Dkt. 162] at 24. Plaintiffs have expended significant resources over a long period

---

[5] Whether the City of Detroit will then sell air rights over a corner of Riverside Park to Plaintiffs is a matter between Plaintiffs and Detroit, not the Coast Guard or the other Federal Defendants.

of time to protect their interests in the Ambassador Bridge and to build a Twin Span. "Justice to the litigants" weighs squarely in their favor. *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 806 (D.C. Cir. 2010) (quoting *Curtiss-Wright*, 446 U.S. at 6).

Further, Plaintiffs' allegations against the remaining Federal Defendants are not as straight-forward as either side believes. Plaintiffs and Federal Defendants have fully briefed motions that would dispose of various counts of the Third Amended Complaint. Having fully considered whether it would be more appropriate to decide those motions and send the entire case to the Circuit at once, this Court concludes it cannot be done. Discovery may be needed concerning various actions by the federal actors, which discovery requests would raise, in turn, serious collateral matters that could warrant immediate review. Sound discretion suggests that immediate review of Count IV, which will resolve critical and independent aspects of this suit, is fully warranted.

For all these reasons, the Court "expressly determines that there is no just reason for delay," Fed. R. Civ. P. 54(b), and it will grant Plaintiffs' motion for entry of final judgment on Count IV of the Third Amended Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for an order under Rule 54(b) will be granted. A separate order accompanies this memorandum opinion.

Date: February 13, 2015

          /s/
ROSEMARY M. COLLYER
United States District Judge