```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


DETROIT INTERNATIONAL       :
BRIDGE COMPANY,             :        Docket No. CA 10-476
                            :
            Plaintiff,      :           Washington, D.C.
                            :         Friday, May 22, 2015
                            :             10:22 a.m.
GOVERNMENT OF CANADA, ET AL :
                            :
            Defendants.     :
---------------------------x



                 TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE ROSEMARY M. COLLYER
                 UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:       HAMIS P.M. HUME, Esquire
                         JAMES A. KRAEHENBUEHL, Esquire
                         Boies, Schiller & Flexner LLP
                         5301 Wisconsin Avenue, NW
                         Washington, DC  20015

                         PATRICK A. MORAN, Esquire
                         CenTra, Inc.
                         12225 Stephens Road
                         Warren, MI  48089


                         ROBERT A. SEDLER, Esquire
                         Wayne State University
                         Law School
                         471 West Palmer Street
                         Detroit, MI  48202
```

Appearances continued:

For the Defendants:      BRIAN M. COLLINS, Esquire
                         DAVENÉ WALKER, Esquire
                         U.S. Department of Justice
                         ENRD
                         P.O. BOX  7611
                         Washington, DC  20044


Interested Party:        MICHAEL JAMES DITTENBER, Esquire
                         Michigan Attorney General's Office
                         425 W. Ottawa Street
                         Van Wagoner Bldg., 4th Floor
                         Lansing, MI  48913


Court Reporter:          CRYSTAL M. PILGRIM, RPR, FCRR
                         Official Court Reporter
                         United States District Court
                         District of Columbia
                         333 Constitution Avenue, NW
                         Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

```
1                    P-R-O-C-E-E-D-I-N-G-S

2            THE DEPUTY CLERK:  Civil Action 10-476, Detroit

3    International Bridge Company versus Government of Canada, et

4    al.

5        For the plaintiff, Hamish Hume, Patrick Moran and Bob

6    Sedler.  For the defense, Brian Collins and Davené Walker.  For

7    the interested party, Mike Dittenber via the telephone.

8            THE COURT:  Mr. Dittenber, can you hear me?

9            MR. DITTENBER:  Yes, I can, Your Honor.  And once

10   again I appreciate the courtesy of appearing by telephone.

11           THE COURT:  Well, okay.  My courtroom deputy has to

12   leave partway through the hearing.  If she does, then we hope

13   we don't lose you.

14           MR. DITTENBER:  Okay.

15           THE COURT:  But she's the only one who knows how to

16   operate that equipment.  And so if she goes and it goes, you'll

17   understand it's just because you've got a judge who's on the

18   bench instead of down there knowing how to operate the

19   equipment; right?

20           MR. DITTENBER:  Certainly.

21           THE COURT:  Good, okay.  We can hang up on him now,

22   Shawnie.

23       Sorry, I didn't mean that, Mr. Dittenber.  I was just

24   making a joke.

25       Good morning, everybody.
```

1            ATTORNEYS IN UNISON:  Good morning.

2            THE COURT:  I have to say, of course, it's wonderful

3   to see you all again.  I thought I had carefully scooted you

4   off to the D.C. Circuit, and lo and behold, here you are again.

5       I understand, Mr. Hume, that you had information to bring

6   me up to date.

7            MR. HUME:  Yes, Your Honor, thank you.

8       This is Hamish Hume appearing for the plaintiffs from

9   Boies Schiller.  Good morning, Your Honor.

10           THE COURT:  You look like you're thinner.

11           MR. HUME:  It's funny you say that.  I've been

12  training for a bike race, and I've lost some weight, and then I

13  hurt my back so I'm putting it all back on.

14           THE COURT:  So you're not doing the bike race?

15           MR. HUME:  What's that?

16           THE COURT:  You're not doing the bike race?

17           MR. HUME:  That's still undecided.

18           THE COURT:  Well, my regrets to your wife who has to

19  live with an amateur athlete who's dying because he's too old

20  to do what he used to do.

21           MR. HUME:  That's only one of the reasons you should

22  give your regrets to my wife, Your Honor.  There are many

23  others.

24       Your Honor, there is news to report, and we're grateful

25  to have a chance to be here with good news.  The Detroit Bridge

1   Company has entered into a contract with the City of Detroit to

2   swap land and invest money in order to eliminate the so called

3   air rights easement issue that the Coast Guard relied on as a

4   reason for not issuing the navigation permit.

5           THE COURT:  So have you gone back to the Coast Guard?

6           MR. HUME:  Yes, we went.  Unfortunately, the

7   agreement was not available for us to share with the Coast

8   Guard until yesterday.  But we did send it immediately over to

9   the Department of Justice who I believe shared it with the

10  Coast Guard.  We're eager to hear their reactions to it.

11          THE COURT:  And I would urge all parties on the other

12  side to understand that that was the only issue that held this

13  up.  And it's going to be very difficult for anybody at the

14  Coast Guard or elsewhere to now raise a new issue.  Okay.

15          MR. COLLINS:  Understood, Your Honor.

16          THE COURT:  I just wanted to make sure the record was

17  clear on that having spent years on this issue.  I'm happy to

18  be done with it.

19          MR. HUME:  Well, we are too, Your Honor.  And it was

20  not --

21          THE COURT:  Congratulations.

22          MR. HUME:  It was not easy to do.

23      It may be helpful to the Court and to the Coast Guard to

24  hear just three minutes about the structure of the deal.

25          THE COURT:  Feel free.

1          MR. HUME:  We'd like to hand up the contract.

2          THE COURT:  Do I need to know it?  I'm happy to take

3  it, but I don't know that I need to know it, but if you want to

4  describe it for the record and for the Government and give them

5  a copy, I'm happy to have you do that.

6          MR. HUME:  The last time we were here, the second to

7  last time, Mr. Moroun was on the stand, and I think you

8  encouraged him rather than spend all these resources on lawyers

9  to try to get this deal done.

10          THE COURT:  I did, and then he's still paying for

11  lawyers.  Well, Mr. Moroun, I'm really sorry for you, sir, but

12  congratulations on reaching this other deal.

13          MR. HUME:  He did divert some resources to other

14  means, and he worked very, very hard with the City of Detroit.

15      And again, with the Court's indulgence, maybe just two

16  minutes  because he could explain, we have a map.

17          THE COURT:  That's fine, that's absolutely fine.

18  Does he want him to get on the stand?

19          MR. HUME:  No, I think he can do it from right here

20  if that's okay with the Court because there's a map that you

21  can --

22          THE COURT:  That would be fine.  Does the Government

23  need him to be under oath?

24          MR. COLLINS:  No, Your Honor, I mean, as long as it's

25  understood that we're not -- as far as --

1          THE COURT:  It's a presentation of a settlement or an

2     agreement that's already been reached, which is actually

3     gratefully known about, but not immediately relevant to this

4     issue except that it might resolve it.

5          MR. COLLINS:  And we would appreciate the opportunity

6     to be heard on that, some issues surrounding the agreement that

7     we've identified at the outset.

8          THE COURT:  That's fine.  Why don't you proceed.

9     Mr. Hume.

10         MR. HUME:  Thank you very much, Your Honor.  This is

11    Mr. Moroun for the record, the head of the Detroit

12    International Bridge Company.

13         THE COURT:  Yes, sir.

14         MR. MOROUN:  Thank you.  So the map here is -- the

15    location is immediately west of the existing Ambassador Bridge.

16    The grayed out area furthest to the left where it says 4.8

17    acres is property that we acquired sometime ago and we're going

18    to deed that as part of the agreement to the City of Detroit.

19         In exchange, the City of Detroit will then transfer to

20    us after that the 2.1 acres in the blue on the other side of

21    the map and the .9 acres.

22         THE COURT:  Right.

23         MR. MOROUN:  Immediately below it.  After we get that

24    property, we will then give the City of Detroit an easement so

25    that they can still maintain the park as it relates to the

1  river frontage there, and you can see the little trees down by

2  the water.

3          THE COURT:  Yes.

4          MR. MOROUN:  That's the property that we need for

5  the -- for the bridge.

6          THE COURT:  And the .9 acres, is that for the

7  abutments and the 2.3 for the exit ramps and stuff?

8          MR. MOROUN:  Exactly.  So the big tower for the new

9  bridge would be somewhere in the .9 acres area, and then the

10  bridge would be, would extend beyond that, but would be like

11  50, 60, 70 feet above the ground.

12          THE COURT:  Right.

13          MR. MOROUN:  As it traversed back.

14          THE COURT:  Right.  Sort of like the Brooklyn Bridge

15  coming in.

16          MR. MOROUN:  Yes.  And part of the purpose of the

17  agreement is that the park is our nextdoor neighbor.  And

18  rather than have a fight or tension with the park, the

19  agreement, the purpose of the agreement is to have a great park

20  next to a great bridge.

21          THE COURT:  And so has the bridge company agreed

22  to -- and this is a question.

23          MR. MOROUN:  Yes.

24          THE COURT:  This has nothing to do -- it's just a

25  question of fact.

 1          MR. MOROUN:  Yes.

 2          THE COURT:  Does the bridge -- has the bridge company

 3   agreed to contribute any monies to the City of Detroit for

 4   purposes of developing the park?

 5          MR. MOROUN:  Yes, as a matter of fact, as soon the

 6   City of Detroit city council approves the agreement that was

 7   negotiated and signed by the mayor, which we are in the process

 8   of doing, they're doing their due diligence on it right now,

 9   and it's before the city council, but hopefully, that goes

10   according to a pretty steady process.  They approve it, we will

11   be transferring $3 million to the city immediately upon their

12   approval, and then another $2 million after they transfer the

13   remaining, the property to us.

14          THE COURT:  Okay.

15          MR. MOROUN:  Additionally, because this was park

16   land, the City of Detroit has urged us, and we've agreed to

17   jointly approach the park regulators, for lack of a better

18   description, to make sure that they're okay with the transfer.

19   The city has already agreed that the property that they're

20   getting greatly exceeds the park value of the property that

21   we're receiving.  And once that's done, then we'll transfer

22   another $2 million to the city as well.  So they're going to

23   get 5 million in total.

24          And more importantly than all of that, the agreement

25   ends an acrimonious chapter between our company and our family

1  and the city and hopefully allows us to move forward in a

2  positive, positive -- which is, I found that to be more

3  important than I first thought at the beginning.

4         THE COURT:  Right, and that turns out to be quite

5  valuable.

6         MR. MOROUN:  It is.

7         THE COURT:  In its own way.

8         MR. MOROUN:  So that's the gist of it, Your Honor.

9         THE COURT:  Well, if the City of Detroit is happy,

10  goodness knows, I'm happy.

11         MR. MOROUN:  Very good.

12         THE COURT:  The question is, the -- is the Coast

13  Guard ready to move forward because what is the schedule for

14  the Detroit city council meeting?

15         MR. MOROUN:  Okay, so currently the agreement is

16  before two city council committees.  Both city councils had --

17  both city council committees had hearings yesterday, I attended

18  them both.  They have a lot of questions.  They've asked for a

19  lot of documentation and written responses, and they've elected

20  to have another deliberation, I believe June 4th.  Hopefully,

21  sometime after that the city council committees pass the

22  agreement out of committees, it goes before the full council.

23  They may or may not have more deliberations, and then hopefully

24  it will be approved.

25         THE COURT:  And the mayor is behind it?

1          MR. MOROUN:  Yes, he is.

2          THE COURT:  Okay.  Good job.

3          MR. MOROUN:  Thank you.

4          THE COURT:  Thank you, sir.

5      Did you wish -- I'm sorry, Mr. Hume, you had nothing,

6  okay.

7      Did you wish to add anything on behalf of the

8  Government, Mr. Collins, concerning the agreement that is

9  pending between Detroit and the bridge company?

10          MR. COLLINS:  I would, Your Honor.

11          THE COURT:  Don't forget that Mr. Dittenber is on the

12  phone and can't hear you from where you, you so you must

13  absolutely come to the microphone or it's as if he were not

14  here.

15          MR. COLLINS:  Understood, Your Honor.

16          THE COURT:  Can you hear him, Mr. Dittenber?

17          MR. DITTENBER:  Yes, I can, Your Honor.

18          THE COURT:  Okay, this is Mr. Collins for the

19  Government, forgive me, sir.

20          MR. COLLINS:  Good morning, Your Honor, thank you for

21  the opportunity to appear before you again.

22          THE COURT:  Good morning.

23          MR. COLLINS:  Just a couple of points with regard to

24  Your Honor's admonition to the Coast Guard about the process in

25  light of the agreement.

1        And, you know, I will say speaking, I think, for federal

2   defendants that we welcome the development, obviously.  This is

3   a positive step by any means, but I think it exemplifies an

4   acknowledgment that the property rights are an issue and that

5   we've moved beyond that.

6        THE COURT:  I found them to be an issue, that doesn't

7   matter.  The bridge does not have the to admit that fact.

8        MR. COLLINS:  Okay.

9        THE COURT:  They're on appeal.  You're on appeal.

10  They said, okay, let's go forward.

11       MR. COLLINS:  So the -- with regard to the process

12  from here on out, Your Honor, I think that this agreement

13  raises a couple of issues from the prospective of the Coast

14  Guard, who has not yet had a chance to sort of fully digest it,

15  but just sort of the initial issues that come up.

16       One, which Your Honor already hinted at, the city

17  council approval, the agreement is not effective until the city

18  council approves it, so that's --

19       THE COURT:  Even I know that.

20       MR. COLLINS:  Well, I'm just saying that's an issue

21  for sure.

22       The other one has to do with the deed restriction, the

23  Land and Water Conservation Act that we had addressed in prior

24  briefing.  The agreement acknowledges that there is the need

25  for further regulatory approvals of the transfer through --

1   under the Land and Water Conservation Act or I think there's

2   another Michigan statute referenced in the agreement.  So those

3   are other potential, I guess hiccups, if you will, in getting

4   this agreement fully executed.

5           THE COURT:  If the U.S. Coast Guard does not move

6   forward it will call into question all of the arguments that

7   have been made before me as to the basis for the Coast Guard's

8   failure to issue a permit in the past.

9           Now, Mr. Collins, this has gone on for years and years

10  and years.  And I just want you to know that the Coast Guard

11  has got to step up and take action.  Years and years and years.

12  The only issue that the Coast Guard won on was air rights.  If

13  the -- if the bridge company has solved the air rights problem,

14  the Coast Guard needs to sit down and issue a permit.  Whether

15  it meets Michigan law, that nothing -- Michigan can take care

16  of that.  That is not an issue here.

17          The Coast Guard told me what the problem was.  I ruled

18  on that problem after years of litigation.  I will not have the

19  Coast Guard now come up with something new to create another

20  problem.  If the bridge company needs to deal with the city or

21  the state, they need to deal with the city and the state.  The

22  U.S. Coast Guard, if it wants to -- I agree with you, the city

23  council has to approve it.  It's not a binding contract until

24  it's binding, you're absolutely correct.  And they're correct.

25  I agree with all of that.  I will not have the Coast Guard come

1   up and say, oh, but there's this little issue under state law.

2   I won't do that.

3        MR. COLLINS:  I may not have been as clear as I

4   wanted to be.  It's not just an issue of state law, Your Honor.

5   The Land and Water Conservation Act is an issue of federal law

6   that is --

7        THE COURT:  No, Land and Water Conservation Act has

8   nothing to do with air rights.  Has nothing to do with it, sir.

9   Nothing.  That's up to other people.  I won't let the Coast

10  Guard come up with excuses.  No more excuses.  I'm sorry, I've

11  been there, done that, around and around and around and around

12  and around and around.  For years.  This case has a number of,

13  what is it, I can't even see it.

14       MR. COLLINS:  2010 Your Honor.

15       THE COURT:  2010.  Well, 2010, oh, my goodness, it's

16  fairly new.  It isn't really.  Really.  Go back to the Coast

17  Guard and say, the Judge is very impatient with anything other

18  than city council approval, I agree.  The Judge is very

19  impatient.  Does not understand why the Coast Guard, having

20  gotten what it said it needed, cannot act now.  I'm not going

21  to be easily persuaded.  I just want to warn you.  The Coast

22  Guard gave me a reason.  I accepted that reason, the reason may

23  be satisfied.  If the city council agrees, that is it.

24       MR. COLLINS:  I will definitely let the Coast Guard

25  know, Your Honor.

1          THE COURT:  You should let them know.  Because I -- I

2   mean, I'm sick to death of the whole thing.  Sick to death of

3   the whole thing.  And it is time that the United States

4   Government stopped preventing this.  It's time.  Move forward.

5   I don't know if this bridge is ever going to get built.  It's

6   not my issue.  Tell the United States Government in the guise

7   of the Coast Guard right now.  I'm not talking to the rest of

8   your defendants.  Move forward.

9          MR. COLLINS:  Understood, Your Honor.

10          THE COURT:  Mr. Collins, you've done a great job.

11   You just happen to be the recipient of my message.

12          MR. COLLINS:  Well, I can appreciate that, Your

13   Honor.  And that's why they send us up here.  And the Court's

14   admonition is well taken.

15      I just would appreciate that these are the issues that

16   sort of initially jumped out.

17          THE COURT:  I'm not going to be interested in all

18   sorts of little tiny things that people suddenly find.  Oh, my

19   goodness, there are hairs of the legs of the spider.

20          MR. COLLINS:  Okay.

21          THE COURT:  Actually, we knew there were hairs on the

22   legs of the spider fifteen years ago.

23          MR. COLLINS:  Okay.

24          THE COURT:  They said this is the issue.  This issue,

25   if it's solved, is solved, move forward.

1          MR. COLLINS:  Understood, Your Honor.

2          THE COURT:  Thank you, sir.

3      Now, Mr. Hume, what else did you need to say?  Does this

4 mean that if the city council approves this agreement that -- I

5 don't know what you're going to do with the appeal.

6          MR. HUME:  We will --

7          THE COURT:  I mean, feel free to continue it, you

8 know, get me reversed, it's not my issue.

9          MR. HUME:  Unfortunately, the appeal will be

10 dismissed when we receive the permit from the Coast Guard.

11          THE COURT:  Okay, that's a fair price.

12          MR. HUME:  I think it's that clear for us.  And we

13 will wait eagerly for the Coast Guard's formal response.

14          THE COURT:  Well, you understand that the Coast Guard

15 is not going to be able to appeal -- to issue any permit until

16 the city council approves it.

17          MR. HUME:  Your Honor, I understand that's what they

18 said.  And I understand the Court's view on that, and we hope

19 that will be prompt, and we'll obviously keep everyone apprised

20 of that city council approval.

21          THE COURT:  I certainly hope it will be prompt, but

22 it's politics.

23          MR. HUME:  That's right.

24      Your Honor, we were hopeful also at this status

25 conference, in addition to reporting on this good news, to

1   address the other -- some of the other pending items in the

2   case, if the Court were willing to let us do so.  We in

3   particular wanted to discuss first the status of the

4   Government's Motions to Dismiss.  And the potential for the

5   denial of those motions and for discovery.

6        And secondly, we wanted to address a -- our

7   Cross-Motions for Summary Judgment on two specific issues that

8   we think are pure issues of law and that potentially could moot

9   out the rest of the case, potentially, or at least could cause

10  a stay of the rest of the case.  If I could --

11           THE COURT:  Why don't you go to the last point first.

12           MR. HUME:  Certainly, Your Honor.

13       The Court has had pending before it our Cross-Motion for

14  Summary Judgment on our claims that the State Department's

15  approval of the NITC/DRIC Bridge; NITC/DRIC, N-I-T-C/D-R-I-C,

16  our famous acronym.  We have challenged those approvals under

17  the International Bridge Act as illegal.  The State Department

18  issued two approvals under the International Bridge Act for the

19  NITC/DRIC Bridge.

20       First, under Section 3 of the International Bridge Act,

21  the State Department approved the crossing agreement

22  purportedly entered into by the Governor of Michigan and MDOT,

23  Michigan Department of Transportation, and Michigan Strategic

24  Fund with the Government of Canada.  That's the first approval.

25       The second approval under Section 4 of the IBA was an

1  issuance of a so-called Presidential Permit that actually comes

2  from the State Department pursuant to Section 4 of the IBA.  We

3  have challenged both approvals as being contrary to law and

4  unlawful.

5          We think those challenges could be decided as a matter

6  of law, and if we prevailed, which we think we should, it would

7  send the NITC/DRIC effort back to square one because it would

8  show that they need legislative approval from --

9              THE COURT:  Oh, I follow all of the rest of the --

10             MR. HUME:  -- Michigan, and they would need to go

11 back to the State Department.  And if that happened, we don't

12 know how they would react, and if we then start building the

13 Twin Span, which we, of course, intend to do just as soon as we

14 have this Coast Guard permit, it could moot the case because

15 that could be the end of the NITC/DRIC, or they could go very

16 slowly and we could stay the rest of our claims.

17             THE COURT:  Okay.  Well, let me respond because your

18 question is the cross-motions are fully ripe and have been for

19 some time; correct?

20             MR. HUME:  That is true, Your Honor, although if you

21 would allow me, we would very much like to spend two minutes

22 speaking with you about the possibility for a supplemental

23 brief on those specific legal issues on the State Department

24 approvals.

25             We have a binder full of briefs, the Court has.  There

1  was an enormous amount of briefing done on all of the

2  Government's and Canada's Motions to Dismiss and Michigan's

3  arguments and our responses, and there was a lot of briefing.

4          THE COURT:  Yes, there was a lot of briefing.

5          MR. HUME:  There was a lot of briefing.  Within that

6  briefing there was some space devoted to these two offensive

7  arguments for why these State Department approvals were

8  contrary to law.  Having reflected on it and reviewed it, we

9  believe it would be in the Court's interest and in our interest

10 and in both party's interest to have very limited supplemental

11 briefing to elaborate upon one or two points.

12         Specifically, the State Department's approval under the

13 IBA of the crossing agreement is unlawful, we contend.  First

14 and foremost because the crossing agreement was executed in

15 violation of Michigan law.  The Michigan legislature expressly

16 prohibited the two state agencies, MDOT and MSF, from executing

17 any agreement binding the state on the NITC/DRIC.

18         And the Governor, under established Michigan Supreme Court

19 precedent, has no constitutional authority to enter into

20 agreement with the foreign sovereign without legislative

21 approval, and here he had no legislative approval, instead he

22 had prohibitions.

23         So you have what -- what you have, Your Honor, is an

24 illegal agreement under state law being approved by a federal

25 agency.  We are here to ask this Court to rule on the federal

1   question of whether the State Department had federal legal

2   authority to approve that illegal agreement under state law.

3   And we've argued that they clearly do not.

4       The argument we made in part was that the International

5   Bridge Act, which purports to give authority to the State

6   Department to approve that agreement says that there has to be

7   an agreement.  It only authorizes the State Department to

8   approve an agreement, the word "agreement" is in the plain

9   text.  And we say if it's illegal and void, it's not really an

10  agreement.

11      We would also like to make clear to the Court the

12  corollary to that argument, which we did not fully elaborate on

13  in our prior briefs, that's also not the actions of the state.

14  The State Department only has authority under the International

15  Bridge Act, Section 3, to approve an agreement entered into by

16  a state or an instrumentality or subdivision of a state.  A

17  state officer acting in violation of state law cannot satisfy

18  the plain text definition of the word "state" or

19  instrumentality or subdivision thereof.

20      So our contention is the State Department did not have

21  authority under the International Bridge Act to approve this

22  unlawful agreement.

23      Some of what I've just said is in our briefs.  Some of

24  it is not as fully developed in our briefs as we would like.

25      In addition, we have one sentence in our briefs saying

1  that the State Department and other agencies and MDOT all

2  admitted in writing that before they could get approvals from

3  the State Department under the International Bridge Act they

4  had to get Michigan legislative approval.  We say that in one

5  sentence in our huge brief.  We would like to present to the

6  Court the blocked quotes and documents, the five documents

7  where that is explicitly admitted in writing.

8          So that's -- I'm trying to give the Court a flavor of

9  why we want a supplemental brief.  There are very important

10 points that are frankly buried within this mass of briefing.

11         There is a third point which is that in addition to

12 violating the plain text of the International Bridge agreement,

13 the State Department's approval is inconsistent with the

14 constitutional provision in Article 1, Section 3, Clause 10,

15 which limits the ability of states to enter into agreements

16 with foreign countries.

17         THE COURT:  Nobody should be able to do that off the

18 top of their heads.  Did you look down at your notes to come up

19 with --

20         MR. HUME:  Professor Sedler will tell me if I have

21 the citation correct.

22         THE COURT:  -- Article 1, Section 3?

23         MR. SEDLER:  Section 10, Clause 3.

24         MR. HUME:  Section 10, Clause 3.  Section 10, Clause

25 3.

1              THE COURT:  See, see, see.

2              MR. HUME:  There are some lawyers who have been very

3  successful with a mild tendency to dyslexia.

4              THE COURT:  Thank you.  Yes, we know those few.

5              MR. HUME:  We know a few who have done very well with

6  that, so I flipped the two.

7              THE COURT:  I don't know about mild.

8              MR. HUME:  Maybe not mild.

9              THE COURT:  But okay, keep going.

10             MR. HUME:  But that constitutional provision

11 similarly is limited to actions by a states entering into

12 agreements.  And so for all the same reasons the State

13 Department had no authority under the IBA.

14             THE COURT:  So what you want me to do -- oh, dear.

15 What you want to do is re-brief the question of the

16 Cross-Motions for Summary Judgment so that you can focus, I

17 don't want to expand.  Let's say focus your arguments on the

18 points that really matter for the state approval, the

19 International Bridge Act, the contrary to law arguments, so

20 that it could be teed up for the possibility of a decision

21 before we turn around and get to the much more complicated and

22 difficult and all of that questions of the Motion to Dismiss

23 filed by the Government.

24             MR. HUME:  I think that's exactly right, Your Honor.

25 That's said more elegantly.  It is to focus the Court on what

1   we think is both most important and could most efficiently

2   potentially dispose of the case.

3             THE COURT:  Okay, okay.

4        Mr. Collins let me see what your thought is, if I set a

5   schedule that would fit everybody's life since I presently have

6   some really great cases in front of me, all of which need to be

7   decided and they're all raking my brain.  I'm just having the

8   greatest time as a judge, but they're really hard.

9        So, I won't have you submitting a brief in the next ten

10  days, I promise, sir.  Not with any disrespect to anybody at

11  the bridge company, there's no point in rushing the lawyers if

12  I'm not going to be able to read what your curly words are.

13            MR. COLLINS:  Okay.

14            THE COURT:  What is your response on the merits as

15  opposed to the schedule?

16            MR. COLLINS:  On the merits, Your Honor, well, I

17  think plaintiffs are putting the cart before the horse.  Not

18  with respect to the schedule briefing, but with respect to

19  getting to summary judgment on issues that we believe are fully

20  disposed of on our Motion to Dismiss, you know, we have the

21  arguments that this is unreviewable presidential action, so

22  it's not even subject to APA review in the first place.

23       And all of the arguments that we made in our Motion to

24  Dismiss, certainly, I think, are predicates to resolving the

25  Motion for Summary Judgment.

1        And then in addition to that, the Motion for Summary

2   Judgment, again, it's on -- these are two APA claims.  There is

3   no administrative record before the Court in order to be able

4   to resolve the motion.  The critical issue here is was the

5   State Department's action arbitrary and capricious under the

6   APA.  I don't see how the Court can determine that without

7   seeing the documents and the record that the State Department

8   looked at and made their determination on.

9        So those issues are important, and I think it's most

10  important to resolve the Motion to Dismiss issues.  If those

11  are not resolved in our favor, then perhaps we move forward to

12  summary judgment on those claims then.  But to sit here and

13  fully brief the Motion for Summary Judgment on an APA claim

14  before we even have the record, and when you have pending

15  Motions to Dismiss, completely upends the process in our view

16  of how to resolve this case expeditiously.

17        THE COURT:  Well, and, of course, your points are

18  well taken, so I can't -- I can't say that everything you say

19  hasn't been cogent and quite intelligent.

20        Let me ask you this question:  If the issues in the

21  Motion for Summary Judgment are legal, that is, accepting

22  everything as a matter of fact that is stated by the State

23  Department or whatever, the city, the state of Michigan and all

24  of that.  Nonetheless, without -- I mean, what this really

25  focuses on is what went on in Michigan and whether or not the

1    Governor of Michigan and the Michigan Department of

2    Transportation acted lawfully under Michigan law when they

3    submitted the crossing agreement they had signed with Canada to

4    the State Department.

5          So now if that argument as to what Michigan law is and

6    the facts as to what happened in Michigan are not subject to

7    dispute, if those things are clear, then why couldn't we not

8    decide right or wrong.  And I don't know what the answer is,

9    right or wrong decide whether or not the State Department could

10   properly approve the crossing agreement under those

11   circumstances.

12         MR. COLLINS:  Well, because I believe there's a

13   dispute as to the facts.  I don't believe -- the State

14   Department did not believe it was an illegal agreement at the

15   time they made the decision.  And I haven't seen the

16   administrative record, but that's where the Court would look to

17   see, well, based on the information that they have, did they

18   make a reasonable decision to approve the agreement?  Was there

19   enough information in the record to support a determination

20   that the, that that -- that this Michigan law issue was

21   resolved sufficiently to support the State Department's

22   decision?

23         And so the State Department, I think vigorously disputes

24   that this was an illegal agreement, that it's not an action of

25   the state of Michigan for a number of reasons, some of which

1  are highlighted in our briefs in the response to Motion for

2  Summary Judgment.  But to get to that issue we think you first

3  have to get through our Motion to Dismiss, and then we have to

4  talk about, well, how do we get the Court the proper

5  information to make that APA determination.

6        THE COURT:  Okay.  Mr. Hume.  Thank you, sir.

7        Mr. Hume, Mr. Collins is right that on an APA review one

8  usually needs a record.  So just having the bridge re-brief the

9  points, expand, focus, whatever you want to say, may be easily

10  defeated by the response that, well, we don't even have a

11  record, how can we say whether the State Department's decision

12  was based on legitimate information or not.  Wouldn't I need an

13  administrative record to support whatever it is the State

14  Department thinks it -- one never knows what the State

15  Department thinks these days as to what constitutes a record.

16  Forgive me.  This is just a little inside Washington joke, but

17  you get it.  You get it, don't you?  You understand me, ma'am.

18        One never knows what the State Department thinks is a

19  record today, but okay, let's assume that they give us an

20  administrative record, wouldn't that make a better basis for

21  your brief?

22        MR. HUME:  Your Honor, generally in an APA case, to

23  evaluate all the claims, which include arbitrary and capricious

24  claims or lack of substantial basis claims, you would want the

25  record, yes.

1          What we are saying is there is a pure legal argument

2     that can be assessed without the record.

3          Now, we would -- we would like -- by the way, we would

4     like the record, and it's a little ironic that the Government

5     is saying, oh, you can't do it yet because you don't have the

6     record, when we asked for it a year and a half ago.  But this

7     pure legal question, and there's time pressure and imminence

8     and efficiency reasons to address the pure legal question

9     first.

10          THE COURT:  Well, wait, wait.  Let me ask you this,

11     and this is a hypothetical.  Assuming arguendo that the

12     Governor of Michigan acting with MDOT signed the crossing

13     agreement in excess of some variant of Michigan law, but

14     assured officially the State Department that he was acting in

15     full authority.  And so then the State Department proceeded.

16     Would that imperil the State Department's decision?

17          MR. HUME:  Yes, because the State Department had

18     already admitted in writing that he needed legislative

19     approval, number one.  And number two, a question of law can't

20     be bypassed on the say so of an executive official from a

21     state.  It is a pure question of law whether legislative

22     approval was needed and it's a pure question of law that the

23     legislature prohibited it.  And they can produce --

24          THE COURT:  Well, actually, that's a question of

25     fact.

1          MR. HUME:  It's a question of law that you can look

2     up in a statute that the Michigan Legislature enacted.  It is a

3     fact that they enacted it.

4          THE COURT:  Fair is fair.

5          MR. HUME:  Once they enact it, it's a law.  And we

6     don't object to the State Department putting in whatever

7     evidence it wants as to why it presumed that this illegal

8     agreement was lawful, and we'll respond to it.

9          THE COURT:  Okay.  Let me, rather than have you

10    bounce back and forth because Mr. Dittenber is on the phone, I

11    really need you to come forward, Mr. Collins, just stand next

12    to Mr. Hume, if you could for a minute.

13        Can you bear with me, Mr. Dittenber?

14          MR. DITTENBER:  Yes, Your Honor, and so far I've been

15    able to hear everyone perfectly.

16          THE COURT:  Okay.  I have these two people who are

17    friendly adversaries; right?

18          MR. COLLINS:  Yes.

19          MR. HUME:  That's right, Your Honor.

20          THE COURT:  Friendly adversaries standing next to

21    each other.

22        Okay.  If I could ask, Mr. Collins, this is another

23    hypothetical.  Assuming we had a record and we could decide

24    this, these Motions for Summary Judgment, however large or

25    small the record needed to be for purposes of the legal

1  questions.  Would resolution of those motions in plaintiff's

2  favor pretermit the rest of the litigation?  Would that take

3  care of it?

4        MR. COLLINS:  I don't think -- I don't think I know,

5  Your Honor.  I apologize.  I believe it's plaintiffs, they're

6  plaintiff's claims.  From our perspective, you know, if you

7  tell us that the State Department needs to go back and redo

8  some decision, then, you know, we'll obviously look at that.  I

9  guess we have opportunities for appeal.  We have opportunities

10  for --

11        THE COURT:  Well, no, no, I don't mean that.  I'm

12  just talking about the District Court litigation.  You can go

13  talk to the gods on high as far as I'm concerned.  They're

14  gods, I'm just down here in the vineyard with you guys.

15        But the question is, and maybe you can't answer this

16  because you haven't given it enough time and consideration.

17  What would be remaining of the Motion for Summary Judgment?

18        MR. COLLINS:  I believe, I mean, they still have a

19  Fifth Amendment takings claim, I'm not sure if that survives.

20  They have an equal protection claim, I'm not sure that

21  survives.

22        THE COURT:  Right, right.

23        MR. COLLINS:  They have a pending motion to

24  supplement their complaint.  I don't know what their intentions

25  are with that.

1               THE COURT:  Okay.

2               MR. COLLINS:  I think just -- well, I'll leave it at

3      that, Your Honor.

4               THE COURT:  Leave it at that.

5               MR. HUME:  May I offer an answer, Your Honor?

6               THE COURT:  Yes.

7               MR. HUME:  Because it is, I think, not going to be

8      disputed by either party.  That if the State Department

9      approvals are set aside as unlawful, as we're saying should

10     happen based on these arguments, then there's no question, I

11     don't think, and no dispute that the NITC/DRIC proponents

12     cannot proceed.  Their Coast Guard permit is invalid.  Because

13     the Coast Guard permit expressly required that State Department

14     approval first.  Everything they're doing in Michigan requires

15     the State Department approval.

16          They have to go back to get the Michigan Legislative

17     approval they failed to get the first time.  And then if they

18     succeed on that, which we don't think they will, they'd have to

19     go back to the State Department.  So they would at a minimum be

20     delayed and perhaps completely foreclosed.

21              THE COURT:  Okay, I understand.  So what you're doing

22     is you're moving your motion, which is to supplement the

23     briefing is really a motion to bring forward the whole issue of

24     the Cross-Motions for Summary Judgment on these issues.

25          I need to go back and read the briefs, burrow down.  If

1   you wanted to send my law clerk, Ms. Morrisson, an e-mail that

2   said "read these pages," why, I would probably welcome that

3   direction, as to you too, Mr. Collins.

4        But anyway, let me go back and remind myself what this

5   is really all about, and then I'll take it, as they say, under

6   advisement, and then I can more properly rule on it, okay?

7        MR. HUME:  Thank you, Your Honor, I think that sounds

8   very sensible, and we will definitely provide some suggestions

9   on the pages to focus on, and we would request maybe a chance

10  for another status conference after you've had a chance to do

11  that.

12       THE COURT:  Yes, we will set another status

13  conference.  I just have to tell you how busy my brain is these

14  days.  I don't have a courtroom deputy here.  I will have my

15  courtroom deputy contact everybody and set a status conference

16  for sometime towards the end of June, okay?

17       MR. HUME:  That would be terrific, Your Honor.  Your

18  Honor, might I have one minute with my client to see if it's

19  necessary to raise any other issues?

20       THE COURT:  Yes.

21       MR. HUME:  Thank you.

22       THE COURT:  Thank you, Mr. Collins.

23       (Pause.)

24       MR. HUME:  Your Honor, we're very grateful for the

25  time with you this morning and for the status conference in

1   June.  I don't think we need to take your time up any further.

2            THE COURT:  Thank you very much, everybody.  I hope

3   you all have a wonderful Memorial Day.  Give a thought to those

4   who have fought and been injured or died.  And congratulations.

5   I think it's going to be a better looking park actually.

6            MR. HUME:  We agree.  Thank you, Your Honor.

7            THE COURT:  Thank you.

8            MR. COLLINS:  Thank you, Your Honor.

9            MR. DITTENBER:  Thank you, Judge.

10           THE COURT:  Thank you.

11           (Proceedings concluded at 11:08 a.m.)

12                              -oOo-

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE

2        I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  _____        _____

13  /s/ Crystal M. Pilgrim, RPR, FCRR        Date:  June 9, 2015

14

15

16

17

18

19

20

21

22

23

24

25

$2 [2]  9/12 9/22
$3 [1]  9/11

–

----------------------------

 1/7
-oOo [1]  32/12

.

.9 [3]  7/21 8/6 8/9

/

/s [1]  33/12

1

10 [4]  21/14 21/23 21/24
 21/24
10-476 [2]  1/3 3/2
10:22 [1]  1/5
11:08 [1]  32/11
12225 [1]  1/18

2

2.1 [1]  7/20
2.3 [1]  8/7
20001 [1]  2/11
20015 [1]  1/16
20044 [1]  2/4
2010 [3]  14/14 14/15
 14/15
2015 [2]  1/5 33/12
22 [1]  1/5

3

333 [1]  2/10

4

4.8 [1]  7/16
425 [1]  2/6
471 [1]  1/21
476 [2]  1/3 3/2
48089 [1]  1/18
48202 [1]  1/22
48913 [1]  2/7
4th [2]  2/7 10/20

5

50 [1]  8/11
5301 [1]  1/15

6

60 [1]  8/11

7

70 [1]  8/11
7611 [1]  2/4

A

a.m [2]  1/5 32/11
ability [2]  21/15 33/3
able [5]  16/15 21/17
 23/12 24/3 28/15
about [8]  5/24 7/3 11/24
 18/22 22/7 26/4 29/12
 31/5
above [3]  8/11 33/3 33/6
absolutely [3]  6/17 11/13
 13/24
abutments [1]  8/7
accepted [1]  14/22

accenting [1]  24/21
according [1]  9/10
acknowledges [1]  12/24
acknowledgment [1]  12/4
acquired [1]  7/17
acres [5]  7/17 7/20 7/21
 8/1 8/9
acrimonious [1]  9/25
acronym [1]  17/16
act [13]  12/23 13/1 14/5
 14/7 14/20 17/17 17/18
 17/20 20/5 20/15 20/21
 21/3 22/19
acted [1]  25/2
acting [3]  20/17 27/12
 27/14
action [7]  3/2 13/11
 23/21 24/5 25/24 33/8
 33/10
actions [2]  20/13 22/11
actually [5]  7/2 15/21
 18/1 27/24 32/5
add [1]  11/7
addition [4]  16/25 20/25
 21/11 24/1
Additionally [1]  9/15
address [3]  17/1 17/6
 27/8
addressed [1]  12/23
administrative [4]  24/3
 25/16 26/13 26/20
admit [1]  12/7
admitted [3]  21/2 21/7
 27/18
admonition [2]  11/24
 15/14
adversaries [2]  28/17
 28/20
advisement [1]  31/6
after [6]  7/20 7/23 9/12
 10/21 13/18 31/10
again [6]  3/10 4/3 4/4
 6/15 11/21 24/2
agencies [2]  19/16 21/1
agency [1]  19/25
ago [3]  7/17 15/22 27/6
agree [4]  13/22 13/25
 14/18 32/6
agreed [4]  8/21 9/3 9/16
 9/19
agreement [41]
agreements [2]  21/15
 22/12
agrees [1]  14/23
aided [1]  2/13
air [4]  5/3 13/12 13/13
 14/8
al [2]  1/6 3/4
all [20]  4/3 4/13 5/11
 6/8 9/24 13/6 13/25 15/17
 18/9 19/1 21/1 22/12
 22/22 23/6 23/7 23/23
 24/23 26/23 31/5 32/3
allow [1]  18/21
allows [1]  10/1
already [4]  7/2 9/19
 12/16 27/18
also [3]  16/24 20/11
 20/13
although [1]  18/20
am [2]  33/7 33/9

amateur [1]  4/19
Ambassador [1]  7/15
Amendment [1]  29/19
amount [1]  19/1
another [8]  9/12 9/22
 10/20 13/2 13/19 28/22
 31/10 31/12
answer [3]  25/8 29/15
 30/5
any [8]  9/3 12/3 16/15
 19/17 23/10 31/19 32/1
 33/8
anybody [2]  5/13 23/10
anything [2]  11/7 14/17
anyway [1]  31/4
APA [7]  23/22 24/2 24/6
 24/13 26/5 26/7 26/22
apologize [1]  29/5
appeal [6]  12/9 12/9 16/5
 16/9 16/15 29/9
appear [1]  11/21
APPEARANCES [2]  1/13 2/1
appearing [2]  3/10 4/8
appreciate [4]  3/10 7/5
 15/12 15/15
apprised [1]  16/19
approach [1]  9/17
approval [19]  9/12 12/17
 14/18 16/20 17/15 17/24
 17/25 18/8 19/12 19/21
 19/21 21/4 21/13 22/18
 27/19 27/22 30/14 30/15
 30/17
approvals [8]  12/25 17/16
 17/18 18/3 18/24 19/7
 21/2 30/9
approve [9]  9/10 13/23
 20/2 20/6 20/8 20/15
 20/21 25/10 25/18
approved [3]  10/24 17/21
 19/24
approves [4]  9/6 12/18
 16/4 16/16
arbitrary [2]  24/5 26/23
are [30]  4/4 4/22 5/19
 9/7 12/4 13/3 15/15 15/19
 17/8 18/18 19/25 21/9
 21/10 22/2 23/12 23/17
 23/19 23/24 24/2 24/9
 24/11 24/17 24/21 25/6
 25/7 26/1 27/1 28/16
 29/25 30/9
area [2]  7/16 8/9
argued [1]  20/3
arguendo [1]  27/11
argument [4]  20/4 20/12
 25/5 27/1
arguments [8]  13/6 19/3
 19/7 22/17 22/19 23/21
 23/23 30/10
around [7]  14/11 14/11
 14/11 14/11 14/12 14/12
 22/21
Article [2]  21/14 21/22
as [36]
aside [1]  30/9
ask [4]  19/25 24/20 27/10
 28/22
asked [2]  10/18 27/6
assessed [1]  27/2
assume [1]  26/19

**A** Case 1:10-cv-00476-RMC

11/9 12/7 13/13 13/20
15/3 17/15 17/17 19/18
Document 41-2 Filed 11/15/...

**A**

Assuming [2]   27/11 28/23
assured [1]   27/14
athlete [1]   4/19
attended [1]   10/17
Attorney [1]   2/6
authority [7]   19/19 20/2
  20/5 20/14 20/21 22/13
  27/15
authorizes [1]   20/7
available [1]   5/7
Avenue [2]   1/15 2/10

**B**

back [13]   4/13 4/13 5/5
  8/13 14/16 18/7 18/11
  28/10 29/7 30/16 30/19
  30/25 31/4
based [3]   25/17 26/12
  30/10
basis [3]   13/7 26/20
  26/24
be [42]
bear [1]   28/13
because [18]   3/17 4/19
  6/16 6/20 9/15 10/13 15/1
  18/7 18/14 18/17 19/14
  25/12 27/5 27/17 28/10
  29/16 30/7 30/12
been [10]   4/11 7/2 13/7
  14/3 14/11 18/18 22/7
  24/19 28/14 32/4
before [12]   1/10 9/9
  10/16 10/22 11/21 13/7
  17/13 21/2 22/21 23/17
  24/3 24/14
beginning [1]   10/3
behalf [1]   11/7
behind [1]   10/25
behold [1]   4/4
being [2]   18/3 19/24
believe [9]   5/9 10/20
  19/9 23/19 25/12 25/13
  25/14 29/5 29/18
below [1]   7/23
bench [1]   3/18
best [1]   33/3
better [3]   9/17 26/20
  32/5
between [2]   9/25 11/9
beyond [2]   8/10 12/5
big [1]   8/8
bike [3]   4/12 4/14 4/16
binder [1]   18/25
binding [3]   13/23 13/24
  19/17
Bldg [1]   2/7
blocked [1]   21/6
blue [1]   7/20
Bob [1]   3/5
Boies [2]   1/15 4/9
both [6]   10/16 10/17
  10/18 18/3 19/10 23/1
bounce [1]   28/10
BOX [1]   2/4
brain [2]   23/7 31/13
BRIAN [2]   2/2 3/6
bridge [31]   1/3 3/3 4/25
  7/12 7/15 8/5 8/9 8/10
  8/14 8/20 8/21 9/2 9/2

17/19 17/20 20/5 20/15
20/21 21/3 21/12 22/19
23/11 26/8
brief [8]   18/23 21/5 21/9
  22/15 23/9 24/13 26/8
  26/21
briefing [10]   12/24 19/1
  19/3 19/4 19/5 19/6 19/11
  21/10 23/18 30/23
briefs [7]   18/25 20/13
  20/23 20/24 20/25 26/1
  30/25
bring [2]   4/5 30/23
Brooklyn [1]   8/14
building [1]   18/12
built [1]   15/5
buried [1]   21/10
burrow [1]   30/25
busy [1]   31/13
bypassed [1]   27/20

**C**

CA [1]   1/3
call [1]   13/6
called [2]   5/2 18/1
can [20]   3/8 3/9 3/21
  6/19 6/21 7/25 8/1 11/16
  11/17 11/25 15/12 22/16
  24/6 26/11 27/2 27/23
  28/1 28/23 29/12 31/6
can't [7]   11/12 14/13
  24/18 24/18 27/5 27/19
  29/15
CANADA [4]   1/6 3/3 17/24
  25/3
Canada's [1]   19/2
cannot [3]   14/20 20/17
  30/12
capricious [2]   24/5 26/23
care [2]   13/15 29/3
carefully [1]   4/3
cart [1]   23/17
case [8]   14/12 17/2 17/9
  17/10 18/14 23/2 24/16
  26/22
cases [1]   23/6
cause [1]   17/9
CenTra [1]   1/17
certainly [4]   3/20 16/21
  17/12 23/24
CERTIFICATE [1]   33/1
certify [2]   33/2 33/7
challenged [2]   17/16 18/3
challenges [1]   18/5
chance [4]   4/25 12/14
  31/9 31/10
chapter [1]   9/25
Circuit [1]   4/4
circumstances [1]   25/11
citation [1]   21/21
city [31]   5/1 6/14 7/18
  7/19 7/24 9/3 9/6 9/6 9/9
  9/11 9/16 9/19 9/22 10/1
  10/9 10/14 10/16 10/16
  10/17 10/21 12/16 12/17
  13/20 13/21 13/22 14/18
  14/23 16/4 16/16 16/20
  24/23
Civil [1]   3/2

claims [8]   17/14 18/16
  24/2 24/12 26/23 26/24
  26/24 29/6
Clause [4]   21/14 21/23
  21/24 21/24
clear [5]   5/17 14/3 16/12
  20/11 25/7
clearly [1]   20/3
clerk [1]   31/1
client [1]   31/18
Coast [30]   5/3 5/5 5/7
  5/10 5/14 5/23 10/12
  11/24 12/13 13/5 13/7
  13/10 13/12 13/14 13/17
  13/19 13/22 13/25 14/9
  14/16 14/19 14/21 14/24
  15/7 16/10 16/13 16/14
  18/14 30/12 30/13
cogent [1]   24/19
COLLINS [12]   2/2 3/6 11/8
  11/18 13/9 15/10 23/4
  26/7 28/11 28/22 31/3
  31/22
COLLYER [1]   1/10
COLUMBIA [2]   1/1 2/10
come [7]   11/13 12/15
  13/19 13/25 14/10 21/18
  28/11
comes [1]   18/1
coming [1]   8/15
committees [4]   10/16
  10/17 10/21 10/22
company [11]   1/3 3/3 5/1
  7/12 8/21 9/2 9/25 11/9
  13/13 13/20 23/11
complaint [1]   29/24
completely [2]   24/15
  30/20
complicated [1]   22/21
computer [1]   2/13
computer-aided [1]   2/13
concerned [1]   29/13
concerning [1]   11/8
concluded [1]   32/11
conference [6]   1/10 16/25
  31/10 31/13 31/15 31/25
congratulations [3]   5/21
  6/12 32/4
Conservation [4]   12/23
  13/1 14/5 14/7
consideration [1]   29/16
constitutes [1]   26/15
constitution [1]   2/10
constitutional [3]   19/19
  21/14 22/10
contact [1]   31/15
contend [1]   19/13
contention [1]   20/20
continue [1]   16/7
continued [1]   2/1
contract [3]   5/1 6/1
  13/23
contrary [3]   18/3 19/8
  22/19
contribute [1]   9/3
copy [1]   6/5
corollary [1]   20/12
correct [5]   13/24 13/24
  18/19 21/21 33/2

**C**

could [16]   6/16 17/8 17/9
17/10 18/5 18/14 18/15
18/15 18/16 21/2 22/20
23/1 25/9 28/12 28/22
28/23
couldn't [1]   25/7
council [15]   9/6 9/9
10/14 10/16 10/17 10/21
10/22 12/17 12/18 13/23
14/18 14/23 16/4 16/16
16/20
councils [1]   10/16
counsel [1]   33/7
countries [1]   21/16
couple [2]   11/23 12/13
course [3]   4/2 18/13
24/17
COURT [21]   1/1 2/8 2/9
2/9 5/23 6/20 17/2 17/13
18/25 19/18 19/25 20/11
21/6 21/8 22/25 24/3 24/6
25/16 26/4 29/12 33/5
Court's [4]   6/15 15/13
16/18 19/9
courtesy [1]   3/10
courtroom [3]   3/11 31/14
31/15
create [1]   13/19
critical [1]   24/4
cross [5]   17/7 17/13
18/18 22/16 30/24
Cross-Motion [1]   17/13
cross-motions [4]   17/7
18/18 22/16 30/24
crossing [6]   17/21 19/13
19/14 25/3 25/10 27/12
CRYSTAL [2]   2/8 33/12
curly [1]   23/12
currently [1]   10/15

**D**

D.C [2]   1/4 4/4
date [3]   4/6 33/5 33/12
DAVENÉ [2]   2/2 3/6
Day [1]   32/3
days [3]   23/10 26/15
31/14
DC [3]   1/16 2/4 2/11
deal [5]   5/24 6/9 6/12
13/20 13/21
dear [1]   22/14
death [2]   15/2 15/2
decide [3]   25/8 25/9
28/23
decided [2]   18/5 23/7
decision [7]   22/20 25/15
25/18 25/22 26/11 27/16
29/8
deed [2]   7/18 12/22
defeated [1]   26/10
defendants [4]   1/7 2/2
12/2 15/8
defense [1]   3/6
definitely [2]   14/24 31/8
definition [1]   20/18
delayed [1]   30/20
deliberation [1]   10/20
deliberations [1]   10/23
denial [1]   17/5

Department [36]
Department's [7]   19/04
19/12 21/13 24/5 25/21
26/11 27/16
deputy [3]   3/11 31/14
31/15
describe [1]   6/4
description [1]   9/18
determination [3]   24/8
25/19 26/5
determine [1]   24/6
DETROIT [16]   1/3 1/22 3/2
4/25 5/1 6/14 7/11 7/18
7/19 7/24 9/3 9/6 9/16
10/9 10/14 11/9
developed [1]   20/24
developing [1]   9/4
development [1]   12/2
devoted [1]   19/6
did [11]   5/8 6/10 6/13
11/5 11/7 16/3 20/12
20/20 21/18 25/14 25/17
didn't [1]   3/23
died [1]   32/4
difficult [2]   5/13 22/22
digest [1]   12/14
diligence [1]   9/8
direction [1]   31/3
discovery [1]   17/5
discuss [1]   17/3
Dismiss [8]   17/4 19/2
22/22 23/20 23/24 24/10
24/15 26/3
dismissed [1]   16/10
dispose [1]   23/2
disposed [1]   23/20
dispute [3]   25/7 25/13
30/11
disputed [1]   30/8
disputes [1]   25/23
disrespect [1]   23/10
DISTRICT [7]   1/1 1/1 1/11
2/9 2/10 29/12 33/5
DITTENBER [8]   2/5 3/7 3/8
3/23 11/11 11/16 28/10
28/13
divert [1]   6/13
do [21]   4/20 4/20 5/22
6/2 6/5 6/19 8/24 12/22
14/2 14/8 14/8 16/5 17/2
18/13 20/3 21/17 22/14
22/15 26/4 27/5 31/10
Docket [1]   1/3
documentation [1]   10/19
documents [3]   21/6 21/6
24/7
does [8]   3/12 6/18 6/22
9/2 12/7 13/5 14/19 16/3
doesn't [1]   12/6
doing [6]   4/14 4/16 9/8
9/8 30/14 30/21
don't [25]   3/13 6/3 7/8
11/11 15/5 16/5 17/11
18/11 22/7 22/17 24/6
25/8 25/13 26/10 26/17
27/5 28/9 29/4 29/4 29/11
29/24 30/11 30/18 31/14
32/1
done [7]   5/18 6/9 9/21
14/11 15/10 19/1 22/5
down [6]   3/18 8/1 13/14

21/18 29/14 30/25
DRIC [8]   5/6 17/15 17/15
17/19 18/7 18/15 19/17
30/11
due [1]   9/8
dying [1]   4/19
dyslexia [1]   22/3

**E**

e-mail [1]   31/1
each [1]   28/21
eager [1]   5/10
eagerly [1]   16/13
easement [2]   5/3 7/24
easily [2]   14/21 26/9
easy [1]   5/22
effective [1]   12/17
efficiency [1]   27/8
efficiently [1]   23/1
effort [1]   18/7
either [1]   30/8
elaborate [2]   19/11 20/12
elected [1]   10/19
elegantly [1]   22/25
eliminate [1]   5/2
else [1]   16/3
elsewhere [1]   5/14
employed [1]   33/8
enact [1]   28/5
enacted [2]   28/2 28/3
encouraged [1]   6/8
end [2]   18/15 31/16
ends [1]   9/25
enormous [1]   19/1
enough [2]   25/19 29/16
ENRD [1]   2/3
enter [2]   19/19 21/15
entered [3]   5/1 17/22
20/15
entering [1]   22/11
equal [1]   29/20
equipment [2]   3/16 3/19
Esquire [7]   1/14 1/14
1/17 1/20 2/2 2/2 2/5
established [1]   19/18
et [2]   1/6 3/3
evaluate [1]   26/23
even [5]   12/19 14/13
23/22 24/14 26/10
ever [1]   15/5
everybody [3]   3/25 31/15
32/2
everybody's [1]   23/5
everyone [2]   16/19 28/15
everything [3]   24/18
24/22 30/14
evidence [1]   28/7
exactly [2]   8/8 22/24
exceeds [1]   9/20
except [1]   7/4
excess [1]   27/13
exchange [1]   7/19
excuses [2]   14/10 14/10
executed [2]   13/4 19/14
executing [1]   19/16
executive [1]   27/20
exemplifies [1]   12/3
existing [1]   7/15
exit [1]   8/7
expand [2]   22/17 26/9
expeditiously [1]   24/16

**E**

explain [1]  6/16
explicitly [1]  21/7
expressly [2]  19/15 30/13
extend [1]  8/10

**F**

fact [6]  8/25 9/5 12/7
 24/22 27/25 28/3
facts [2]  25/6 25/13
failed [1]  30/17
failure [1]  13/8
fair [3]  16/11 28/4 28/4
fairly [1]  14/16
family [1]  9/25
famous [1]  17/16
far [3]  6/25 28/14 29/13
favor [2]  24/11 29/2
FCRR [2]  2/8 33/12
federal [5]  12/1 14/5
 19/24 19/25 20/1
feel [2]  5/25 16/7
feet [1]  8/11
few [2]  22/4 22/5
fifteen [1]  15/22
Fifth [1]  29/19
fight [1]  8/18
filed [1]  22/23
financially [1]  33/9
find [1]  15/18
fine [4]  6/17 6/17 6/22
 7/8
first [11]  10/3 17/3
 17/11 17/20 17/24 19/13
 23/22 26/2 27/9 30/14
 30/17
fit [1]  23/5
five [1]  21/6
flavor [1]  21/8
Flexner [1]  1/15
flipped [1]  22/6
Floor [1]  2/7
focus [5]  22/16 22/17
 22/25 26/9 31/9
focuses [1]  24/25
follow [1]  18/9
foreclosed [1]  30/20
foregoing [1]  33/2
foreign [2]  19/20 21/16
foremost [1]  19/14
forget [1]  11/11
forgive [2]  11/19 26/16
formal [1]  16/13
forth [1]  28/10
forward [10]  10/1 10/13
 12/10 13/6 15/4 15/8
 15/25 24/11 28/11 30/23
fought [1]  32/4
found [2]  10/2 12/6
frankly [1]  21/10
free [2]  5/25 16/7
Friday [1]  1/5
friendly [2]  28/17 28/20
front [1]  23/6
frontage [1]  8/1
full [3]  10/22 18/25
 27/15
fully [7]  12/14 13/4
 18/18 20/12 20/24 23/19
 24/13

Fund [1]  17/24
funny [1]  4/11
further [4]  12/25 32/1
 33/7 33/9
furthest [1]  7/16

**G**

gave [1]  14/22
General's [1]  2/6
generally [1]  26/22
get [16]  6/9 6/18 7/23
 9/23 15/5 16/8 21/2 21/4
 22/21 26/2 26/3 26/4
 26/17 26/17 30/16 30/17
getting [3]  9/20 13/3
 23/19
gist [1]  10/8
give [7]  4/22 6/4 7/24
 20/5 21/8 26/19 32/3
given [1]  29/16
go [11]  12/10 14/16 17/11
 18/10 18/15 29/7 29/12
 30/16 30/19 30/25 31/4
gods [2]  29/13 29/14
goes [4]  3/16 3/16 9/9
 10/22
going [12]  5/13 7/17 9/22
 14/20 15/5 15/17 16/5
 16/15 22/9 23/12 30/7
 32/5
gone [2]  5/5 13/9
good [10]  3/21 3/25 4/1
 4/9 4/25 10/11 11/2 11/20
 11/22 16/25
goodness [3]  10/10 14/15
 15/19
got [2]  3/17 13/11
gotten [1]  14/20
GOVERNMENT [11]  1/6 3/3
 6/4 6/22 11/8 11/19 15/4
 15/6 17/24 22/23 27/4
Government's [2]  17/4
 19/2
Governor [4]  17/22 19/18
 25/1 27/12
grateful [2]  4/24 31/24
gratefully [1]  7/3
grayed [1]  7/16
great [4]  8/19 8/20 15/10
 23/6
greatest [1]  23/8
greatly [1]  9/20
ground [1]  8/11
Guard [28]  5/3 5/5 5/8
 5/10 5/14 5/23 10/13
 11/24 12/14 13/5 13/10
 13/12 13/14 13/17 13/19
 13/22 13/25 14/10 14/17
 14/19 14/22 14/24 15/7
 16/10 16/14 18/14 30/12
 30/13
Guard's [2]  13/7 16/13
guess [2]  13/3 29/9
guise [1]  15/6
guys [1]  29/14

**H**

had [17]  4/3 4/5 10/16
 10/17 11/5 12/14 12/23
 17/13 19/21 19/22 20/1
 21/4 22/13 25/3 27/17

28/23 31/10
hair [2]  15/19 15/21
half [1]  27/6
HAMIS [1]  1/14
Hamish [2]  3/5 4/8
hand [1]  6/1
hang [1]  3/21
happen [2]  15/11 30/10
happened [2]  18/11 25/6
happy [5]  5/17 6/2 6/5
 10/9 10/10
hard [2]  6/14 23/8
has [22]  3/11 4/18 5/1
 8/21 8/24 9/2 9/16 9/19
 12/14 12/22 13/9 13/11
 13/13 13/23 14/7 14/8
 14/12 17/13 18/25 19/19
 20/6 20/14
hasn't [1]  24/19
have [53]
haven't [2]  25/15 29/16
having [5]  5/17 14/19
 19/8 23/7 26/8
he [12]  4/20 6/13 6/14
 6/16 6/18 6/19 11/1 11/13
 19/21 19/21 27/14 27/18
he's [2]  4/19 6/10
head [1]  7/11
heads [1]  21/18
hear [6]  3/8 5/10 5/24
 11/12 11/16 28/15
heard [1]  7/6
hearing [2]  3/12 33/9
hearings [1]  10/17
held [1]  5/12
helpful [1]  5/23
here [15]  4/4 4/25 6/6
 6/19 7/14 11/14 12/12
 13/16 15/13 19/21 19/25
 24/4 24/12 29/14 31/14
hiccups [1]  13/3
high [1]  29/13
highlighted [1]  26/1
him [5]  3/21 6/8 6/18
 6/23 11/16
hinted [1]  12/16
Honor [41]
Honor's [1]  11/24
HONORABLE [1]  1/10
hope [4]  3/12 16/18 16/21
 32/2
hopeful [1]  16/24
hopefully [4]  9/9 10/1
 10/20 10/23
horse [1]  23/17
how [8]  3/15 3/18 18/12
 24/6 24/16 26/4 26/11
 31/13
however [1]  28/24
huge [1]  21/5
HUME [10]  1/14 3/5 4/5
 4/8 7/9 11/5 16/3 26/6
 26/7 28/12
hurt [1]  4/13
hypothetical [2]  27/11
 28/23

**I**

I'll [2]  30/2 31/5
I'm [21]  4/13 5/17 6/2
 6/5 6/11 10/10 11/5 12/20

**I**  Case 1:10-cv-00476-RMC

I'm... [13]  14/10 14/20 15/2 15/7 15/17 21/8 23/7 23/12 29/11 29/13 29/14 29/19 29/20
I've [5]  4/11 4/12 14/10 20/23 28/14
IBA [4]  17/25 18/2 19/13 22/13
identified [1]  7/7
illegal [7]  17/17 19/24 20/2 20/9 25/14 25/24 28/7
immediately [5]  5/8 7/3 7/15 7/23 9/11
imminence [1]  27/7
impatient [2]  14/17 14/19
imperil [1]  27/16
important [5]  10/3 21/9 23/1 24/9 24/10
importantly [1]  9/24
Inc [1]  1/17
include [1]  26/23
inconsistent [1]  21/13
indulgence [1]  6/15
information [5]  4/5 25/17 25/19 26/5 26/12
initial [1]  12/15
initially [1]  15/16
injured [1]  32/4
inside [1]  26/16
instead [2]  3/18 19/21
instrumentality [2]  20/16 20/19
intelligent [1]  24/19
intend [1]  18/13
intentions [1]  29/24
interest [3]  19/9 19/9 19/10
interested [4]  2/5 3/7 15/17 33/10
INTERNATIONAL [12]  1/3 3/3 7/12 17/17 17/18 17/20 20/4 20/14 20/21 21/3 21/12 22/19
invalid [1]  30/12
invest [1]  5/2
ironic [1]  27/4
is [87]
is, [1]  30/7
is, I [1]  30/7
isn't [1]  14/16
issuance [1]  18/1
issue [24]  5/3 5/12 5/14 5/17 7/4 12/4 12/6 12/20 13/8 13/12 13/14 13/16 14/1 14/4 14/5 15/6 15/24 15/24 16/8 16/15 24/4 25/20 26/2 30/23
issued [1]  17/18
issues [13]  7/6 12/13 12/15 15/15 17/7 17/8 18/23 23/19 24/9 24/10 24/20 30/24 31/19
issuing [1]  5/4
it [78]
it's [32]  3/17 4/2 4/11 5/13 6/24 7/1 8/24 9/9 11/13 13/23 13/24 14/4 14/15 15/4 15/5 15/25

16/8 16/12 16/22 20/9 20/9 23/22 24/7 24/9
25/24 27/4 27/22 28/1
28/5 29/5 31/18 32/5
items [1]  17/1
its [1]  10/7

**J**

JAMES [2]  1/14 2/5
job [2]  11/2 15/10
jointly [1]  9/17
joke [2]  3/24 26/16
judge [6]  1/11 3/17 14/17 14/18 23/8 32/9
judgment [13]  17/7 17/14 22/16 23/19 23/25 24/2 24/12 24/13 24/21 26/2 28/24 29/17 30/24
jumped [1]  15/16
June [4]  10/20 31/16 32/1 33/12
just [24]  3/17 3/23 5/16 5/24 6/15 8/24 11/23 12/15 12/20 13/10 14/4 14/21 15/11 15/15 18/13 20/23 23/7 26/8 26/16 28/11 29/12 29/14 30/2 31/13
Justice [2]  2/3 5/9

**K**

keep [2]  16/19 22/9
knew [1]  15/21
know [21]  6/2 6/3 6/3 12/1 12/19 13/10 14/25 15/1 15/5 16/5 16/8 18/12 22/4 22/5 22/7 23/20 25/8 29/4 29/6 29/8 29/24
knowing [1]  3/18
known [1]  7/3
knows [4]  3/15 10/10 26/14 26/18
KRAEHENBUEHL [1]  1/14

**L**

lack [2]  9/17 26/24
land [6]  5/2 9/16 12/23 13/1 14/5 14/7
Lansing [1]  2/7
large [1]  28/24
last [3]  6/6 6/7 17/11
law [24]  1/21 13/15 14/1 14/4 14/5 17/8 18/3 18/6 19/8 19/15 19/24 20/2 20/17 22/19 25/2 25/5 25/20 27/13 27/19 27/21 27/22 28/1 28/5 31/1
lawful [1]  28/8
lawfully [1]  25/2
lawyers [4]  6/8 6/11 22/2 23/11
least [1]  17/9
leave [3]  3/12 30/2 30/4
left [1]  7/16
legal [7]  18/23 20/1 24/21 27/1 27/7 27/8 28/25
legislative [7]  18/8 19/20 19/21 21/4 27/18 27/21 30/16
legislature [3]  19/15

27/23 28/2
JUNE 23, 2010 - 38 of 42
legitimate [1]  26/12
legs [2]  15/19 15/22
let [10]  14/9 14/24 15/1 17/2 18/17 23/4 24/20 27/10 28/9 31/4
let's [3]  12/10 22/17 26/19
life [1]  23/5
light [1]  11/25
like [10]  4/10 6/1 8/10 8/14 18/21 20/11 20/24 21/5 27/3 27/4
limited [2]  19/10 22/11
limits [1]  21/15
litigation [3]  13/18 29/2 29/12
little [5]  8/1 14/1 15/18 26/16 27/4
live [1]  4/19
LLP [1]  1/15
lo [1]  4/4
location [1]  7/15
long [1]  6/24
look [4]  4/10 21/18 25/16 28/1 29/8
looked [1]  24/8
looking [1]  32/5
lose [1]  3/13
lost [1]  4/12
lot [5]  10/18 10/19 19/3 19/4 19/5

**M**

ma'am [1]  26/17
machine [1]  2/12
made [5]  13/7 20/4 23/23 24/8 25/15
mail [1]  31/1
maintain [1]  7/25
make [6]  5/16 9/18 20/11 25/18 26/5 26/20
making [1]  3/24
many [1]  4/22
map [4]  6/16 6/20 7/14 7/21
mass [1]  21/10
matter [6]  9/5 12/7 18/5 22/18 24/22 33/6
may [8]  1/5 5/23 10/23 10/23 14/3 14/22 26/9 30/5
maybe [4]  6/15 22/8 29/15 31/9
mayor [2]  9/7 10/25
MDOT [4]  17/22 19/16 21/1 27/12
me [21]  3/8 4/6 11/19 13/7 13/17 14/22 16/8 18/17 18/21 21/20 22/14 23/4 23/6 24/20 26/16 26/17 27/10 28/9 28/13 31/4 33/4
mean [8]  3/23 6/24 15/2 16/4 16/7 24/24 29/11 29/18
means [2]  6/14 12/3
meeting [1]  10/14
meets [1]  13/15
Memorial [1]  32/3
merits [2]  23/14 23/16

message [1]   15/11
MI [3]   1/18 1/22 2/7
MICHAEL [1]   2/5
Michigan [26]   2/6 13/2
 13/15 13/15 17/22 17/23
 17/23 18/10 19/15 19/15
 19/18 21/4 24/23 24/25
 25/1 25/1 25/2 25/5 25/6
 25/20 25/25 27/12 27/13
 28/2 30/14 30/16
Michigan's [1]   19/2
microphone [1]   11/13
might [2]   7/4 31/18
Mike [1]   3/7
mild [3]   22/3 22/7 22/8
million [4]   9/11 9/12
 9/22 9/23
minimum [1]   30/19
minute [2]   28/12 31/18
minutes [3]   5/24 6/16
 18/21
money [1]   5/2
monies [1]   9/3
moot [2]   17/8 18/14
MORAN [2]   1/17 3/5
more [7]   9/24 10/2 10/23
 14/10 22/21 22/25 31/6
morning [6]   3/25 4/1 4/9
 11/20 11/22 31/25
Moroun [3]   6/7 6/11 7/11
Morrisson [1]   31/1
most [3]   23/1 23/1 24/9
motion [16]   17/13 22/22
 23/20 23/23 23/25 24/1
 24/4 24/10 24/13 24/21
 26/1 26/3 29/17 29/23
 30/22 30/23
motions [10]   17/4 17/5
 17/7 18/18 19/2 22/16
 24/15 28/24 29/1 30/24
move [7]   10/1 10/13 13/5
 15/4 15/8 15/25 24/11
moved [1]   12/5
moving [1]   30/22
Mr [1]   6/7
Mr. [25]   3/8 3/23 4/5
 6/11 7/9 7/11 11/5 11/8
 11/11 11/16 11/18 13/9
 15/10 16/3 23/4 26/6 26/7
 26/7 28/10 28/11 28/12
 28/13 28/22 31/3 31/22
Mr. Collins [10]   11/8
 11/18 13/9 15/10 23/4
 26/7 28/11 28/22 31/3
 31/22
Mr. Dittenber [6]   3/8
 3/23 11/11 11/16 28/10
 28/13
Mr. Hume [7]   4/5 7/9 11/5
 16/3 26/6 26/7 28/12
Mr. Moroun [2]   6/11 7/11
Ms. [1]   31/1
Ms. Morrisson [1]   31/1
MSF [1]   19/16
much [4]   7/10 18/21 22/21
 32/2
must [1]   11/12
my [15]   3/11 4/13 4/18
 4/22 14/15 15/6 15/11

15/18 16/8 23/7 31/1
 31/13 31/14 31/18 33/3
myself [1]   31/4

N

N-I-T-C/D-R-I-C [1]   17/15
navigation [1]   5/4
necessary [1]   31/19
need [14]   6/2 6/3 6/23
 8/4 12/24 13/21 16/3 18/8
 18/10 23/6 26/12 28/11
 30/25 32/1
needed [4]   14/20 27/18
 27/22 28/25
needs [4]   13/14 13/20
 26/8 29/7
negotiated [1]   9/7
neighbor [1]   8/17
neither [1]   33/7
never [2]   26/14 26/18
new [4]   5/14 8/18 13/19
 14/16
news [3]   4/24 4/25 16/25
next [4]   8/20 23/9 28/11
 28/20
nextdoor [1]   8/17
NITC [7]   17/15 17/15
 17/19 18/7 18/15 19/17
 30/11
NITC/DRIC [7]   17/15 17/15
 17/19 18/7 18/15 19/17
 30/11
no [14]   1/3 6/19 6/24
 14/7 14/10 19/19 19/21
 22/13 23/11 24/3 29/11
 29/11 30/10 30/11
Nobody [1]   21/17
Nonetheless [1]   24/24
not [50]
notes [2]   21/18 33/4
nothing [6]   8/24 11/5
 13/15 14/8 14/8 14/9
now [10]   3/21 5/14 9/8
 13/9 13/19 14/20 15/7
 16/3 25/5 27/3
number [4]   14/12 25/25
 27/19 27/19
NW [2]   1/15 2/10

O

oath [1]   6/23
object [1]   28/6
obviously [3]   12/2 16/19
 29/8
off [2]   4/4 21/17
offensive [1]   19/6
offer [1]   30/5
Office [1]   2/6
officer [1]   20/17
official [2]   2/9 27/20
officially [1]   27/14
oh [6]   14/1 14/15 15/18
 18/9 22/14 27/5
okay [30]   3/11 3/14 3/21
 5/14 6/20 9/14 9/18 10/15
 11/2 11/6 11/18 12/8
 12/10 15/20 15/23 16/11
 18/17 22/9 23/3 23/3
 23/13 26/6 26/19 28/9
 28/16 28/22 30/1 30/21
 31/6 31/16

old [1]   4/19
on [49]
once [3]   9/21 28/5
one [13]   3/15 4/21 12/16
 12/22 18/7 19/11 20/25
 21/4 26/7 26/14 26/18
 27/19 31/18
only [6]   3/15 4/21 5/12
 13/12 20/7 20/14
ooo [1]   32/12
operate [2]   3/16 3/18
opportunities [2]   29/9
 29/9
opportunity [2]   7/5 11/21
opposed [1]   23/15
order [2]   5/2 24/3
other [13]   5/11 6/12 6/13
 7/20 12/22 13/3 14/9
 14/17 17/1 17/1 21/1
 28/21 31/19
others [1]   4/23
otherwise [1]   33/10
Ottawa [1]   2/6
our [23]   8/17 9/25 9/25
 17/6 17/13 17/14 17/16
 18/16 19/3 19/9 20/13
 20/20 20/23 20/24 20/25
 21/5 23/20 23/23 24/11
 24/15 26/1 26/3 29/6
out [6]   7/16 10/4 10/22
 12/12 15/16 17/9
outcome [1]   33/10
outset [1]   7/7
over [1]   5/8
own [1]   10/7

P

P-R-O-C-E-E-D-I-N-G-S [1]
 3/1
P.M [1]   1/14
P.O [1]   2/4
pages [3]   31/2 31/9 33/3
Palmer [1]   1/21
park [9]   7/25 8/17 8/18
 8/19 9/4 9/15 9/17 9/20
 32/5
part [3]   7/18 8/16 20/4
particular [1]   17/3
parties [2]   5/11 33/8
partway [1]   3/12
party [3]   2/5 3/7 30/8
party's [1]   19/10
pass [1]   10/21
past [1]   13/8
PATRICK [2]   1/17 3/5
Pause [1]   31/23
paying [1]   6/10
pending [5]   11/9 17/1
 17/13 24/14 29/23
people [3]   14/9 15/18
 28/16
perfectly [1]   28/15
perhaps [2]   24/11 30/20
permit [9]   5/4 13/8 13/14
 16/10 16/15 18/1 18/14
 30/12 30/13
perspective [1]   29/6
persuaded [1]   14/21
phone [2]   11/12 28/10
PILGRIM [2]   2/8 33/12
place [1]   23/22
plain [3]   20/8 20/18

**P**

plain... [1]   21/12
plaintiff [3]   1/4 1/14
 3/5
plaintiff's [2]   29/1 29/6
plaintiffs [3]   4/8 23/17
 29/5
point [3]   17/11 21/11
 23/11
points [6]   11/23 19/11
 21/10 22/18 24/17 26/9
politics [1]   16/22
positive [3]   10/2 10/2
 12/3
possibility [2]   18/22
 22/20
potential [2]   13/3 17/4
potentially [3]   17/8 17/9
 23/2
precedent [1]   19/19
predicates [1]   23/24
present [1]   21/5
presentation [1]   7/1
presently [1]   23/5
presidential [2]   18/1
 23/21
pressure [1]   27/7
presumed [1]   28/7
pretermit [1]   29/2
pretty [1]   9/10
prevailed [1]   18/6
preventing [1]   15/4
previously [1]   33/6
price [1]   16/11
prior [2]   12/23 20/13
probably [1]   31/2
problem [4]   13/13 13/17
 13/18 13/20
proceed [2]   7/8 30/12
proceeded [1]   27/15
proceedings [3]   2/12
 32/11 33/5
process [5]   9/7 9/10
 11/24 12/11 24/15
produce [1]   27/23
produced [1]   2/12
Professor [1]   21/20
prohibited [2]   19/16
 27/23
prohibitions [1]   19/22
promise [1]   23/10
prompt [2]   16/19 16/21
proper [1]   26/4
properly [2]   25/10 31/6
property [7]   7/17 7/24
 8/4 9/13 9/19 9/20 12/4
proponents [1]   30/11
prospective [1]   12/13
protection [1]   29/20
provide [1]   31/8
provided [1]   33/4
provision [2]   21/14 22/10
pure [6]   17/8 27/1 27/7
 27/8 27/21 27/22
purportedly [1]   17/22
purports [1]   20/5
purpose [2]   8/16 8/19
purposes [2]   9/4 28/25
pursuant [1]   18/2
putting [3]   4/13 23/17

**Q**

question [17]   8/22 8/25
 10/12 13/6 18/18 20/1
 22/15 24/20 27/7 27/8
 27/19 27/21 27/22 27/24
 28/1 29/15 30/10
questions [3]   10/18 22/22
 29/1
quite [2]   10/4 24/19
quotes [1]   21/6

**R**

race [3]   4/12 4/14 4/16
raise [2]   5/14 31/19
raises [1]   12/13
raking [1]   23/7
ramps [1]   8/7
rather [3]   6/8 8/18 28/9
re [2]   22/15 26/8
re-brief [2]   22/15 26/8
reached [1]   7/2
reaching [1]   6/12
react [1]   18/12
reactions [1]   5/10
read [3]   23/12 30/25 31/2
ready [1]   10/13
really [11]   6/11 14/16
 14/16 20/9 22/18 23/6
 23/8 24/24 28/11 30/23
 31/5
reason [4]   5/4 14/22
 14/22 14/22
reasonable [1]   25/18
reasons [4]   4/21 22/12
 25/25 27/8
receive [1]   16/10
receiving [1]   9/21
recipient [1]   15/11
record [20]   5/16 6/4 7/11
 24/3 24/7 24/14 25/16
 25/19 26/8 26/11 26/13
 26/15 26/19 26/20 26/25
 27/2 27/4 27/6 28/23
 28/25
recorded [1]   2/12
redo [1]   29/7
referenced [1]   13/2
reflected [1]   19/8
regard [2]   11/23 12/11
regrets [2]   4/18 4/22
regulators [1]   9/17
regulatory [1]   12/25
related [1]   33/7
relates [1]   7/25
relevant [1]   7/3
relied [1]   5/3
remaining [2]   9/13 29/17
remind [1]   31/4
report [1]   4/24
Reporter [2]   2/8 2/9
reporting [1]   16/25
request [1]   31/9
required [1]   30/13
requires [1]   30/14
resolution [1]   29/1
resolve [4]   7/4 24/4
 24/10 24/16
resolved [2]   24/11 25/21
resolving [1]   23/24

respect [2]   23/18 23/18
respond [2]   18/17 28/8
response [4]   16/13 23/14
 26/1 26/10
responses [2]   10/19 19/3
rest [6]   15/7 17/9 17/10
 18/9 18/16 29/2
restriction [1]   12/22
reversed [1]   16/8
review [2]   23/22 26/7
reviewed [1]   19/8
right [17]   3/19 6/19 7/22
 8/12 8/14 9/8 10/4 15/7
 16/23 22/24 25/8 25/9
 26/7 28/17 28/19 29/22
 29/22
rights [5]   5/3 12/4 13/12
 13/13 14/8
ripe [1]   18/18
river [1]   8/1
Road [1]   1/18
ROBERT [1]   1/20
ROSEMARY [1]   1/10
RPR [2]   2/8 33/12
rule [2]   19/25 31/6
ruled [1]   13/17
rushing [1]   23/11

**S**

said [7]   12/10 14/20
 15/24 16/18 20/23 22/25
 31/2
same [2]   22/12
satisfied [1]   14/23
satisfy [1]   20/17
say [15]   4/2 4/11 12/1
 14/1 14/17 16/3 20/9 21/4
 22/17 24/18 24/18 26/9
 26/11 27/20 31/5
saying [5]   12/20 20/25
 27/1 27/5 30/9
says [2]   7/16 20/6
schedule [4]   10/13 23/5
 23/15 23/18
Schiller [2]   1/15 4/9
School [1]   1/21
scooted [1]   4/3
second [2]   6/6 17/25
secondly [1]   17/6
Section [9]   17/20 17/25
 18/2 20/15 21/14 21/22
 21/23 21/24 21/24
SEDLER [3]   1/20 3/6 21/20
see [10]   4/3 8/1 14/13
 22/1 22/1 22/1 23/4 24/6
 25/17 31/18
seeing [1]   24/7
seen [1]   25/15
send [4]   5/8 15/13 18/7
 31/1
sensible [1]   31/8
sentence [2]   20/25 21/5
set [4]   23/4 30/9 31/12
 31/15
settlement [1]   7/1
share [1]   5/7
shared [1]   5/9
Shawnie [1]   3/22
she [2]   3/12 3/16
she's [1]   3/15

shorthand [1]   2/12
should [5]   4/21 15/1 18/6
  21/17 30/9
show [1]   18/8
sick [2]   15/2 15/2
side [2]   5/12 7/20
signed [3]   9/7 25/3 27/12
similarly [1]   22/11
since [1]   23/5
sir [8]   6/11 7/13 11/4
  11/19 14/8 16/2 23/10
  26/6
sit [2]   13/14 24/12
slowly [1]   18/16
small [1]   28/25
so [38]
so-called [1]   18/1
solved [3]   13/13 15/25
  15/25
some [14]   4/12 6/13 7/6
  17/1 18/19 19/6 20/23
  20/23 22/2 23/6 25/25
  27/13 29/8 31/8
something [1]   13/19
sometime [3]   7/17 10/21
  31/16
somewhere [1]   8/9
soon [2]   9/5 18/13
sorry [4]   3/23 6/11 11/5
  14/10
sort [4]   8/14 12/14 12/15
  15/16
sorts [1]   15/18
sounds [1]   31/7
sovereign [1]   19/20
space [1]   19/6
Span [1]   18/13
speaking [2]   12/1 18/22
specific [2]   17/7 18/23
Specifically [1]   19/12
spend [2]   6/8 18/21
spent [1]   5/17
spider [2]   15/19 15/22
square [1]   18/7
stand [3]   6/7 6/18 28/11
standing [1]   28/20
start [1]   18/12
state [58]
stated [2]   24/22 33/6
states [8]   1/1 1/11 2/9
  15/3 15/6 21/15 22/11
  33/4
status [7]   1/10 16/24
  17/3 31/10 31/12 31/15
  31/25
statute [2]   13/2 28/2
stay [2]   17/10 18/16
steady [1]   9/10
stenographic [1]   33/4
step [2]   12/3 13/11
Stephens [1]   1/18
still [4]   4/17 6/10 7/25
  29/18
stopped [1]   15/4
Strategic [1]   17/23
Street [2]   1/21 2/6
structure [1]   5/24
stuff [1]   8/7
subdivision [2]   20/16

subject [2]   23/22 25/8
submitted [1]   25/3
submitting [1]   23/9
substantial [1]   26/24
succeed [1]   30/18
successful [1]   22/3
suddenly [1]   15/18
sufficiently [1]   25/21
suggestions [1]   31/8
summary [13]   17/7 17/14
  22/16 23/19 23/25 24/1
  24/12 24/13 24/21 26/2
  28/24 29/17 30/24
supplement [1]   29/24
  30/22
supplemental [3]   18/22
  19/10 21/9
support [3]   25/19 25/21
  26/13
Supreme [1]   19/18
sure [5]   5/16 9/18 12/21
  29/19 29/20
surrounding [1]   7/6
survives [2]   29/19 29/21
swap [1]   5/2

T

take [6]   6/2 13/11 13/15
  29/2 31/5 32/1
taken [4]   15/14 24/18
  33/5 33/9
takings [1]   29/19
talk [2]   26/4 29/13
talking [2]   15/7 29/12
teed [1]   22/20
telephone [2]   3/7 3/10
tell [4]   15/6 21/20 29/7
  31/13
ten [1]   23/9
tendency [1]   22/3
tension [1]   8/18
terrific [1]   31/17
text [3]   20/9 20/18 21/12
than [6]   6/8 8/18 9/24
  10/3 14/18 28/9
thank [18]   4/7 7/10 7/14
  11/3 11/4 11/20 16/2 22/4
  26/6 31/7 31/21 31/22
  32/2 32/6 32/7 32/8 32/9
  32/10
that [160]
that's [25]   4/17 4/21
  6/17 6/17 6/20 7/2 7/8
  8/4 9/21 10/8 12/18 12/20
  14/9 15/13 16/11 16/17
  16/23 17/24 20/13 21/8
  22/24 22/25 25/16 27/24
  28/19
their [8]   5/10 9/8 9/11
  21/18 24/8 29/24 29/24
  30/12
them [4]   6/4 10/18 12/6
  15/1
then [21]   3/12 4/12 6/10
  7/19 7/24 8/9 9/12 9/21
  10/23 18/12 24/1 24/11
  24/12 25/7 26/3 27/15
  29/8 30/10 30/17 31/5
  31/6
there [20]   3/18 4/22 4/24

8/1 12/24 14/11 15/19
  15/22 18/23 19/3 19/4
  19/5 19/6 20/6 21/9 21/11
  22/2 24/2 25/18 27/1
there's [7]   6/20 13/1
  14/1 23/11 25/12 27/7
  30/10
thereof [1]   20/19
these [12]   6/8 15/15 19/6
  19/7 24/2 26/15 28/16
  28/24 30/10 30/24 31/2
  31/13
they [35]
they'd [1]   30/18
they're [11]   9/8 9/18
  9/19 9/22 12/9 13/24 23/7
  23/8 29/5 29/13 30/14
they've [2]   10/18 10/19
thing [2]   15/2 15/3
things [2]   15/18 25/7
think [26]   6/7 6/19 12/1
  12/3 12/12 13/1 16/12
  17/8 18/5 18/6 22/24 23/1
  23/17 23/24 24/9 25/23
  26/2 29/4 29/4 30/2 30/7
  30/11 30/18 31/7 32/1
  32/5
thinks [3]   26/14 26/15
  26/18
thinner [1]   4/10
third [1]   21/11
this [46]
those [13]   13/2 17/5
  17/16 18/5 18/23 22/4
  24/9 24/10 24/12 25/7
  25/10 29/1 32/3
thought [4]   4/3 10/3 23/4
  32/3
three [1]   5/24
through [3]   3/12 12/25
  26/3
time [13]   6/6 6/7 15/3
  15/4 18/19 23/8 25/15
  27/7 29/16 30/17 31/25
  32/1 33/5
tiny [1]   15/18
today [1]   26/19
told [1]   13/17
too [3]   4/19 5/19 31/3
top [1]   21/18
total [1]   9/23
towards [1]   31/16
tower [1]   8/8
training [1]   4/12
transcript [3]   1/10 2/12
  33/3
transcription [1]   2/13
transfer [5]   7/19 9/12
  9/18 9/21 12/25
transferring [1]   9/11
Transportation [2]   17/23
  25/2
traversed [1]   8/13
trees [1]   8/1
true [2]   18/20 33/2
try [1]   6/9
trying [1]   21/8
turn [1]   22/21
turns [1]   10/4
Twin [1]   18/13
two [12]   6/15 10/16 17/7

**T**

two... [9]   17/18 18/21
19/6 19/11 19/16 22/6
24/2 27/19 28/16

**U**

U.S [3]   2/3 13/5 13/22
undecided [1]   4/17
under [19]   6/23 13/1 14/1
17/16 17/18 17/20 17/25
19/12 19/18 19/24 20/2
20/14 20/21 21/3 22/13
24/5 25/2 25/10 31/5
understand [9]   3/17 4/5
5/12 14/19 16/14 16/17
16/18 26/17 30/21
understood [5]   5/15 6/25
11/15 15/9 16/1
Unfortunately [2]   5/6
16/9
UNITED [6]   1/1 1/11 2/9
15/3 15/6 33/4
University [1]   1/20
unlawful [4]   18/4 19/13
20/22 30/9
unreviewable [1]   23/21
until [4]   5/8 12/17 13/23
16/15
up [15]   3/21 4/6 5/13 6/1
12/15 13/11 13/19 14/1
14/9 14/10 15/13 21/18
22/20 28/2 32/1
upends [1]   24/15
upon [2]   9/11 19/11
urge [1]   5/11
urged [1]   9/16
us [10]   5/7 7/20 9/13
9/16 10/1 15/13 16/12
17/2 26/19 29/7
used [1]   4/20
usually [1]   26/8

**V**

valuable [1]   10/5
value [1]   9/20
Van [1]   2/7
variant [1]   27/13
versus [1]   3/3
very [16]   5/13 6/14 6/14
7/10 10/11 14/17 14/18
18/15 18/21 19/10 21/9
22/2 22/5 31/8 31/24 32/2
via [1]   3/7
view [2]   16/18 24/15
vigorously [1]   25/23
vineyard [1]   29/14
violating [1]   21/12
violation [2]   19/15 20/17
void [1]   20/9

**W**

Wagoner [1]   2/7
wait [3]   16/13 27/10
27/10
WALKER [2]   2/2 3/6
want [10]   6/3 6/18 13/10
14/21 21/9 22/14 22/15
22/17 26/9 26/24
wanted [5]   5/16 14/4 17/3
17/6 31/1

wants [2]   13/22 28/7
warn [1]   14/21
Warren [1]   1/18
was [29]   3/23 5/7 5/12
5/16 5/19 5/22 6/7 9/6
9/15 13/12 13/17 17/25
19/1 19/3 19/4 19/5 19/6
19/14 20/4 24/4 25/14
25/18 25/20 25/24 26/12
27/14 27/22 28/8 33/9
Washington [5]   1/4 1/16
2/4 2/11 26/16
water [5]   8/2 12/23 13/1
14/5 14/7
way [2]   10/7 27/3
Wayne [1]   1/20
we [82]
We'd [1]   6/1
we'll [4]   9/21 16/19 28/8
29/8
we're [7]   4/24 5/10 6/25
7/17 9/21 30/9 31/24
we've [4]   7/7 9/16 12/5
20/3
weight [1]   4/12
welcome [2]   12/2 31/2
well [24]   3/11 4/18 5/19
6/11 9/22 10/9 12/20
14/15 15/12 15/14 16/14
18/17 22/5 23/16 24/17
24/18 25/12 25/17 26/4
26/10 27/10 27/24 29/11
30/2
went [2]   5/6 24/25
were [6]   6/6 11/13 15/21
16/24 17/2 19/7
west [2]   1/21 7/15
what [30]   4/20 10/13
13/17 14/13 14/20 16/3
16/5 16/17 19/23 19/23
20/23 22/14 22/15 22/25
23/4 23/12 23/14 24/24
24/25 25/5 25/6 25/8
26/14 26/15 26/18 27/1
29/17 29/24 30/21 31/4
what's [1]   4/15
whatever [4]   24/23 26/9
26/13 28/6
when [4]   16/10 24/14 25/2
27/6
where [4]   7/16 11/12 21/7
25/16
whether [6]   13/14 20/1
24/25 25/9 26/11 27/21
which [16]   7/2 9/7 10/2
12/16 18/6 18/13 20/5
20/12 21/11 21/15 23/6
25/25 26/23 30/18 30/22
33/8
who [8]   3/15 4/18 5/9
12/14 22/2 22/5 28/16
32/4
who's [2]   3/17 4/19
whole [3]   15/2 15/3 30/23
why [9]   7/8 14/19 15/13
17/11 19/7 21/9 25/7 28/7
31/2
wife [2]   4/18 4/22
will [20]   7/19 7/24 9/10
10/24 12/1 13/3 13/6
13/18 13/25 14/24 16/6

16/9 16/13 16/19 16/21
21/20 30/18 31/8 31/12
31/14
willing [1]   17/2
Wisconsin [1]   1/15
wish [2]   11/5 11/7
within [2]   19/5 21/10
without [4]   19/20 24/6
24/24 27/2
won [1]   13/12
won't [3]   14/2 14/9 23/9
wonderful [2]   4/2 32/3
word [2]   20/8 20/18
words [1]   23/12
worked [1]   6/14
would [33]   5/11 6/22 7/5
8/9 8/10 8/10 8/10 11/10
15/15 18/6 18/7 18/10
18/12 18/21 18/21 19/9
20/11 20/24 21/5 23/5
25/16 26/24 27/3 27/3
27/3 27/16 29/1 29/2
29/17 30/19 31/2 31/9
31/17
wouldn't [2]   26/12 26/20
writing [3]   21/2 21/7
27/18
written [1]   10/19
wrong [2]   25/8 25/9

**Y**

year [1]   27/6
years [10]   5/17 13/9 13/9
13/10 13/11 13/11 13/11
13/18 14/12 15/22
yes [20]   3/9 4/7 5/6 7/13
8/3 8/16 8/23 9/1 9/5
11/1 11/17 19/4 22/4
26/25 27/17 28/14 28/18
30/6 31/12 31/20
yesterday [2]   5/8 10/17
yet [2]   12/14 27/5
you [95]
you'll [1]   3/16
you're [8]   4/10 4/14 4/16
12/9 13/24 16/5 30/21
30/22
you've [3]   3/17 15/10
31/10
your [55]